IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (AT DAYTON)

| | | |
|---|---|---|
| ANTIOCH LITIGATION TRUST, | : | CASE NO. 09-CV-218 |
| W. TIMOTHY MILLER, TRUSTEE, | : | |
| | : | (Judge Timothy S. Black) |
| Plaintiff, | : | |
| | : | |
| v. | : | DEFENDANT McDERMOTT WILL & |
| | : | EMERY LLP'S ANSWER TO |
| McDERMOTT WILL & EMERY LLP, | : | PLAINTIFF'S FIRST AMENDED |
| | : | COMPLAINT |
| Defendant. | : | |

Defendant McDermott Will & Emery LLP ("MWE") answers Plaintiff's First

Amended Complaint (the "Amended Complaint") as follows:

**THE PARTIES**

1.      MWE admits the allegations contained in paragraph 1 of the Amended
Complaint.

2.      MWE admits that the Antioch Litigation Trust was discussed in the Plan
and Order, and that, pursuant to the Plan and Order, the Debtors purported to assign to the Trust
certain of their assets, including certain causes of action.  MWE denies the remaining allegations
in paragraph 2 of the Amended Complaint.

3.      MWE admits that W. Timothy Miller was appointed as the Litigation
Trustee of the Litigation Trust, and that the terms of the Litigation Agreement purport to give the
Litigation Trustee the authority to enforce, sue on, settle or compromise the Litigation Claims
assigned to the Trust.  MWE denies the allegation as to Mr. Miller's residence for lack of

knowledge or information sufficient to form a belief as to the truth of those allegations.  MWE denies the remaining allegations in paragraph 3 of the Amended Complaint.

4. MWE admits that it is a limited liability partnership registered under the laws of the state of Illinois, and that it has offices in Chicago, Illinois, Washington, D.C., and other U.S. cities; that it was engaged to serve as legal counsel to Antioch on May 27, 2003 to consult with Antioch concerning a possible ESOP transaction; that MWE's representation on any remaining transaction or matter on which it was engaged to advise Antioch ended on June 5, 2008; that it does not have any offices in Ohio, and that no MWE partner resides in, or is a citizen of, Ohio.  MWE denies the remaining allegations in paragraph 4 of the Amended Complaint.

## JURISDICTION AND VENUE

5.-6. MWE admits the allegations in paragraphs 5-6 of the Amended Complaint.

## FACTUAL ALLEGATIONS

7.-8. MWE denies the allegations in paragraphs 7-8 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

9. MWE admits that Antioch created an employee stock ownership plan ("ESOP") in 1979; and that as of November 14, 2003, the Morgan family owned approximately 46% of Antioch's stock, and the ESOP owned approximately 43% of Antioch's stock.  MWE denies the remaining allegations in paragraph 9 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

2

10.     MWE admits that there was an Advisory Committee for the ESOP, and that the Advisory Committee possessed certain authority to administer the ESOP and the Trust Agreement, although for purposes of the 2003 Tender Offer an independent trustee was appointed with sole authority to represent the ESOP and the interests of the participants in the negotiation of the transaction and the determination of whether to decline or to participate in the Tender Offer.  MWE denies the allegations regarding the composition of the Committee and appointment of the members of the Committee in an unspecified timeframe for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.  MWE denies the remaining allegations in paragraph 10 of the Amended Complaint.

11.     Antioch admits that as of November 2003, the ESOP provided that when an employee left Antioch his or her stock interest in Antioch was redeemable in cash or in installment payments by Antioch.  MWE denies the remaining allegations in paragraph 11 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

12.     MWE admits that Business Valuations, Inc. was retained in early 2003 at the request of the CFO of Antioch; and that Business Valuations, Inc., in considering and weighing various methods of valuation, valued Antioch's total equity as of December 31, 2002 at approximately $333.2 million.  MWE denies the remaining allegations in paragraph 12 of the Amended Complaint.

