UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTIOCH LITIGATION TRUST, | : | Case No. 3:09-cv-218 |
| W. TIMOTHY MILLER, TRUSTEE, | : | |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MCDERMOTT WILL & EMERY LLP, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT MCDERMOTT WILL & EMERY LLP'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 59)**

This civil action is before the Court on Defendant McDermott Will & Emery

LLP's motion for partial summary judgment (Doc. 59), and the parties' responsive

memoranda (Docs. 61, 65).

## I.  BACKGROUND FACTS

Defendant McDermott Will & Emery ("MWE") moves for summary judgment on

Plaintiff's claims relating to the 2003 transaction in which The Antioch Company's

Employee Stock Ownership Plan ("ESOP") became the 100% owner of the Company

(the "2003 ESOP transaction").  MWE argues that Plaintiff's malpractice claims against

it, relating to the 2003 ESOP transaction, are barred by Ohio's one-year statute of

limitations on legal malpractice claims pursuant to Ohio Rev. Code. § 2305.11(A).

Specifically, MWE maintains that its representation of Antioch as to the 2003 ESOP

transaction ended in early 2004, the "cognizable event" occurred when the transaction

1

closed in December 2003, but Plaintiff did not initiate an action against MWE until June 4, 2009. Since Plaintiff's initial complaint was filed on June 4, 2009, more than five years after the 2003 ESOP transaction closed and MWE's representation as to that transaction ended, all of Plaintiff's claims as to the 2003 ESOP transaction are time-barred by Ohio's one year statute of limitations for legal malpractice claims.

Plaintiff maintains that the motion should be denied because issues of material fact exist as to when MWE's representation of the Company with respect to the 2003 ESOP transaction ended. Plaintiff claims that MWE's representation of the Company continued until June 5, 2008, and thus the complaint was filed (June 4, 2009) before the statute of limitations ran.

## II. UNDISPUTED FACTS[1]

1. In 2003, The Antioch Company engaged in a transaction by which the company's Employee Stock Ownership Plan ("ESOP"), a tax-exempt entity that owned approximately 43% of Antioch's stock prior to the transaction, became the sole shareholder of Antioch. (Doc. 59, Ex. A-1 at 22-24).

2. Antioch engaged MWE to provide legal counsel to the company. (Doc. 59, Ex. B at ¶ 2).

3. The 2003 ESOP transaction closed on December 16, 2003. (Doc. 14 at ¶ 41) ("In December 2003, each of the non-ESOP shareholders agreed to the tender offer and the company redeemed all of the shares pursuant to the terms of the tender offer.") (Doc. 23 at ¶ 41; Doc. 59, Ex. 3 at ¶ 3; Doc. 59, Ex. 2 at 84).[2]

---

[1] *See* Doc. 59, Ex. A and Doc. 61, Ex. A.

[2] The Trust admits that the ESOP Transaction itself was consummated on December 16, 2003, when all of the non-ESOP shareholders agreed to the tender offer and the Company redeemed all shares pursuant to the terms of the tender offer. However, other details of the 2003 Transaction, including issues related to the Transaction's financing, spearheaded by MWE attorney Michael

4. On June 4, 2009, Plaintiff filed its first Complaint, alleging legal malpractice against MWE.  (Doc. 1).

## III.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## IV.  ANALYSIS

It is undisputed that the 2003 ESOP transaction closed on December 16, 2003 and that Plaintiff's complaint was filed on June 4, 2009.  It is also undisputed that the statute

---

Nissim, were not finalized until 2004.  (Doc. 59, Ex. 2 at 151; MWE Time/Cost Detail Report at 192-199).  The Trust denies any implication that the ESOP Transaction's closing thereby ended representation of the Company by MWE with respect to the ESOP Transaction and its corporate capital structure.

of limitations on legal malpractice in Ohio expires one year after a claim accrues. Ohio Rev. Code § 2305.11(A). The question before this Court is whether the work performed by MWE in 2004 through June 2008 was related to the 2003 ESOP transaction.

Plaintiff's legal malpractice claim is actually six separate and distinct claims for malpractice. Three of those claims relate only to the 2003 ESOP transaction, specifically to advice given (or allegedly not given) before the transaction closed: (1) whether MWE failed to advise Antioch to get a fairness opinion for the ESOP transaction to avoid corporate waste; (2) whether MWE failed to advise Antioch regarding the effect of ERISA, tax laws, and Ohio corporate law on the transaction; and (3) whether MWE failed to provide legal advice to Antioch's Board of Directors with respect to the transaction.

