UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTIOCH LITIGATION TRUST, | : | Case No. 3:09-cv-218 |
| W. TIMOTHY MILLER, TRUSTEE, | : | |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MCDERMOTT WILL & EMERY LLP, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 70)**

This civil action is before the Court on Plaintiff's motion for reconsideration of the Order granting Defendant's motion for partial summary judgment (Doc. 70), and the parties' responsive memoranda (Docs. 75, 76).

**I. BACKGROUND FACTS**

Defendant McDermott Will & Emery LLP ("MWE") moved for partial summary judgment on Plaintiff's claims relating to the 2003 transaction in which The Antioch Company's Employee Stock Ownership Plan ("ESOP") became the 100% owner of the Company (the "2003 ESOP transaction"). MWE argued that Plaintiff's malpractice claims relating to the 2003 ESOP transaction were barred by Ohio's one-year statute of limitations on legal malpractice claims pursuant to Ohio Rev. Code. § 2305.11(A). Specifically, MWE claimed that its representation of Antioch as to the 2003 ESOP

1

transaction ended in early 2004, but Plaintiff did not initiate an action against MWE until June 4, 2009.  Since Plaintiff's initial complaint was filed on June 4, 2009, more than five years after the 2003 ESOP Transaction closed and MWE's representation as to that transaction ended, the Court held that all of Plaintiff's claims as to the 2003 ESOP transaction are time-barred by Ohio's one year statute of limitations for legal malpractice claims.  (Doc. 66).

Pursuant to Fed. R. Civ. P. 54(c), Plaintiff moves this Court to reconsider its Order granting Defendant's motion for partial summary judgment (Doc. 66) and to rescind and deny the partial summary judgment granted to MWE.  Specifically, Plaintiff claims that: (1) the Court should rescind summary judgment as to MWE's failure to advise the Company to sue its directors and financial advisors, because the Company's bankruptcy filing tolled the statute of limitations; and (2) the Court committed clear error in finding that four of the six legal malpractice claims relate only to the 2003 ESOP transaction and are based solely on advice provided by MWE before the transaction closed.  Plaintiff claims that the Court's grant of summary judgment on statute of limitations grounds as to conduct prior to the close of the Tender Offer, (the transaction which resulted in the Antioch ESOP owning 100% of Antioch's shares (Doc. 14 @ ¶¶16-17)), does not bar the Trust's claims that MWE failed to advise Antioch to avoid corporate waste, failed to advise Antioch about the consequences of the Tender Offer, and failed to provide legal advice to Antioch's individual directors.

2

## II.  STANDARD OF REVIEW

District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case.  *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004).[1]  "[C]ourts will find jurisdiction for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."  *Louisville/Jefferson County Metro. Gov't v. Hotels.com,* 590 F.3d 381, 389 (6th Cir. 2009).  Plaintiff maintains that the Order (Doc. 66) should be reconsidered and rescinded to correct two clear errors and to prevent manifest injustice.

## III.  ANALYSIS

### A. Claims Related to the 2003 ESOP Transaction

First, Plaintiff alleges that the Court erred by finding that certain claims were based solely on conduct occurring prior to the close of the 2003 ESOP Transaction, contrary to the allegations in the Amended Complaint.[2]

Claims 1-3 are characterized as alleging that Defendant committed legal malpractice with respect to the 2003 ESOP Transaction.  (*See* Docs. 20, 66).  Plaintiff

---

[1] Although the Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders, the authority for a district court to hear such motions is found in both the common law and in Rule 54(b).  *Id.*

[2] Plaintiff objects to the manner in which the Court divided its single cause of action against MWE for legal malpractice.  The Court addresses this issue in its Order at Doc. 77, Section III.A., fn. 2.

maintains that this characterization is contrary to the actual allegations of the Amended Complaint. Specifically, Plaintiff claims that several of the allegations in the Amended Complaint pertain to actions or omissions after the close of the 2003 Transaction. For example, ¶ 67 of the Amended Complaint, which is referenced in the description of both claims 1 and 3, alleges:

> Upon information and belief, Shein and McDermott failed to provide full and accurate advice to the Antioch Board as to their fiduciary duties to the corporation, in particular their duty to always put the best interests of the company ahead of their own interests or the interests of other board members, and their duties to avoid waste and mismanagement of corporate assets. On information and belief, Shein and McDermott incorrectly advised the directors that they owed a fiduciary duty to the creditors of Antioch.