13.     MWE admits that Antioch obtained S-corporation status on January 1, 1998; that as an S-corporation, non-ESOP shareholders were required to pay certain income tax on corporate earnings; and that the ESOP did not have income tax liability on dividends or other

such distributions. MWE denies the remaining allegations in paragraph 13 of the Amended Complaint.

14. MWE admits that prior to 2004, Antioch issued distributions to shareholders to assist them to pay income taxes on their proportionate share of Antioch's earnings, and that the ESOP retained its distribution, and allocated it to the accounts of participants in the ESOP. MWE denies the allegations regarding the amount that Antioch distributed to shareholders after it obtained S-corporation status, for lack of knowledge or information sufficient to form a belief as to the truth of those allegations. MWE denies the remaining allegations in paragraph 14 of the Amended Complaint.

15. MWE denies the allegations in paragraph 15 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

16. MWE admits that Antioch completed a Tender Offer Transaction in 2003, through which the ESOP, a tax-exempt entity, became the sole shareholder of Antioch. MWE denies the remaining allegations in paragraph 16 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

17. MWE admits that it was engaged by Antioch on May 27, 2003, to consult with Antioch concerning a possible Tender Offer Transaction, and that some of its advice related to ERISA and tax issues regarding the ESOP. MWE further admits that Marsha Matthews, then a partner at MWE, was one of the MWE attorneys who provided legal services to Antioch relating to the Tender Offer Transaction. MWE denies the remaining allegations in paragraph 17 of the Amended Complaint.

4

18.     MWE admits that it used two matter numbers in its billing records relating to its representation of Antioch – a Tender Offer matter and a general matter.  MWE admits that, through clerical error, it billed some time under the Tender Offer matter in 2008, despite the fact that MWE did not perform services for Antioch relating to the Tender Offer matter in 2008. MWE further admits that its attorney-client relationship with Antioch as to any transaction or matter on which it was engaged to advise Antioch ended on June 5, 2008.  MWE denies the remaining allegations in paragraph 18 of the Amended Complaint.

19.     MWE denies the allegations in paragraph 19 of the Amended Complaint.

20.     MWE admits that Antioch relied on the expertise of Deloitte & Touche in designing a proposed transaction under which the non-ESOP shareholders would receive compensation for their shares; that under this transaction, Antioch would make a tender offer through which the non-ESOP shareholders would sell their Antioch shares to Antioch; that after the stock purchase transaction, the ESOP would own 100% of Antioch's shares; that the transaction was to be financed by use of Antioch's cash and by debt; that Antioch's offer to buy shares provided that all non-ESOP shares would be redeemed in exchange for either cash or a combination of cash, notes and warrants; and that the Morgan family, like all other non-ESOP shareholders, could choose the combination of cash, notes, and warrants to purchase shares of Antioch stock in 2014 at an exercise price of $850.00 per share.  MWE denies the remaining allegations in paragraph 20 of the Amended Complaint.

21.     MWE admits that MWE provided legal advice to Antioch relating to the Tender Offer Transaction, and assisted in drafting various documents related to the transaction. MWE denies the remaining allegations in paragraph 21 of the Amended Complaint.

22.     MWE admits that upon completion of the Tender Offer Transaction, the ESOP would own 100% of Antioch's stock.  MWE denies the remaining allegations in paragraph 22 of the Amended Complaint.

23.     MWE admits that Lee Morgan sat on Antioch's Board of Directors during the relevant time period, and that the Morgan family and their trusts owned approximately 46% of Antioch's stock prior to the Tender Offer Transaction.   MWE denies the allegation that "Deloitte & Touche recommended $894.00 per share as the purchase price" for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.  MWE denies the remaining allegations in paragraph 23 of the Amended Complaint.

24.     MWE admits that Antioch retained GreatBanc to serve as trustee of the ESOP with respect to the Tender Offer.  MWE denies the remaining allegations in paragraph 24 of the Amended Complaint.