Also before the Court is the issue of whether MWE should have advised Antioch of breach of fiduciary duty claims against the Morgan family and other members of the Board of Directors. The statute of limitations for breach of fiduciary claims is four years. Therefore, the statute of limitations on the underlying breach of fiduciary duty claims would have run by December 2007. As a result, MWE maintains that the one-year statute of limitations for legal malpractice against it, on the claims that it failed to advise Antioch to sue the above parties before the statute of limitations expired, would have expired by December 2008, six months before Plaintiff's complaint was filed.

### A. Ohio Rev. Code § 2305.11(A)

The statute of limitations on legal malpractice claims in Ohio expires one year after a claim accrues. Ohio Rev. Code § 2305.11(A). The statute of limitations begins to run upon the later of a cognizable event, or when the attorney-client relationship ends with respect to a particular transaction:

> When there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, 401 (Ohio 1989).

### B. Malpractice Claims Related to the 2003 ESOP Transaction

Defendant argues that Plaintiff's claims against it are time-barred under either prong of the *Zimmie* test.

#### 1. *Cognizable event*

"A 'cognizable event' is an event sufficient to alert a reasonable person that in the course of legal representation his attorney committed an improper act." *Chinese Merch. Assoc. v. Chuck Y Chin*, 823 N.E.2d 900, 902 (Ohio App. 2004). "Ohio law does not require actual notice that a legal wrong was done." *FDIC v. Alexander*, 78 F.3d 1103, 1107 (6th Cir. 1996). Instead, "Ohio law requires only constructive knowledge of facts, rather than actual knowledge of their legal significance…to start the statute of limitations

running." *Id.* It does not matter whether the attorney-client relationship remains intact; "a 'cognizable event' may occur during the course of the attorney-client relationship." *Sesto v. Perduk*, No. 23797, 2008 Ohio App. LEXIS 568, at *4 (Ohio App. Feb. 20, 2008).

The cognizable event putting Antioch on notice of any potential legal malpractice occurred on December 16, 2003, when the 2003 ESOP transaction closed and Antioch incurred debt to fund the transaction.  (Doc. 59, Ex. 3 at ¶ 3).  Four of the six legal malpractice claims relate only to the 2003 ESOP transaction and are based solely on advice provided by MWE before the transaction closed.  Accordingly, those claims are barred by Ohio Rev. Code § 2305.11(A) under the "cognizable event" prong of *Zimmie.* [3]

### 2. *Termination of representation*

Plaintiff's claims against MWE relating to the 2003 ESOP Transaction are also barred by Ohio Rev. Code § 2305.11 under the "termination of representation" prong.

The "key date" for ascertaining when the termination date occurred with respect to a "particular transaction" (*Zimmie*, 538 N.E.2d at 401) is "when the [legal] representation on the matter in question ceases, rather than all representation."  *Mohler v. Unger*, No. C3-90-284, 1994 U.S. Dist. LEXIS 21698, at *22 (S.D. Ohio Aug. 26, 1994) (law firm's

---

[3] Plaintiff appears to concede that its malpractice claims are untimely under the "cognizable event" prong.  (Doc. 61 at 28) ("This Court need only apply the 'termination' approach – just as it did at the motion to dismiss stage – to see that Antioch's claim was filed 364 days after MWE's representation related to the 2003 Transaction ended, within the one-year statute of limitations period.").

representation of a company's ESOP ended on the date that the transaction closed, *i.e.*, on the date of the "leveraged buyout").[4]  A "continued general representation" does not extend the statute of limitations as to a particular transaction.  *Alexander*, 78 F.3d at 1109.

The cases cited by Plaintiff are inapposite because they involved the attorney giving legal advice regarding the transaction after the transaction ended, relating to what went wrong, or correcting what went wrong with the initial transaction.  *See, e.g., Murphy v. Hyatt Legal Servs.*, No. 16194, 1993 Ohio App. LEXIS 5829, at *7-8 (Ohio App. Dec. 1, 1993); *Johnson v. Lapin*, No. 3:93-cv-7521, 1995 WL 681102, at *1-3 (N.D. Ohio Oct. 24, 1995).  Plaintiff does not claim that MWE did work after the spring of 2004 that was intended to correct any problem with the 2003 Tender Offer transaction. Similarly, *Slavens v. Spetnagel* is inapposite because the underlying action remained pending and constituted continuing general representation.  No. 95CA769, 1996 Ohio App. LEXIS 3305, at *11-12, 16 (Ohio App. July 26, 1996).