Plaintiff maintains that ¶ 67 asserts malpractice on the part of MWE in connection with the 2007-2008 Sale Process, because Jim Shein was not even involved in MWE's representation of Antioch until 2007. Thus, Plaintiff argues that it was clear error for the Court to find that claims 1 and 3 "relate only to the 2003 ESOP Transaction and are based solely on advice provided by MWE before the transaction closed." (Doc. 66 at 6).

Further, Plaintiff maintains that ¶ 71 of the Amended Complaint, which is referenced in both claims 2 and 4, encompasses acts or omissions across all relevant time periods:

> Shein, Matthews, and McDermott failed to conform to the standard of care of attorneys required by law by their actions and omissions, including but not limited to failing to provide full and accurate advice as to the obligations of Antioch and its conflicted Board of Directors under Ohio corporate law, ERISA and related tax law, by aiding and abetting breaches of fiduciary duty by Lee Morgan and

4

> Asha Morgan Moran, and by failing to advise the company of claims against its directors and independent professional firms.

Plaintiff alleges that MWE's failure to properly advise the Board as to the conflicts of certain directors and the duties of the Board in the face of those conflicts, was a recurring breach of MWE's duty to the Company across all relevant time periods and it was clear error for the Court to find that Claims 2 and 4 "relate only to the 2003 ESOP Transaction and are based solely on advice provided by MWE before the transaction closed." (Doc. 66 at 6).

With respect to the first three theories of recovery, Defendant argues that Ohio Revised Code Section 2305.11(A) bars the Trust's claim because: (1) the "cognizable event" occurred on December 16, 2003, when the 2003 ESOP Transaction closed; and (2) MWE's representation as to the 2003 ESOP Transaction terminated over one year before this action was filed. Although Plaintiff disputes both of these arguments, the Court agreed with MWE on both points and granted MWE's request for partial summary judgment.

### 1. Claim 1

Claim 1 alleges that MWE failed to advise Antioch to obtain a fairness opinion for the Tender Offer and to avoid corporate waste. (Doc. 14 at ¶¶ 33-25, 67).

Plaintiff argues that ¶ 67 refers to the 2007-2008 Sales Process, and the Court should thus conclude that Claim 1 includes a claim that MWE should have advised Antioch to avoid corporate waste relating to the 2007-2008 Sales Process.

The Court finds that Plaintiff did in fact assert a claim that MWE failed to advise Antioch to avoid corporate waste associated with the 2007-2008 Sales Process, but that Claim 1 is limited to the 2003 transaction, and the corporate waste claim for the 2007-2008 Sales Process survives as part of Claim 6.[3]

### 2. *Claim 2*

Claim 2 alleges that MWE failed to advise Antioch about the legality and consequences of the Tender Offer under ERISA, tax laws, and Ohio corporate law. (Doc. 14 at ¶¶ 32-33, 37-38, 71). Plaintiff argues that as part of this claim it asserted that MWE "failed to advise Antioch (post-transaction) about the consequences of the Tender Offer." Plaintiff further argues that (1) the Court cited ¶ 71 as being included in Claim 2;[4] (2) ¶ 71 was part of a "single claim for relief" that incorporated via ¶ 69 all of the proceeding allegations in Plaintiff's complaint; and (3) Claim 2 therefore includes a claim that "MWE's failure to properly advise the Board as to the conflicts of certain directors and the duties of the Board in the face of those conflicts, was a recurring breach of its duty to the Company across all relevant periods." Plaintiff maintains that to the extent that the advice or failure to advise occurred after the 2003 Transaction, those allegations were improperly barred on statute of limitations grounds.

---

[3] The Court's purpose in dividing Plaintiff's malpractice claims was simply to organize and focus the allegations. Whether this allegation is adjudicated in "Claim 1" or "Claim 6" is inconsequential.

[4] Paragraph 71 specifically references MWE attorney Jim Shein, who did not become involved in the representation of Antioch until 2007. Therefore, Plaintiff alleges that Claim 2 relates, at least in part, to the 2007-2008 Sale Process, and is based, at least in part, on advice given (or omitted) after the close of the 2003 Transaction.