25.     MWE admits that on November 14, 2003, Antioch made a tender offer to shareholders to purchase their Antioch shares in exchange for, at the election of the individual shareholder (who was under no compulsion to accept either form of compensation), (1) $850 in cash per share, or (2) $280 in cash per share, a $280 principal amount 8% subordinated note, and a warrant to acquire one share of common stock for $850 in 2014, subject to proration ("Exchange Proration"); that there was no limit on the number of shares of common stock that shareholders could tender for cash; and that a restriction on the Exchange Proration option limited the maximum number of warrants that could be issued in the Tender Offer Transaction. MWE denies the remaining allegations in paragraph 25 of the Amended Complaint.

26.     MWE admits the allegations in paragraph 26 of the Amended Complaint.

27.     MWE admits that during its representation of Antioch, it had arms-length contact with GreatBanc and Duff & Phelps, LLC.  MWE denies the remaining allegations in paragraph 27 of the Amended Complaint.

28.     MWE admits that Antioch retained Houlihan Lokey Howard & Zukin Financial Advisors, Inc. ("Houlihan Lokey") to provide an opinion to the Board of Antioch that, among other things, the consideration offered for shares was fair to the selling shareholders. MWE denies the remaining allegations in paragraph 28 of the Amended Complaint.

29.     MWE admits that it provided legal advice to Antioch relating to the Tender Offer Transaction.  MWE denies the remaining allegations in paragraph 29 of the Amended Complaint.

30.     The allegations in paragraph 30 of the Amended Complaint constitute legal conclusions to which no response is required.  To the extent that a response is deemed to be required, MWE denies those allegations.

31.-38.   MWE denies the allegations in paragraphs 31-38 of the Amended Complaint.

39.     MWE admits that GreatBanc declined to tender shares owned by the ESOP in the Tender Offer Transaction, and that GreatBanc insisted that Antioch, GreatBanc and all warrant holders enter into an Equity Holders Agreement, which included provisions regarding "put" pricing applicable to ESOP participants whose employment terminated between November 14, 2003 and September 30, 2006.  MWE denies the remaining allegations in paragraph 39 of the Amended Complaint.

40.     MWE denies the allegations in paragraph 40 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

41.     MWE admits the allegations in paragraph 41 of the Amended Complaint.

42.     MWE admits that once the Tender Offer Transaction was complete, the ESOP owned all of Antioch's common stock. MWE denies the remaining allegations in paragraph 42 of the Amended Complaint.

43.     MWE denies the allegations in paragraph 43 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

44.-46. MWE denies the allegations in paragraph 44 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

47.     MWE denies the allegations in paragraph 47 of the Amended Complaint regarding amounts allegedly paid by Antioch in repurchase obligations and an additional note, and whether Antioch restructured its debt (and, if so, how it did so), for lack of knowledge or information sufficient to form a belief as to the truth of those allegations. MWE denies the remaining allegations in paragraph 47 of the Amended Complaint.

48.     MWE denies the allegations in paragraph 48 of the Amended Complaint regarding the state of Antioch, the number of employees who left or were terminated, and whether Antioch made "share repurchase payments," and if so, how much, for lack of knowledge

or information sufficient to form a belief as to the truth of those allegations. MWE denies the remaining allegations in paragraph 48 of the Amended Complaint.

49. MWE admits that it did not advise Antioch of claims for breach of fiduciary duty against Antioch's directors in connection with the Tender Offer Transaction, denies that any claims for breach of fiduciary duty existed against Antioch's directors in connection with the Tender Offer Transaction, and denies the remaining allegations in paragraph 49 of the Amended Complaint.

50. MWE admits that it did not advise Antioch of claims for professional negligence against Antioch's financial advisors, including Deloitte & Touche and Houlihan Lokey, denies that any claims for professional negligence existed against Antioch's financial advisors, including Deloitte & Touche and Houlihan Lokey, and denies the remaining allegations in paragraph 50 of the Amended Complaint.

51. MWE admits that it did not advise Antioch that the statute of limitations on claims against directors and financial advisors could be found by courts to run as of December 16, 2007, or recommend to Antioch that it investigate the merits of any such claims, denies that Antioch needed to investigate the merits of any such claims, and denies the remaining allegations in paragraph 51 of the Amended Complaint.