In *Alexander*, the plaintiff argued that since the defendant-attorney continued to represent the company in general matters regarding director and officer liability, the question of when the attorney-client relationship ended was necessarily one of a question of fact for the jury.  78 F.3 at 1110.  The Sixth Circuit disagreed, holding that such "continued general representation" does not toll the statute of limitations; the court held

---

[4] *See also Alexander*, 78 F.3 at 1109 (general representation as to other matters did not "toll the statute of limitations" from earlier transaction).

that "a different standard could defeat the purpose of the statute of limitations where … a client with knowledge of an attorney's malpractice may unduly perpetuate the attorney's potential liability and exposure to audit." *Id.* Similarly, in *Mohler*, the Court found that the attorney-client relationship with respect to the ESOP ended on the date that the transaction was consummated, despite plaintiff's claim (like Plaintiff here) that the law firm "continued to represent the ESOP until the financial demise of [the company.]" 1994 U.S. Dist. LEXIS 21698 at 2-3, 22-23.

Plaintiff cites *Mobberly v. Hendricks* for the proposition that there must be an "affirmative act" in order for the attorney-client relationship to end. 649 N.E.2d 1247 (Ohio App. 1994). However, while an affirmative act may evidence the end of the attorney-client relationship, it is not a necessary predicate. *See, e.g., Thayer v. Fuller & Henry*, 503 F. Supp. 2d 887, 892 (N.D. Ohio 2007) (holding that even if there is no "clear-cut affirmative act" then "a court may examine the record to determine whether the relationship has terminated on its own." This "may occur when the underlying action has concluded.").[5] Legal representation of a client may terminate without an affirmative act if "continuing to bind the parties to each other would be objectively unreasonable," including "when the underlying action has concluded." *Thayer*, 503 F. Supp. 2d at 891-92. In fact, in both *Alexander* and *Mohler*, neither the Sixth Circuit nor this Court found

_____

[5] *See also McGlothin v. Schad*, 957 N.E.2d 810, 814 (Ohio App. 2011) (holding that in addition to showing an affirmative act, the "attorney-client relationship may also be terminated either when the underlying action has concluded or when the attorney has exhausted all remedies in the case.").

8

that an affirmative act existed, but each court held that the legal malpractice claims at issue were barred by the statute of limitations.

### a. Billing

Plaintiff claims that representation did not terminate in April 2004, because MWE was still billing the ESOP Transaction.

MWE opened two matters in its billing system – one that was titled "ESOP Transaction" and another titled "General." MWE continued to bill time to both matters into 2008. Plaintiff argues that the fact that MWE continued to bill to the matter titled "ESOP Transaction" shows that MWE was still performing work related to the 2003 ESOP transaction. However: (1) the actual work that MWE billed to the "ESOP Transaction" after April 2004 was not related to the 2003 transaction; and (2) even if the Court were to focus on the title, MWE last billed time to the ESOP Transaction on January 31, 2008, which is approximately one year and six months before Plaintiff filed its complaint.

### i. Title of matter to which time was billed

MWE billed the "ESOP Transaction" matter on several occasions on issues unrelated to the 2003 ESOP transaction. For example, in 2004, MWE attorney John Doyle represented Antioch in a potential personal injury and products liability matter in which a bookmark made by the company, which was swallowed by a child, was investigated for possibly containing lead. (Aff. of M. Andrew at 40654-40660).

9

Additionally, in April 2005, MWE assisted Antioch with review and amendment of the company's bylaws. (MWE Time Entry at 40659).

Neither of these legal issues was related to the 2003 ESOP Transaction despite being billed to the same. The fact that MWE billed the ESOP Transaction does not keep the action "alive." There is no evidence that the ESOP Transaction was billed after April 2004 for matters pertaining to the ESOP Transaction. (Doc. 59, Ex. B at ¶¶ 5-6).

### ii.    January 31, 2008

Even if this Court were to decide that the title of the matter to which time is billed is conclusive, Plaintiff's claims relating to the 2003 ESOP transaction are still time-barred, because the last time MWE billed the ESOP Transaction matter was January 31, 2008. (MWE Time Entry at 40750). Plaintiff's complaint was not filed until June 4, 2009, more than one year later.