6

First, this Court did not characterize Claim 2 as including either a claim that "MWE failed to advise Antioch (post-transaction) about the consequences of the Tender Offer" or that "MWE's failure to properly advise the Board as to conflicts of certain directors and the duties of the Board in the face of those conflicts, was a recurring breach of its duty to the Company across all relevant periods."[5] However, if in fact these were claims that Plaintiff intended to allege, this Court intends to decide the claims on the merits.

Defendant argues that even if these allegations were alleged in the Amended Complaint, they would fail to state a claim because Plaintiff failed to: (1) identify specific advice that MWE should have given post-transaction about the consequences of the Tender Offer; (2) identify what Antioch could have done to alter the effects of the 2003 transaction after it closed; (3) identify which members of the Board were conflicted; (4) identify which specific transactions Plaintiff challenges; and (5) identify what harm Antioch suffered.

The Court finds, however, that Plaintiff was not required to expressly state what specific bad advice MWE gave or what advice MWE did not give but should have given. These are the types of details that the Rules of Civil Procedure permit a Plaintiff to develop through discovery. Moreover, Plaintiff alleged injury as a result. (Doc. 14 at ¶¶ 48-72).

---

[5] This underscores the fact that Plaintiff's malpractice claims as alleged in the Amended Complaint are unclear.

Accordingly, Plaintiff has alleged malpractice based on these discrete claims and may pursue them.

### 3. *Claim 3*

Claim 3 alleges that MWE failed to provide legal advice to Antioch's individual directors. (Doc. 14 at ¶¶ 35, 38, 67).

Plaintiff argues that: (1) the Court cited ¶ 67 as being included in Claim 3; (2) ¶ 67 refers to the 2007-2008 sales process; and (3) the portion of ¶ 67 that was included in Claim 3 thus survives. However, as this Court explained *supra* at Section III.A.1, allegations that MWE failed to provide legal advice to Antioch's individual directors survive as part of Claim 6.[6]

### B. Aiding and Abetting

Claim 4 alleges that MWE aided the majority shareholders in breaches of their fiduciary duties. (Doc. 14 at ¶¶ 34, 71).

The Court dismissed the aiding and abetting claim because Ohio does not recognize such a claim. (Doc. 58). Plaintiff argues that the Court committed "clear error" when it held that "Claim 4 relate[d] only to the 2003 ESOP Transaction." However, the Court did not address Claim 4 in its Order granting summary judgment on statute of limitations grounds (Doc. 66), so Plaintiff's argument is without merit.

---

[6] Claim 6 alleges that MWE failed to stop one of Antioch's shareholders from attempting to find an entity to buy Antioch. (Doc. 14 at ¶¶ 54, 56, 67-68).

### C. Section 108(a) Tolling Provision

Claim 5 alleges that MWE failed to advise Antioch about potential causes of action that Antioch had against its Board of Directors and its independent financial advisors. (Doc. 14 at ¶¶ 49-51, 71).

With respect to this theory of recovery, MWE argued that Ohio Revised Code Section 2305.11(A) bars the Trust's claim because: (1) the "cognizable event" occurred on December 16, 2007, when the statute of limitations as to the Company's underlying claims against its directors and advisors supposedly expired, and (2) MWE's representation of the Company that would give rise to a duty to advise of such causes of action terminated over one year before this action was filed. Although the Trust disputes both of these arguments, the Court agreed with MWE on both points and granted MWE's request for partial summary judgment based on Section 108 of the Bankruptcy Code.[7]

Plaintiff argues that Section 108(a) of the Bankruptcy Code tolled the statute of limitations for both the Company and the Trust to bring an action related to MWE's failure to advise the Company to assert claims against its directors and advisors related to the 2003 Transaction.

Section 108(a) of the Bankruptcy Code provides:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of [:]

---

[7] The Court notes that Plaintiff's original briefing on this issue failed to cite any applicable case law and lacked any substantive analysis. (*See* Doc. 6 at 33-35).

> (1) The end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) Two years after the order for relief.

11 U.S.C. § 108(a).  This Court determined that Section 108(a) did not apply to Plaintiff because, based on a literal reading of the statute, Plaintiff was not a bankruptcy trustee or debtor-in-possession.  (Doc. 66 at 16).