52. MWE denies the allegation in paragraph 52 for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

53. MWE admits that Antioch provided to some departing employees promissory notes secured by insurance bonds issued by Condor Guaranty, Inc., and that

subsequently MWE was consulted relating to certain issues about the bonds.  MWE denies the remaining allegations in paragraph 53 of the Amended Complaint.

54.     MWE admits that in 2007, Antioch refinanced its December 18, 2003 and March 31, 2005 Credit Agreements; that in 2007, Antioch's Board of Directors hired Houlihan Lokey to assist it in finding a purchaser for Antioch; and that MWE attorney James Shein provided certain legal advice relating to Antioch's attempt to sell the business or refinance its debt.  MWE denies the remaining allegations in paragraph 54 of the Amended Complaint.

55.     MWE denies the allegations in paragraph 55 of the Amended Complaint.

56.     MWE admits that the Morgans hired their own investment banker, Candlewood Partners, to explore an alternative to the sale.  MWE denies the remaining allegations in paragraph 56 for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

57.     MWE denies the allegations in paragraph 57 of the Amended Complaint.

58.     MWE denies the allegations in paragraph 58 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

59.     MWE admits that James Shein participated in a meeting of the Board of Directors of Antioch in Chicago in February 2008.  MWE denies the remaining allegations in paragraph 59 of the Amended Complaint.

60.     MWE denies the allegations in paragraph 60 of the Amended Complaint.

61.     MWE admits that the Morgans made at least one proposal to Antioch, and that the Board of Directors did not accept the Morgans' proposal.  MWE denies the remaining allegations in paragraph 61 of the Amended Complaint.

62.     MWE admits that in early 2008, it provided certain legal advice to Antioch regarding the effect of a possible default on the ESOP notes and communications with the Noteholders, in relation to Antioch's efforts to reorganize or sell the company.  MWE denies the remaining allegations in paragraph 62 of the Amended Complaint.

63.     MWE admits that in 2008, J.H. Whitney & Co. signed a letter of intent regarding the purchase of Antioch; and that James Shein and MWE were involved in drafting an Asset Purchase Agreement, assisting with preparation of necessary documents, and counseling Antioch regarding the proposed transaction.  MWE denies the remaining allegations in paragraph 63 of the Amended Complaint.

64.     MWE admits that on June 4, 2008, Shein communicated to the Morgans' counsel the Board's reaction to one of the Morgans' proposals.  MWE denies the remaining allegations in paragraph 64 of the Amended Complaint.

65.     MWE denies the allegations in paragraph 65 of the Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

66.     MWE admits that on June 5, 2008, Antioch terminated MWE's legal representation.  MWE denies the remaining allegations in paragraph 66 for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

67.     MWE denies the allegations in paragraph 67 of the Amended Complaint.

68.     MWE admits that Antioch filed for bankruptcy protection in November 2008.  MWE denies the remaining allegations in paragraph 68 of the Amended Complaint.

## MWE'S ANSWER TO PLAINTIFF'S FIRST CLAIM FOR RELIEF  FOR PROFESSIONAL NEGLIGENCE

69.     MWE incorporates the admissions and denials of the allegations in paragraphs 1-68 of the Amended Complaint as if fully set forth.

70.     The allegations contained in paragraph 70 of the Amended Complaint constitute legal conclusions to which no response is required.  To the extent that a response is nonetheless deemed to be required, MWE denies those allegations.

71.-72. MWE denies the allegations in paragraphs 71-72 of the Amended Complaint.

## ADDITIONAL DEFENSES

### FIRST ADDITIONAL DEFENSE

Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

### SECOND ADDITIONAL DEFENSE

Plaintiff's Amended Complaint fails because the allegations do not meet the plausibility standard set forth in Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009), and Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).

### THIRD ADDITIONAL DEFENSE

Plaintiff's malpractice claims are barred by the one-year statute of limitations in Ohio Rev. Code § 2305.11.

### FOURTH ADDITIONAL DEFENSE

The attempted assignment of Antioch's malpractice claims to Plaintiff is invalid under Ohio law.