Plaintiff also relies on a retainer payment made by Antioch that was applied to MWE's ESOP Transaction matter in February 2008. Even if the date payments are made to the attorney were a basis for calculating the statute of limitations, February 20, 2008 is still more than one year before Plaintiff filed its complaint.

### iii.    Work after spring 2004

Plaintiff's claims against MWE are barred for two additional, separate, and independent reasons: (1) there is a one-year gap from June 2004 until July 2005 for which Plaintiff makes no claim that there was any work by MWE that related to the 2003

10

ESOP transaction; and (2) MWE's representation relating to the 2003 ESOP transaction ended in April 2004, when MWE completed clean-up work on the transaction.

First, Plaintiff alleges that in May and June 2004, "MWE advised the Company with respect to the transfers of warrants from the 2003 Transaction, tax issues relating thereto and the impact of the Company's S-Corp qualification[.]"  Plaintiff then cites the following:

> July 2004 – MWE advised the Company with respect to the potential transfer of stock by a shareholder;
> April 2005 – MWE drafted amendments to the Company's bylaws;
> June 2005 – MWE drafted a shareholder resolution for the Company.

(Doc. 61 at 21).  None of these entries from July 2004 through June 2005 relate to the 2003 ESOP transaction.  The next example is from July 2005, more than one year after the June 2004 date.  "MWE advised the Company and drafted notes to be issued in exchange for warrants to address tax issues with the corporate structure that could otherwise invalidate the 100% ESOP-owned, tax free capital structure and corporate resolutions regarding the same[.]"  (*Id*).

Even if the Court found that the work listed from May and June 2004 and July 2005 related to the 2003 ESOP transaction, which it does not, Plaintiff's 2003-related claims are still time-barred because the statute of limitations would have lapsed in June 2005.

  **iv.**  **MWE's work in 2005 and 2006 relating to notes and warrants**

   MWE performed work for Antioch in 2005 and 2006 in which certain warrants that were issued to outside shareholders in the 2003 transaction were exchanged for notes and new warrants. (*See, e.g*., MWE Time Entry at 40659-40664). MWE did that work so that Antioch would remain in compliance with the Internal Revenue Code § 409(p), which, in general, regulates the number of shares (including options or warrants to acquire shares, which the Morgans continued to own after the 100% ESOP transaction) that can be held outside of the ESOP. Plaintiff claims that such work related to the 2003 transaction.

   However, as an S-Corporation with an ESOP, Antioch had to comply with Internal Revenue Code § 409(p) regardless of whether it engaged in the 2003 ESOP transaction. There is nothing that limits application of Section 409(p) to 100% ESOP-owned companies. Therefore, the work performed by MWE in 2005 and 2006, relating to notes and warrants, and assisting with Antioch's compliance with Section 409(p), was not related to the 2003 ESOP transaction. MWE's legal compliance work on behalf of Antioch in 2005 and 2006 simply did not relate to the 2003 ESOP transaction.

   Moreover, even if the Court were to find that MWE's 2005 and 2006 work relating to warrants and notes did relate to the 2003 transaction, Plaintiff's 2003-related claims still fail because Plaintiff did not file its complaint until June 4, 2009, approximately two-and-one-half years after the note and warrant work ended.

**v.      Bankruptcy proceeding**

In 2007-2008, MWE assisted Antioch with efforts to find a buyer or to recapitalize the company.  MWE's work included assisting Antioch in an attempt to find a buyer to act as a "stalking horse" in a bankruptcy proceeding.  (Doc. 65, Ex. 2 at 111).  Plaintiff claims that because MWE considered the notes and warrants (as referenced in MWE's time sheets) in 2007 and 2008 as part of the bankruptcy preparations, that MWE was still working on the 2003 ESOP transaction.  Plaintiff's claim is attenuated at best.

MWE's consideration of the 2003 notes and warrants to prepare for a bankruptcy filing does not satisfy the "related to" test.  Moreover, even if the Court were to find that merely considering the notes and warrants somehow related to the 2003 ESOP transaction, Plaintiff's claims still fail because the last time the warrants are mentioned in MWE's time sheets is April 9, 2008, and the last time the notes are mentioned is June 2, 2008, both more than one year before the instant action was filed.  (MWE Time Entry at 40501-40546).