A bankruptcy plan may provide that litigation claims may be enforced by three different entities: "by the debtor, by the trustee, or by a representative of the estate appointed for such purpose."  11 U.S.C. § 1123(b)(3)(B).  The bankruptcy court's order that created the Plaintiff Trust states that "the Litigation Trustee shall, pursuant to section 1123(b)(3) of the Bankruptcy Code, be deemed to be a representative of the Estates." (January 27, 2009 Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1126 and 1129(a) and (b) at 76 (Case Nos. 08-35741-08-35747)).  Plaintiff is therefore a "representative of the estate" (and not a "debtor" or a "trustee") under Section 1123(b)(3)(B).

Section 108(a) provides for tolling of claims asserted by a "trustee" but does not refer to a "representative of the estate."[8]  Therefore, on its face, Section 108(a) grants no rights to Plaintiff.[9]  The Bankruptcy Code also states that "a debtor in possession shall

---

[8] The Court notes that there is no Supreme Court nor Sixth Circuit precedent addressing whether a "representative of the bankruptcy estate" can invoke the tolling provisions of Section 108.

[9] *See, e.g., Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 756 (E.D. Va. 2009), *aff'd* 332 Fed. Appx. 113 (4th Cir. 2009) (because no bankruptcy proceeding was ongoing when

have all the rights…and powers…of a trustee." 11 U.S.C. § 1107. Plaintiff is not a debtor in possession, so Section 1107 does not apply.

The primary case on which Plaintiff relies, *In re Greater Se. Comty. Hosp. Corp.*, 333 B.R. 506 (D.D.C. 2005), held that Section 108(a) applies to toll the statute of limitations for claims that have been assigned to a litigation trust. However, the court expressly acknowledged that its interpretation of Section 108(a) was inconsistent with the "literal" terms of Section 108(a): "[T]his is one of those rare instances in which it is appropriate to reject a literal application of the statute." *Id.* at 535. The court stated that applying Section 108(a) as written "would produce an absurd result." *Id.* A trustee (and debtor-in-possession pursuant to Section 1107) has a duty to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1). Those parties thus have a duty to pursue meritorious litigation claims and have an opportunity to use Section 108(a) to do so.[10]

---

plaintiff filed its claim, neither plaintiff, nor any other party, was a "trustee" entitled to commence a claim during any period extended by Section 108(a)).

[10] "Judge Graham of this Court has also recognized that Section 108 applies to a trust created by a confirmed plan, when the trust brought claims that belonged to the debtor." *In re Nat'l Century Fin. Enters., Inc*., 617 F. Supp. 2d 700, 713 (S.D. Ohio 2009). However, in that case, the Court's analysis of the issue was limited to one sentence which stated: "This argument overlooks the bankruptcy tolling statute of 11 U.S.C. Section 108(a), which gives the trustee two years to file any causes of action that existed at the time of the petition date…" *Id.* At no point in its decision did the Court address whether a "representative of the estate" could invoke Section 108(a). Plaintiff also maintains that it is well-settled that litigation trusts created under confirmed plans of reorganization are entitled to claim the tolling offered by Section 108. Plaintiff cited three cases in support of this proposition – but the courts in these cases simply assumed that Section 108(a) applied without addressing whether a "representative of the estate" constituted a "trustee" under Section 108(a). *See, e.g., In re Verilink Corp*., 405 B.R. 356, 366-67 (N.D. Ala. 2009) (holding that plaintiff's claim was time barred even if Section 108(a)

11

Defendant focuses on *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 4-5 (2000), where a creditor sought to assert a claim under 11 U.S.C. Section 506(c), which authorized the "trustee" to assert certain claims. The Court held that the creditor could not enforce Section 506(c):

> Here, the statute appears quite plain in specifying who may use §506(c) -- the 'trustee.' It is true, however, as petitioner notes, that all this actually 'says' is that the trustee may seek recovery under the section, not that others may not. The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes.

Accordingly, having conceded that it is a "representative of the estate" under Section 1123(b)(3)(B), and not a "trustee" or a "debtor-in-possession," Defendant argues that Plaintiff cannot invoke Section 108(a).