### FIFTH ADDITIONAL DEFENSE

Plaintiff's malpractice claims are barred by the doctrine of in pari delicto, which precludes one wrongdoer who is equally or more at fault as another party from recovering damages from that other wrongdoer.

### SIXTH ADDITIONAL DEFENSE

Plaintiff's malpractice claims fail because MWE exercised the knowledge, skill, and ability ordinarily possessed and exercised by similarly-situated attorneys in representing Antioch.

### SEVENTH ADDITIONAL DEFENSE

Plaintiff's malpractice claims fail because MWE had no duty to provide business advice to Antioch or any other person or entity, including but not limited to advising Antioch to obtain a fairness opinion and advising Antioch on its attempted sale and refinancing.

### EIGHTH ADDITIONAL DEFENSE

Plaintiff's malpractice claims fail because MWE had no duty to provide legal or business advice to persons who were not MWE's clients, including but not limited to the ESOP,

the Morgan family and Chandra Attiken, the majority shareholders (the Morgan family) as individuals, and Antioch's directors as individuals.

### NINTH ADDITIONAL DEFENSE

Plaintiff's malpractice claims fail to the extent that Plaintiff asserts causes of action belonging to any person or entity other than Antioch.

### TENTH ADDITIONAL DEFENSE

Plaintiff's malpractice claims fail because the Tender Offer transaction complied with ERISA, tax laws, and other applicable laws.

### ELEVENTH ADDITIONAL DEFENSE

The injuries and damages alleged in the Amended Complaint, if any, were the direct and proximate result of acts and omissions of Antioch and other parties, including but not limited to Antioch's Board of Directors and its shareholders.

### TWELFTH ADDITIONAL DEFENSE

Plaintiff's Amended Complaint is barred because Plaintiff's damages, if any, which MWE denies, were caused by independent, intervening, and/or superseding acts, errors, omissions, and causes over which MWE had no control and for which MWE is not liable.

### THIRTEENTH ADDITIONAL DEFENSE

Plaintiff's malpractice claims fail to the extent that Antioch has not mitigated damages, if any, in the manner and to the extent required by law.

<u>FOURTEENTH ADDITIONAL DEFENSE</u>

Plaintiff's Amended Complaint fails to allege facts sufficient to merit a recovery of actual damages, punitive damages, statutory damages, interest, attorneys' fees, costs, or any other relief.

<u>FIFTEENTH ADDITIONAL DEFENSE</u>

MWE is entitled to a set-off, should any damages be awarded against it, in the amount of any damages or settlement amounts recovered by Plaintiff or Antioch with respect to the same alleged injuries.

<u>SIXTEENTH ADDITIONAL DEFENSE</u>

Plaintiff's malpractice claims are barred by the doctrines of release, waiver, estoppel, laches, and unclean hands.

<u>SEVENTEENTH ADDITIONAL DEFENSE</u>

Plaintiff has not joined all necessary and indispensable parties.

WHEREFORE, Defendant McDermott Will & Emery LLP requests that the Court dismiss the Amended Complaint with prejudice, and award to MWE its costs and such further relief as is just and equitable.

Respectfully submitted,


s/ Charles J. Faruki
Charles J. Faruki (0010417)
    Trial Attorney
Jeffrey S. Sharkey (0067892)
Donald E. Burton (0040553)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3705
Telecopier:  (937) 227-3717
Email:  cfaruki@ficlaw.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on the 10th day of September, 2010, I electronically filed the

foregoing Defendant McDermott Will & Emery LLP's Answer to Plaintiff's First Amended

Complaint with the Clerk of Courts using the CM/ECF system, which will send notification of

such filing to CM/ECF participants:

> Marcia Voorhis Andrew
> Aaron M. Herzig
> Christina L. Fischer
> TAFT STETTINIUS & HOLLISTER LLP
> 425 Walnut Street, Suite 1800
> Cincinnati, OH  45202-3957
>
> Attorneys for Plaintiff

s/ Charles J. Faruki_____
Charles J. Faruki

413350.3