**vi.      MWE's work in 2008 to locate a buyer for the bankruptcy proceeding**

The bankruptcy filing was the sole issue MWE was working on in the days before it was terminated.  (*See* MWE Time Entry 40547-40552).  Plaintiff does not allege that the 2007-2008 bankruptcy work related in any way to the 2003 ESOP transaction. Specifically, MWE did not fix, alter, or renegotiate the terms of the 2003 ESOP transaction.  Moreover, the 2003 ESOP transaction ended well before the critical date of

13

June 4, 2008.  Plaintiff's arguments that work continued up until that date are contrary to MWE's undisputed billing records.

Accordingly, Plaintiff's attorney-client relationship with MWE for the 2003 ESOP transaction clearly terminated at least one year prior to the filing of the instant action. Therefore, the malpractice claims relating to the 2003 ESOP transaction are also barred under the termination of representation prong.

### C.  Malpractice Claims Related to the Breach of Fiduciary Duty

Next, MWE seeks summary judgment as to Plaintiff's allegation that MWE should have advised Antioch to sue its former directors and financial advisors.  The statute of limitations on Plaintiff's claims against Antioch's former board members and financial advisors from the 2003 ESOP transaction is four years.  *In re Keithley Instruments, Inc. Derivative Litig.*, 599 F. Supp. 2d 875, 906 (N.D. Ohio 2008).  Therefore, Antioch would have had until December 16, 2007, to bring suit against the former board members and financial advisors stemming from their actions leading up to the 2003 ESOP transaction. Antioch would then have had one year (until December 17, 2008) to bring a legal malpractice suit against MWE, based on MWE's alleged failure to advise Antioch to bring these claims.  Ohio Rev. Code § 2305.11(A).

Plaintiff makes two arguments that its claim is timely: (1) bankruptcy protection pursuant to 11 U.S.C. § 108; and (2) the December 2007 expiration of the underlying

claims against the officers and directors did not constitute a cognizable event or the conclusion of MWE's work on the transaction.

### 1.   11 U.S.C. Section 108

Plaintiff argues that the claim did not expire on December 16, 2008, because the Company filed for bankruptcy protection on November 13, 2008, which tolled the time to file the action.  Section 1-8(a) of Title 11 of the United States Code states "[i]f applicable non-bankruptcy law…fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period…or (2) two years after the order for relief."  Plaintiff argues that because of the Company's bankruptcy filing, the statute of limitations was tolled to November 13, 2010, making the commencement of this action timely.

Plaintiff assumes that the statute's reference to "the trustee" encompasses a litigation trust.  However, the Bankruptcy Code refers to the bankruptcy trustee appointed under Chapter 7 as "the trustee."  11 U.S.C. § 704.  Additionally, the Bankruptcy Code provides that the bankruptcy trustee has the ability to file claims on behalf of the debtor's estate, but the Litigation Trust does not.  The tolling provision of Section 108 applies only to the bankruptcy trustee, or the debtor-in-possession under Chapter 11 (who, under 11 U.S.C. § 1007(a), has powers equivalent to the bankruptcy trustee, in Chapter 11 cases without a trustee).  *Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 756 (E.D.

Va. 2009). Accordingly, the statute applies only to "someone acting as the bankruptcy trustee." *Id.* at 755. "[T]his result is consistent with the purpose of Section 108(a), as the benefit of the extension granted by Section 108(a) is for the benefit of the estate." *Id.* at 756.

"Furthermore, while an agent of the trustee or of the debtor-in-possession may, on behalf of its principal, invoke § 108, there is no precedent for, and it would be inconsistent with the plain language of the Bankruptcy Code, to allow a mere purchaser or assignee of a Chapter 7 debtor's claims to take advantage of § 108." *Motor Carrier Audit & Collection Co. v. Lighting Prods., Inc.*, 113 B.R. 424, 426 (N.D. Ill. 1989). Here, the Trust is merely the purported assignee of claims from the estate. Therefore, the Trust cannot invoke Section 108 to toll the running of the statute of limitations.

### 2. *The cognizable event*

Plaintiff further argues that even if its claims against the directors and financial advisors expired on December 16, 2007, that would have no bearing on the timeliness of Anitoch's derivative claim against MWE. Plaintiff argues that Ohio's one-year statute of limitations for legal malpractice claims begins to run when a "cognizable event occurs that would alert a reasonable person that his attorney has committed an improper act in the course of legal representation." *Warman v. Mulligan*, No. 22503, 2009 Ohio App. LEXIS 1670, at *5-6 (Ohio App. Apr. 17, 2009) or when "the attorney-client relationship

for that particular transaction or undertaking terminates," whichever occurs later.  *Omni-Food & Fashion, Inc. v. Smith*, 528 N.E.2d 941, 944 (Ohio 1988).