In light of the fact that Section 506(c) referred to enforcement only by a "trustee," the Supreme Court in *Hartford Underwriters* stated that "petitioner's burden of persuading us that the section must be read to allow its use by other parties is exceptionally heavy." *Id*. at 9. The Court discussed various policy arguments made by the petitioner and ultimately held that the policy arguments should be decided by Congress: "It suffices that the natural reading of the text produces the results we

---

applied but did not decide if Section 108(a) applied); *In re Hechinger Inv. Co. of Del., Inc.*, 327 B.R. 537, 547 n. 17 (D. Del. 2005) (addressing the Section 108(a) issue in one sentence in a footnote: "[t]he court concludes that the breach of fiduciary claims were timely asserted under 11 U.S.C. Section 108(a), and that plaintiff has standing to bring this litigation on behalf of the corporation."); *In re Yellowstone Mountain Club*, 436 B.R. 598, 651, n. 52 (D. Mont. 2010) (the court recognized, citing Section 108(a), that "if the applicable statute of limitations had not expired by [the bankruptcy filing date], the claims were timely asserted because two years had not passed since the filing of the bankruptcy before the claims asserted herein were filed." ).

announce. Achieving a better policy outcome…is a task for Congress, not the courts." *Id.* at 13-14.[11] While this Court is mindful of reading Section 108(a) as written, this Court is persuaded by the express language in *In re Greater Southeast Community Hospital*, which specifically addressed Section 108(a) and declined to apply the literal application because it would "produce an absurd result." 333 B.R. at 535.

The legislative history of Section 108(a) reflects Congress' intent to allow a "trustee additional time, upon stepping into the shoes of the debtor, to discover and evaluate potential causes of action or perform other acts required to preserve the debtor's rights." *In re Fairfield Sentry Ltd.*, 452 B.R. 52, 58 (S.D.N.Y. 2001). In reconciling the term "trustee" in Section 108 to its application to a liquidating trust in *Greater Southeast Community Hospital*, the court stated:

> It makes no sense that an estate's state law claims could have been pursued by "the trustee" by virtue of Section 108(a) until the fall of 2004 but that this power disappeared into the ether when these same claims vested in a liquidating trust pursuant to 11 U.S.C. Section 1123(b)(3)(B) as successor to the trustee under a plan confirmed in the spring of 2004. When Section 108(a) refers to "the trustee['s]" pursuit of claims, it only makes sense to view that provision as entailing a successor to the trustee's power to pursue such claims to benefit creditors. In other words, Section

---

[11] *Hartford Underwriters* is distinguishable and therefore not controlling. In *Hartford*, the Supreme Court considered whether Hartford, an administrative claimant under the Bankruptcy Code, was the proper party to seek recovery under Section 506(c). *Id.* at 5. The Supreme Court construed the language of Section 506(c) to mean that only the trustee has the independent right to seek recovery under that section, even in the absence of specific language excluding others. *Id.* at 8. The plaintiff was an administrative claimant, not a representative of the estate under Section 1123(b)(3)(B), so the Court was not presented with the question whether a representative of the estate could assert a claim under Section 506(c). In fact, *Hartford Underwriters* does not even mention Section 108(a).

13

> 108(a) ought to apply when there has been a confirmed plan vesting identified claims in a successor who is acting at the behest of creditors (or who is a successor by reason of a negotiated acquisition of such claims from the estate as part of the confirmed plan, which the creditors were able to evaluate with respect to the benefits conferred upon them).

*Id.*, 333 B.R. at 536.

The court reasoned that because the Congressional intent behind Section 108(a)'s two-year extension of the statute of limitations is to preserve the interests of the debtor's estate, that protection applies "when there has been a confirmed plan vesting identified claims in a successor who is acting at the behest of creditors (or who is a successor by reason of a negotiated acquisition of such claims from the estate as part of the confirmed plan, which the creditors were able to evaluate with respect to the benefits conferred upon them)." *Id.* at 536.

> [T]he Plan created a new entity, the Trust, to prosecute and disburse unliquidated claims of the estate. The Trust, as successor representative of the estate, stands in the shoes of the debtor-in-possession who, in turn, stands in the shoes of the trustee under 11 U.S.C. Section 1107. As such, it is subject to the same defenses that are applicable to ta bankruptcy trustee and is governed by the same statute of limitations provisions, including Section 108(a)

*Id.* at 537.