However, no Ohio cases address the application of the cognizable event prong to a claim that an attorney missed a statute of limitations.  The cognizable event occurred in December 2007, when the statute of limitations on the underlying claim expired for two reasons:

*First*, other states apply a discovery rule which is analogous to Ohio's cognizable event rule – to determine when a statute of limitations begins to run on a claim for legal malpractice.  Those states hold that the statute of limitations on a legal malpractice claim for a missed statute of limitations begins to run when the statute of limitations on the underlying claim expires.  *See, e.g., Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1065 (Fla. 2001) (holding that the statute of limitations on legal malpractice claims begins "when the client's right to sue in the related or underlying proceeding expires.").[6]

*Second*, a requirement that a particular event occur that would alert the client that the statute of limitations on his or her underlying claim had expired before the statute on a legal malpractice claim begins to run would effectively mean that the statute of

---

[6] *See also Harrison v. Beckham*, 518 S.E.2d 435, 436 (Ga. App. 1999) (finding that "[t]he statute of limitation on [plaintiff's] claim for legal malpractice began to run when the statute of limitation on her original personal injury claim expired without being filed against the defendants."), *cert. denied*, 1999 Ga. LEXIS 823 (Ga. Oct. 15, 1999); *Shumsky v. Eisenstein*, 750 N.E.2d 67, 69 (N.Y. App. 2001) (holding that "the statute of limitations on legal malpractice claims starts running when the statute of limitations had expired on the underlying breach of contract action plaintiffs retained defendant to commence").

limitations would never begin to run on almost all claims where an attorney missed the statute of limitations.

A cognizable event occurs on a claim that an attorney missed a statute of limitations at the late of either: (1) when the client knows or should have known that it suffered injury associated with the underlying wrong; and (2) when the statute of limitations on the underlying claim expires.  Under that rule, if the client learns of the injury after the statute of limitations on the underlying claim has expired, then the client would still have one year after learning of the injury to sue his or her attorney.  However, if the client learns of the injury before the statute of limitations on the underlying claim has expired, then the client would still have one year after the statute on the underlying claim had expired to file a legal malpractice claim.

Plaintiff's claim is not timely under either test.  Therefore, Plaintiff's malpractice claim that MWE should have advised Anitoch to sue its former directors and financial advisors fails as a matter of law.

### D.  Adverse Domination and Equitable Tolling

Finally, Plaintiff argues that the statute of limitations on its claims related to the 2003 ESOP transaction is tolled under the doctrines of adverse domination and equitable tolling.

Ohio has not adopted the doctrine of adverse domination and therefore the Court declines to apply it to the instant case. *See, e.g., The Antioch Co. Litig. Trust v. Morgan*, 456 B.R. 791, 855-60 (S.D. Ohio 2011) ("the court concludes that Ohio courts do not presently recognize this doctrine and there is not a sufficient basis to conclude that the Supreme Court of Ohio would adopt it.").[7]

With respect to equitable estoppel, Plaintiff failed to provide any evidence that it pursued its rights diligently, and that an extraordinary circumstance prevented it from timely filing its action, both of which are required to show equitable tolling. *In re Regency Vill. Certificate*, No. 11AP-41, 2011 Ohio App. LEXIS 4178, at *26 (Ohio App. Sept. 30, 2011) (equitable tolling will not apply when party cannot show "that it diligently pursued its rights").[8]

Therefore, neither the doctrine of adverse domination nor the doctrine of equitable tolling apply to the instant case.

## V. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for partial summary judgment (Doc. 59) is **GRANTED**.

---

[7] *See also Chinese Merchs. Ass'n v. Chin*, 823 N.E.2d 900, 903-04 (Ohio App. 2004) (finding that the doctrine of adverse domination "has no support in Ohio either by statute or judicial decision and, thus, [we] conclude that Ohio has not adopted the doctrine of adverse domination to toll the running of the statute of limitations in legal malpractice claims.").

[8] *Byers v. Robinson*, No. 08AP-204, 2008 Ohio App. LEXIS 4052, at *34 (Ohio App. Sept. 23, 2008) (equitable tolling should be "applied sparingly and only in exceptional circumstances.").

**IT IS SO ORDERED**.

Date:  4/1/13                              s/ Timothy S. Black
                                        Timothy S. Black
                                        United States District Judge