The Trust here was created pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, and as a successor to bankrupt Antioch, to pursue claims for the benefit of creditors of Antioch.[12] This Court has already found that the Trust stands in the shoes of

---

[12] The "aim [of Section 1123(b)(3)(B)] was to make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action such as those for previous insider misconduct and mismanagement of debtor. Thus, the statute was in

14

Antioch and can bring any claim that Antioch could have brought. (Doc. 22 at 45).[13]

Other courts have concluded that estate representatives, other than a trustee or a debtor-in-possession, can invoke the tolling provisions of Section 108.[14] The Trust is acting on behalf of a debtor-in-possession, as a representative of its estate, and is pursuing claims that belonged to the debtor for the benefit of the debtor's creditors.

Pursuant to the Plan and Confirmation Order, the Company transferred certain assets to the Trust, including the claims that are the subject of this litigation. (Plan, Case No. 08-35741, Doc. 219 at 95-96 (Bankr. S.D. Ohio)). The Trust is a liquidating trust and was established for the sole purpose of liquidating its assets for the benefit of its beneficiaries. (*Id.* at 101). The beneficiaries of the Trust are the Company's Class 5 and

---

furtherance of the purpose of preserving all assets of the estate while facilitating confirmation of a plan." *In re S. Indus. Banking Corp.*, 59 B.R. 638, 642 (E.D. Tenn. 1986).

[13] The Bankruptcy Court created the Trust under the terms of the confirmed plan of reorganization and through the power of the Bankruptcy Code. The beneficiaries of the Trust are all of those creditors of the interest holders in Antioch that received nothing under the confirmed plan or pursuant to other order of the Bankruptcy Court during the pendency of Antioch's bankruptcy case. All of Antioch's other creditors were not included as beneficiaries of the Trust because they all received a full recovery of their claims against the debtor. (Findings of Fact, Conclusions of Law and Order under 11 U.S.C. §§ 1126 and 1129(a) and (b) and Fed. R. Bankr. P. 3020(I)). This Court previously held that "[t]he Trust was created to litigate claims in place of the dissolved estate…[a]s a result, and consistent with fundamental bankruptcy law, the Trustee stands in the shoes of Antioch, and therefore can bring any claim that Antioch could have brought." (Doc. 22 at 45).

[14] "In holding that the tolling provision of Section 108(a) is applicable to plaintiff's causes of action, I reject defendants' arguments…that [a Creditor's Committee] may not invoke the benefits of Section 108…The Committee is acting on behalf of [Plaintiff], the debtor-in-possession…A debtor-in-possession has the powers and duties of a trustee…therefore, both because it is standing in the shoes of Corell in bringing these claims and because it is acting on behalf of or as an agent for the trustee…[plaintiff] is entitled to invoke the statutory protections of Section 108." *Official Comm. of Creditors of Corell Steel v. Fishbein & Co.*, P.C., No. 91-4919, 1992 U.S. Dist. LEXIS 11618, at *3, n.6 (E.D. Pa. Aug. 10, 1992).

15

Class 7 creditors, creditors who received nothing when the Company's Plan was confirmed. (*Id.* at 100).[15] It is for the benefit of these creditors that the Trust was created, and on behalf of whom the Trustee is prosecuting this case.[16] The Plan and Confirmation Order expressly note that the Trustee is a representative of the Company's bankruptcy estate pursuant to Section 1123(b)(3) of the Bankruptcy Code, with authority to litigate and liquidate the Trust assets. (*Id.* at 75-76).

Accordingly, the Trust is entitled to Section 108(a) tolling, and Claim 5 survives as a matter of law.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff's motion for partial reconsideration of the Order granting Defendant's motion for partial summary judgment (Doc. 70) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

**IT IS SO ORDERED**.

Date: 10/28/13  *s/ Timothy S. Black*
Timothy S. Black
United States District Judge

---

[15] Class 5 claimants are certain unsecured creditors of the Antioch Company and consist principally of persons that held unsecured notes owed by Antioch. Class 7 claimants are the former members of the ESOP who were equity holders of Antioch. (Bankruptcy Order at 76, ¶ 5.13(e)).

[16] A bankruptcy trustee and a debtor-in-possession owe fiduciary duties to all of the creditors of the bankruptcy. *Natco Indus., Inc. v. Fed. Ins. Co.*, 69 B.R. 418 (S.D.N.Y. 1987).

16