IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| ANTIOCH LITIGATION TRUST, W. TIMOTHY MILLER, TRUSTEE, | : | CASE NO. 09-CV-218 |
| | : | (Judge Timothy S. Black) |
| Plaintiff, | | |
| | : | **DEFENDANT'S MOTION TO** |
| v. | | **STRIKE THE EXPERT REPORT** |
| | : | **OF BARBARA WAGNER AND TO** |
| MCDERMOTT WILL & EMERY LLP, | | **EXCLUDE HER TESTIMONY** |
| | : | |
| Defendant. | | |
| | : | |

Pursuant to Fed. R. Evid. 702 and Fed. R. Civ. P. 26(a)(2)(B) and 37(c)(1),

Defendant McDermott Will & Emery LLP ("MWE") moves to strike the written report of

attorney Barbara Wagner, who was retained by Plaintiff to provide expert opinion testimony in

this case, and to exclude all evidence relating to Wagner's opinions.

The Court should grant this Motion for five separate and independent reasons:

(1) Wagner has failed to explain "how and why" MWE breached the applicable standard of care,

(2) Wagner has failed to explain "how and why" MWE's alleged breach of the standard of care

caused injury to The Antioch Company, (3) Wagner is not qualified to provide expert opinion

testimony on either the standard of care or causation of injury in this case, (4) Wagner has applied

an incorrect "higher" standard of care, and (5) Wagner's report fails to comply with

Rule 26(a)(2)(B).

A copy of Wagner's report is attached as Exhibit 1. For the Court's convenience, MWE has: (1) highlighted some of the defects of her report that are addressed in this Motion, (2) included an excerpt of Rule 26(a)(2)(B)(i) and (ii) at the top of each page; and (3) identified at the bottom of each page whether the report cites to any supporting facts as Rule 26 requires. A similarly highlighted copy of Wagner's deposition is attached as Exhibit 2.

Respectfully submitted,


/s/ Charles J. Faruki
Charles J. Faruki (0010417)
    Trial Attorney
Jeffrey S. Sharkey (0067892)
Donald E. Burton (0040553)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: (937) 227-3705
Telecopier: (937) 227-3717
Email: cfaruki@ficlaw.com

Attorneys for Defendant
McDermott Will & Emery LLP

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE THE REPORT OF BARBARA WAGNER AND EXCLUDE HER TESTIMONY

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY ..............................................................................1

II.    STANDARD OF REVIEW ........................................................................................3

III.   THE COURT SHOULD STRIKE WAGNER'S EXPERT REPORT AND EXCLUDE ALL EVIDENCE RELATING TO HER OPINIONS FOR FIVE SEPARATE AND INDEPENDENT REASONS ..............................................................4

      A.    Wagner has Failed to Explain "How and Why" MWE Breached the Standard of Care ...................................................................................................4

      B.    Wagner has Failed to Explain "How and Why" MWE's Alleged Breach Caused Antioch Injury .................................................................................................9

      C.    Wagner is Not Qualified to Provide Her Opinions .................................................11

      D.    Wagner has Applied an Incorrect Standard of Care .............................................14

      E.    Wagner's Report Fails to Comply with Rule 26(a)(2)(B) ....................................17

# I.   **INTRODUCTION AND SUMMARY**

Attorney Barbara Wagner has submitted an expert report claiming that "from approximately fall 2006 until its representation was terminated on June 5, 2008," Defendant McDermott Will & Emery LLP ("MWE") "failed to fulfill the applicable standard of care, [The Antioch Company ("Antioch")] suffered losses as a result and there is a direct causal connection between the breach of duties and the losses." July 12, 2013, Expert Opinions of Barbara Wagner ("Wagner Report"), p. 1. This time period coincides with efforts by Antioch to sell, refinance, or recapitalize itself (the "2007-2008 sales process"), a sale-leaseback transaction between Antioch and Levimo, LLC ("Levimo"), the insolvency of the surety ("Condor") that backed notes issued to Antioch's retirees, and other events addressed in Wagner's report. Id. at 3-9. The Court should strike Wagner's report and exclude all evidence relating to Wagner's opinions for five separate and independent reasons.

First, to satisfy the reliability standard of Fed. R. Evid. 702, an expert witness must explain "how and why" she reached her opinions. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529, 531 (6th Cir. 2008). Wagner claims that MWE made a series of "missteps," but concedes that those alleged missteps "taken individually might not be found to have the requisite basis for a finding of liability." Wagner Report, p. 12 (emphasis added). Wagner nevertheless goes on to claim that "taken in their entirety," the "sum total of missteps" shows that MWE's conduct fell below the standard of care. Id. at 12-13 (emphasis added).

However, Wagner never explains "how and why" the alleged missteps, even when "taken in their entirety," show that MWE's advice fell below the applicable standard of care. In other words, the defect in her report is that she lists some of the alleged missteps, but she never

explains "how and why" the alleged missteps, when "taken in their entirety," show that MWE breached the standard of care. Her opinion is, therefore, inadmissible.

Second, Wagner has failed to identify "how and why" MWE's alleged breach caused Antioch injury. Indeed, Wagner's opinions on causation of injury veer into abject speculation. Although Wagner suggests that various acts and omissions "may have" or "might have" caused injury to Antioch, she never identifies any specific harm caused by MWE, e.g., Wagner Report, p. 14 (stating that if MWE had advised Antioch's board of directors about Lee Morgan's status as a subordinated noteholder, then the Board "might have better designed contingency plans") (emphasis added). Moreover, at her deposition, Wagner conceded that she was not providing an opinion as to particular damages. Sept. 13, 2013 Deposition of Barbara J. Wagner ("Wagner Depo.") (attached as Exhibit 2), p. 237 ("Q. But you told us earlier that your opinions -- or the scope of your opinions in this case do not include opinions with regard to saying that particular deals were lost, that's beyond the scope of your opinion; is that right? A. That's correct."). Thus, Wagner's speculative opinion on causation of injury should also be excluded under Rule 702.

Third, Wagner is not qualified to provide opinions on the applicable standard of care or causation of injury in this case. Wagner relies on her experience to form her opinions. Wagner Report, p. 2 ("My analysis is made in the context of my experience . . . ."). However, with respect the standard of care, Wagner's experience does not "match up" with MWE's role in advising Antioch during the relevant time period. Indeed, Wagner has not worked in private practice since 1991. Wagner Report, Ex. A. Additionally, with respect to her opinions on causation of injury, Wagner has identified no experience to demonstrate the reliability of her opinions.

Fourth, Wagner has applied an incorrect standard of care. Instead of applying "the knowledge, skill, and ability <u>ordinarily</u> possessed and exercised by members of the legal profession similarly situated" as required by law, <u>Capital City Energy Group, Inc. v. Kelley Drye & Warren, LLP</u>, No. 2:11-CV-00207, 2013 U.S. Dist. LEXIS 139341, at *43 (S.D. Ohio Sept. 27, 2013) (emphasis added) (internal quotation marks and citations omitted), Wagner's opinions are based upon a "higher" standard of care without any legal basis, Wagner Report, p. 12, and in her deposition she admitted that she applied her higher standard of care to MWE, Wagner Depo. pp. 107-09. This deficiency renders her opinions both irrelevant and unreliable.

Finally, Wagner's report fails to comply with Fed. R. Civ. P. 26(a)(2)(B) by not providing "a complete statement of all opinions," "the basis and reasons for them," and "the facts or data considered" by Wagner. Rule 26(a)(2)(B)(i) and (ii). In addition, Wagner does not cite to a single document or deposition in her report. Wagner Report, pp. 1-16. These gaping holes in her report demand the exclusion of her testimony under Rule 37(c)(1), which demands "absolute compliance with Rule 26(a)." <u>R.C. Olmstead, Inc. v. CU Interface, LLC</u>, 606 F.3d 262, 271 (6th Cir. 2010) (internal quotation marks and citations omitted).

## II.  **STANDARD OF REVIEW**

"[T]he Court must exclude expert testimony that does not squarely comport with the Federal Rules of Evidence, including the Rule 702 requirements of qualifications, reliability, and relevance." <u>Info-Hold, Inc. v. Muzak LLC</u>, No. 1:11-cv-283, 2013 U.S. Dis. LEXIS 117953, at *2-3 (S.D. Ohio Aug. 20, 2013) (Black, J.). This gatekeeping function "applies to all expert testimony." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174 (1999) (citing <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993)). The proffering party must demonstrate by "a preponderance of evidence that the expert's

3

testimony is reliable, relevant, and that the expert is qualified to give his opinion on each subject matter for which it is offered." Id. at *3-4 (citing In re Scrap Metal Antitrust Litig., 527 F.3d 517, 531-32 (6th Cir. 2008).

**III.     THE COURT SHOULD STRIKE WAGNER'S EXPERT REPORT AND EXCLUDE ALL EVIDENCE RELATING TO HER OPINIONS FOR FIVE SEPARATE AND INDEPENDENT REASONS**

      A.     Wagner has Failed to Explain "How and Why" MWE Breached the Standard of Care

When assessing the reliability of an expert's opinion, the Court must "determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529-30 (6th Cir. 2008). To satisfy this standard, the expert must explain "how and why" she has reached her opinion. Id. at 531; accord: Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999).

The burden of explaining "how and why" an expert reaches her opinion applies with equal force to scientific and non-scientific testimony. Thomas v. City of Chattanooga, 398 F.3d 426, 431-32 (6th Cir. 2005). In Thomas, the Sixth Circuit Court of Appeals followed the Advisory Committee Note to Rule 702, which states in pertinent part:

> "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"

Thomas, 398 F.3d at 432 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amend.)). As the witness in Thomas failed to offer a sufficient rationale for his "conclusory" opinion, the Sixth Circuit refused to take the witness's "word for it" and permit his opinion testimony. Thomas, 398 F.3d at 432. Accord: Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 254 (6th

Cir.) ("A district court is not required to admit expert testimony 'that is connected to existing data only by the *ipse dixit* of the expert.'" (quoting <u>Gen. Elec. v. Joiner</u>, 522 U.S. 136, 146, 118 S. Ct. 512, 519), <u>cert</u>. <u>denied</u>, 534 U.S. 822, 122 S. Ct. 56 (2001)).

Here, Wagner has identified various alleged missteps by MWE. In her report, however, she conceded that "taken individually [they] might not be found to have the requisite basis for a finding of liability." Wagner Report, p. 12. Instead, she claimed that there is such a basis when the alleged missteps are "taken in their entirety." <u>Id</u>. at 12-13. Specifically, she stated:

> "<u>There are some individuals instances where MWE provided</u> <u>perfectly acceptable and appropriate advice and counsel; there are</u> <u>other instances where MWE's advice did not meet the appropriate</u> <u>standard of care, but there may have been no direct causal link to</u> <u>any loss; and there are instances where MWE's advice did not meet</u> <u>the appropriate standard of care, but taken individually might not</u> <u>be found to have the requisite basis for a finding of liability.</u> However, <u>taken in their entirety</u>, MWE's breaches of care and loyalty, its failure to apply the requisite skill and knowledge, its own conflicts in identifying its client, as well as advising Antioch's representatives of their fiduciary duties, and in some instances its failure to act at all, lead to a finding of a breach of the requisite duty. <u>The sum total</u> of missteps, omissions and bad advice that MWE was responsible for in its representation of Antioch are sufficient to lead to a finding of legal malpractice against MWE."

Wagner Report, pp. 12-13 (emphasis added). <u>Accord</u>: Wagner Depo., p. 258 ("I'm saying the <u>totality</u> of McDermott's representation over sixteen months was -- did not meet the standard of care and there were losses . . . .") (emphasis added).

Although Wagner identifies some of the alleged individual missteps, she never explains how and why their "sum total" leads to a finding of malpractice. Wagner Report, pp. 12-15. In addition, Wagner admitted at her deposition that she could not explain how and

5

why those missteps were related.  Wagner Depo., p. 199 ("They -- as I've said in my report, [MWE] did some things perfectly competently.  They made a number of mistakes.  I cannot tie you -- put you together a specific, you know, dotted line and say all these related in the same way.").

Wagner was required to explain "how and why" the alleged missteps, when "taken in their entirety," show that MWE's conduct fell below the standard of care.  Because she has completely failed to explain how and why the "sum total" of the alleged missteps shows that MWE's conduct fell below the standard of care, the Court should not simply take her "word for it."

In addition, Wagner cannot say how or why her opinion would change if even one alleged "misstep" was removed from her analysis:

> "Q. And so if the Court were to determine that one or more of these instances was not a deviation from the standard of care, we can't tell from your report what effect that would have on your opinion, can we?
>
> A. I think that's correct."

Wagner Depo., p. 200.  In other words, absent any "misstep" contributing to her opinion, Wagner has no opinion as to whether MWE breached the standard of care.

The unsupported nature of Wagner's opinion is particularly notable because the two "missteps" that "concerned [her] the most" cannot serve as bases for findings of liability in this case:  (1) MWE's advice concerning the sale-leaseback transaction with Levimo, and (2) MWE's advice concerning the insolvency of Condor.

> "Q. Now . . . tell me all the missteps that you can tell me today.

A. Okay. Well, the two that concerned me the most were the LEVIMO transaction . . . .

I think Condor was another major one . . . .

Q. . . . You said these were the two that concerned you the most, LEVIMO and Condor; is that right?

A. Uh-huh. That's correct."

Wagner Depo., p. 128.

However, the Levimo transaction is not mentioned in the Plaintiff's First Amended Complaint (Doc. 14) (filed Aug. 31, 2009).[1] Indeed, Wagner concedes that it was Dinsmore – not MWE – that represented Antioch on the Levimo matter (Wagner Depo., p. 199); she never explains how MWE could be responsible for that transaction. Most importantly, in the Antioch bankruptcy case, this Court recently granted several defendants summary judgment on Plaintiff's breach-of-fiduciary duty claim concerning Levimo because Plaintiff failed to establish damages. Apr. 7, 2014 Order Granting the Morgan Defendants' Motion to Exclude Plaintiff's Expert Report Regarding Damages (Doc. 213), The Antioch Litig. Trust v. Morgan, Case No. 3:10-cv-00156 (Doc. 300), pp. 29045-46. Plaintiff did not include any damages resulting from the Levimo transaction in its initial disclosures, and its Rule 30(b)(6) designee testified that Antioch did not suffer any financial loss from the Levimo Transaction. Id. at 29045 n.21. Because discovery in the Antioch bankruptcy case was consolidated with discovery in this case,

---

[1] When the Court construed the Plaintiff's First Amended Complaint in its ruling that denied MWE's motion to dismiss, the Court found that Plaintiff had alleged six claims – none of which related to Levimo. Aug. 27, 2010 Order That Defendant's Motion to Dismiss (Doc. 16) Be Denied (Doc. 22), pp. 796-97. Indeed, when Plaintiff later objected to the Court's characterization of the First Amended Complaint, Plaintiff did not argue that the First Amended Complaint included a claim as to Levimo. July 10, 2013 Plaintiff's Motion for Partial Reconsideration of the Order Granting Defendant McDermott Will & Emery LLP's Motion for Partial Summary Judgment (Doc. 70), pp. 1603-06; July 10, 2013 Plaintiff's Memorandum in Opposition to Motion of MWE for an Order to Clarify the Scope of Plaintiff's Legal Malpractice Claim Against MWE and to Limit Plaintiff's Claims to Those Pled (Doc. 71), pp. 1619-21. Fact discovery has long since closed in this case, and MWE has not conducted fact discovery on the Levimo transaction. It would be unfairly prejudicial for Wagner to base her opinion on allegations that were first raised in her report after the close of fact discovery. Fed. R. Evid. 403.

these deficiencies further undermine Wagner's reliance on Levimo.  Aug. 12, 2011 Order

Granting Motions to Coordinate Discovery (Doc. 39), p. 1054.

Additionally, with respect to the Condor matter, Wagner cannot identify any harm

to Antioch:

> "Q. Miss Wagner, with regard to the Condor matter that you've
> testified to, do you agree with me that MWE's advice with regard
> to Condor, or lack of advice with regard to Condor, did not cause
> injury to Antioch?
>
> A. I frankly don't know.  I think it certainly complicated the ability
> to get a transaction done, so I would imagine that there was some
> injury as a result."

Wagner Depo., p. 249 (emphasis added).  Thus, aside from speculation, Wagner cannot say

whether MWE's advice with respect to Condor amounted to legal malpractice.

In short, Wagner has conceded that MWE's alleged missteps "individually" did

not fall below the standard of care, and she has failed to explain "how and why" those alleged

missteps, when "taken in their entirety," show that MWE's conduct fell below the standard of

care.  That failing alone demonstrates that her opinion as to the standard of care is not

admissible.  Moreover, that problem is compounded by the facts that (1) Wagner conceded that

her report does not explain whether MWE's conduct fell below the standard of care if any of the

alleged missteps was removed from her analysis, and (2) the two alleged missteps that

"concerned [her] the most" – Levimo and Condor – do not support a finding of liability in this

case.  Wagner Depo., pp. 128, 199-200.  The Court is left to take her "word for it" that MWE

breached the standard of care, and thus Wagner's opinion is unreliable and inadmissible under

Rule 702.

B.    Wagner has Failed to Explain "How and Why" MWE's Alleged Breach
       Caused Antioch Injury

Wagner has also failed to explain "how and why" she reached her opinion that

"there is a direct causal connection" between MWE's alleged breach of the standard of care and

injury to Antioch. Wagner Report, p. 1. There is nothing in her report that explains "how and

why" the alleged missteps (either "individually" or "taken in their entirety") caused injury to

Antioch. Id. at 1-16. Indeed, on these issues, Wagner veers into abject speculation in violation

of Rule 702. Baker v. Chevron USA, Inc., 680 F. Supp. 2d 865, 879 (S.D. Ohio 2010) ("[O]n

perhaps the most crucial issue of the case, [the expert's] initial reports only vaguely indicate his

causation opinions and fail to clearly set forth the basis for his opinions. This type of omission is

almost per se prejudicial."), aff'd, 533 Fed. App'x 509 (6th Cir. 2013) (citing Reed v. Binder, 165

F.R.D. 424, 430 (D.N.J. 1996) ("Nothing causes greater prejudice than to have to guess how and

why an adversarial expert reached his or her conclusion.")).

Wagner's opinions on causation of injury are speculative as to the 2007-2008

sales process, the sale-leaseback transaction with Levimo, and the Condor matter.

1.    2007-2008 Sales Process. In her report, Wagner faults MWE for

"missteps" during Antioch's attempt to sell, refinance, or recapitalize itself in 2007 and 2008, but

fails to identify any specific harm caused by those missteps. Wagner Report, pp. 12-15. Instead,

she speculates about what "may" or "might" have happened. For example, Wagner claims that if

MWE had advised the Antioch board of directors about Lee Morgan's status as a subordinated

noteholder, then "the board might have better designed contingency plans." Wagner Report,

p. 14 (emphasis added). In addition, Wagner suggests that MWE should have advised the

Antioch board about "the need to separate their personal loyalty to Lee and Asha [Morgan] from

9

their fiduciary obligations," and that because the board gave preferential treatment to the Morgans, the board "may have discouraged potential purchasers who were interested in acquiring control of Antioch." Id. (emphasis added). Accord: id. at 15 (stating that "MWE's inaction allowed the Morgans to continue to pursue their own interests, and to continue to undercut and scuttle other potential transactions, at the expense of the corporation" without identifying any specific potential transactions) (emphasis added). Wagner did not clarify her opinions on causation of injury at her deposition. On the contrary, she attempted to disown them. Wagner Depo., p. 141 (confirming that "the subject of whether or not and which deal or deals [were] lost" was "beyond the scope of" her opinion), p. 143 (stating that she is "not an expert on which deals should have been done"), p. 178 ("I am not trying to link one thing that McDermott did to a particular loss the company suffered."); p. 179 ("And I think it's very difficult to say they did this one thing and that had that specific loss.").

      2.    <u>Levimo</u>. Similarly, with respect to Antioch's advice concerning the sale-leaseback transaction with Levimo, Wagner was unable to link any alleged misstep by MWE with injury to Antioch.

> "Q. Can you identify any specific transaction that did not close because of the LEVIMO lease? I just want to make sure my record is clear.
>
> A. I think as I said before, <u>I can't say there was any specific transaction that didn't close because of the LEVIMO lease</u> . . . .
>
> Q. Did that issue cause any injury to the company?
>
> A. I think it <u>could have been</u> a <u>contributing</u> factor. I think there were many factors over a period of time that caused the company to not close a deal and I think that could have been one of them.
>
> Q. You keep saying could have been.
>
> A. Uh-huh.

Q. So you're not rendering an opinion that it was, am I correct?

A. It was one of many factors. And I am not -- I am not -- I'm not an expert on the financial -- <u>I'm not trying to provide an opinion on the damages</u> . . . .

Q. You said you are or are not?

A. <u>I am not providing an opinion on the damages</u> or whether a particular deal -- whether -- the fact of the matter is that because no deal closed in the sixteen months that McDermott was involved certainly was a major cause of damage to the company."

Wagner Depo., pp. 172-74 (emphasis added).

3.     <u>Condor</u>. Finally, as demonstrated above, Wagner conceded at her deposition that she did not know whether MWE's advice with respect to the Condor matter caused injury to Antioch. Wagner Depo. p. 249. Wagner later said that Condor was "one of the many instances of things that I think [the attorney] did not meet her -- the standard of care and the net result was a loss. So I'm not going to say . . . there was any specific damage that I can attribute to that." <u>Id</u>. at 256.

Wagner's abject speculation as to causation of injury in this case will not "help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702. The Court should, therefore, conclude that Wagner's opinion that MWE's conduct caused injury to Antioch is inadmissible.

C.     <u>Wagner is Not Qualified to Provide Her Opinions</u>

Wagner is also not qualified to testify as to either MWE's standard of care or causation of injury in this case. Under Fed. R. Evid. 702, an expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the

conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note (2000 amend.).

Not every attorney is qualified to provide expert testimony in a legal malpractice case. For example, in Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP, 593 F. Supp. 2d 1153 (S.D. Cal. 2008), the district court found that an attorney with 50 years of experience in patent law could not testify on matters of attorney ethics. Id. at 1163-64. Accord: Elswick v. Nicholas, 144 F. Supp. 2d 758, 766 (E.D. Ky. 2001) (an expert's testimony "must match up" with his or her qualification), aff'd, 50 Fed. App'x 193 (6th Cir. 2002).

In addition, when a witness is too far removed from the experience giving rise to her expertise, the court should not qualify that witness as an expert. United States v. Lupton, 620 F.3d 790, 799 (7th Cir. 2010) (finding that the witness's "thirty-year distance from the day-to-day goings-on in the brokerage world and lack of experience with the statutes and contract at issue . . . call into question the extent to which [the witness's] 'knowledge, skill, experience, training, or education' qualify him to render an opinion on what constitute 'innocent, normal, and acceptable practices' among real estate brokers.") (citation omitted), cert. denied, __ U.S. __, 131 S. Ct. 1544 (2011). Accord: Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."), cert. denied, 513 U.S. 1111, 115 S. Ct. 902 (1995).

Wagner currently works as an assistant law professor at the Salmon P. Chase College of Law in Kentucky, but she conceded that experience is inapplicable here. Wagner

Depo., pp. 310-11 (admitting that "I would say that teaching a course at a law school does not necessarily mean that you're familiar with the give-and-take and what actually happens in practice when you're doing a deal."). Moreover, she does not identify that experience as contributing to her expert report. Wagner Report, p. 2 ("My analysis is made in the context of my experience . . . as a corporate attorney, including experience practicing both in law firms and, for over 20 years, in the inhouse legal department of a public company.").

Antioch was an Ohio corporation. Wagner spent the bulk of her career – between 1991 and 2012 – as in-house counsel for Chiquita Brands International, Inc. ("Chiquita"), a publicly-traded New Jersey corporation. Wagner Report, Ex. A. At Chiquita, however, Wagner never participated in any transaction similar to the 2007-2008 sales process:

> "Q. So you were never involved in a dual track or dual path process in which you had two investment bankers operating, regardless of the length of the process; is that accurate?
>
> A. Not -- not in a way analogous to the Antioch situation. . . . I would say we certainly have had the dual track but nothing analogous to Antioch."

Id. at 295-96.

Wagner has not been in private practice for 23 years. Wagner Report, Ex. A. While she was in private practice, Wagner never served as lead outside counsel to a transaction comparable to the 2007-2008 sales process. Wagner Depo., p. 303 ("Q. Have you ever been lead outside counsel in a transaction that you would compare to the one that McDermott was working on for Antioch? A. No.").

Indeed, Wagner has spent only an early four years of her career – between 1987 and 1991 – advising Ohio corporations. Wagner Report, p. 3 ("I also note that while I am

admitted to practice in Ohio, and practiced with law firms representing Ohio corporations for over four years, my inhouse experience was with a company incorporated in a different state.") and Ex. A. Any relevant experience that Wagner obtained during that time period is, at this point, stale. Lupton, 620 F.3d at 799.

Additionally, even if the Court were to find that Wagner was qualified to testify as to the applicable standard of care, Wagner has failed to demonstrate how she is qualified to opine on causation of injury. Elswick, 144 F. Supp. 2d at 767. Wagner has never explained how her experience as a law professor, as in-house counsel, or as a private attorney informed her opinion that MWE caused Antioch harm. See Advisory Committee's Notes to Rule 702 (expert witnesses who rely "solely or primarily on experience" must demonstrate "why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). Thus, even if her opinions on causation of injury were sufficiently reliable (as demonstrated above, they are not), they are still inadmissible because Wagner is not qualified to offer them.

Because there is no basis to qualify Wagner to testify as to her opinions in this case, her opinions are inadmissible under Rule 702.

### D. Wagner has Applied an Incorrect Standard of Care

Attorneys must "exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated." Capital City Energy Group, Inc. v. Kelley Drye & Warren, LLP, No. 2:11-CV-00207, 2013 U.S. Dist. LEXIS 139341, *43 (S.D. Ohio Sept. 27, 2013) (emphasis added) (internal quotation marks and citations omitted); Palmer v. Westmeyer, 549 N.E.2d 1202, 1205 (Ohio Ct. App. Lucas Cty. 1988) (per curiam) (quoting 67 Ohio Jurisprudence 3d (1986) 16, Malpractice, Section 9). "The expert

explains what the attorney's duties were to his client and what might constitute a breach of that duty.  In other words, much like an expert in a medical malpractice case, the witness helps the jury understand a special professional standard of care that is different from the 'reasonable person' standard used in ordinary negligence cases."  Innes v. Howell Corp., 76 F.3d 702, 711 (6th Cir. 1996).

When an expert opinion is based on the wrong standard, the opinion should be excluded as irrelevant and unreliable.  For example, this Court recently excluded an expert's opinion that relied on "an improper legal standard."  Info-Hold, Inc. v. Muzak LLC, No. 1:11-cv-283, 2013 U.S. Dis. LEXIS 117953, at *8-14 (S.D. Ohio Aug. 20, 2013) (Black, J.).  Accord: United States v. Wintermute, 443 F.3d 993, 1001 (8th Cir. 2006) (affirming the exclusion of an expert's opinion that "misrepresented the government's burden" to prove an element of the charged crime); Noskowiak v. Bobst SA, No. 04-C-0642, 2005 U.S. Dist. LEXIS 19536, at *20, *33 (E.D. Wis. Sept. 2, 2005) (striking expert reports and excluding testimony as irrelevant and unreliable because the expert applied an incorrect legal standard).

Here, Wagner claims that the "standard of care is much higher than in the normal representation of a company not facing such dire circumstances. . . ."  Wagner Report, p. 12 (emphasis added).  Wagner later confirmed that she applied a "higher" standard of care to form her opinion:

> "Q. Then you say this standard of care is much higher than in the normal representation of a company not facing such dire circumstances . . . .  Have I read that correctly?
>
> A. That's correct.

Q. So what you're saying there is that you think <u>the standard of care that was applicable to or governed McDermott was much higher than normal</u>; is that right?

A. I think that's correct."

Wagner Depo., pp. 107-08 (emphasis added).

Wager claims that her "higher" standard of care derives from a comment to the Ohio Rules of Professional Conduct, which states that "[t]he required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence." Wagner Depo., p. 110; Ohio Rule of Professional Conduct 1.1, cmt. 5.[2] However, that comment to the Rules of Professional Conduct does not create a "higher" standard of care. Instead, Comment 5 demands only "more extensive treatment" in complex situations. Wagner does not suggest that MWE did not work hard enough. Instead, she has applied a "higher" standard of care, which is not the standard of care.

Moreover, the Rules of Professional Conduct do not and cannot alter the standard of care in legal malpractice actions. <u>Brown v. Morganstern</u>, No. 2002-T-0164, 2004 Ohio App. LEXIS 2571, at *21 (Trumbull Cty. June 4, 2002) (recognizing that "any breach of the Code of Professional Responsibility or an Ethical Consideration does not itself give rise to a claim in legal malpractice"); <u>Montali v. Day</u>, No. 80327, 2002 Ohio App. LEXIS 2812, at *13 (Cuyahoga Cty. May 30, 2002) ("It is well established that the violation of a disciplinary rule does not create a private cause of action.").

---

[2] The transcript of Wagner's deposition incorrectly identifies this comment as Rule 1.15.

E.    Wagner's Report Fails to Comply with Rule 26(a)(2)(B)

Finally, Wagner has failed to comply with the requirements of Rule 26(a) by submitting an incomplete written report. The Court should, therefore, strike her report and exclude her testimony under Rule 37(c)(1).

Under Rule 26(a)(2)(B),

"Unless otherwise stipulated or ordered by the court, [an expert] disclosure must be accompanied by a written report – prepared and signed by the witness -- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii) the facts or data considered by the witness in forming them . . . ."

Rule 26(a)(2)(B) (emphasis added).

"Failure to comply with Rule 26(a)'s disclosure requirements precludes a party from using such evidence at a trial or hearing, or on a motion, unless such failure was substantially justified or harmless." Baker, 680 F. Supp. 2d at 877 (citing Rule 37(c)(1)). Rule 37(c)(1) "requires absolute compliance" with Rule 26(a)(2)(B), and a party who has failed to comply with Rule 26(a) bears the burden of proving that its failure was substantially justified or harmless. R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262, 271-72 (6th Cir. 2010).

In R.C. Olmstead, the defendants were accused of copying the plaintiff's data processing software. Id. at 267. The plaintiff retained an expert who prepared and submitted a report, including 197 pages of screenshots, comparing the defendants' software to the plaintiff's

software. R.C. Olmstead, Inc. v. CU Interface, LLC, 657 F. Supp. 2d 905, 907 (N.D. Ohio 2008), aff'd, 606 F.3d 262 (6th Cir. 2010).

The Northern District of Ohio found that the expert's report failed to comply with Rule 26(a)(2)(B) for several reasons. For example, the report did not contain "a complete statement of all opinions . . . and the basis and reasons for them" because the report suggested that there were "many other similarities" between the two programs aside from those identified in the report. Id. at 909 (internal quotation marks omitted). The court explained that "Rule 26(a)(2)(B)(i) does not allow an expert to list only some of his reasons for a conclusion and then incorporate the remainder through an unrevealing catchall phrase." Id. (emphasis added).

Turning to Rule 26(a)(2)(B)(ii), the court also found that the report did not contain "the data or other information considered by the witness" because the report did not make specific references to specific screen shots that justified the expert's assertions. Id. at 910 (internal quotation marks and citation omitted); id. at 910-11 (expert report was deficient for "lack of keying or reference between the opinions and the reviewed materials" (citing Saldago v. Gen. Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998))); Reed, 165 F.R.D. at 430 (expert report was deficient for referring to "massive amounts of documents," but expressing opinions "in vague terms with few specific references"). The R.C. Olmstead court also found that the report violated Rule 26(a)(2)(B)(ii) for "not even attempt[ing] to disclose outside information considered in forming [its] conclusions." R.C. Olmstead, 657 F. Supp. 2d at 911.

Given these deficiencies, among others, the court barred the use of the expert's report, and the Sixth Circuit Court of Appeals affirmed that decision. R.C. Olmstead, 657 F.

Supp. 2d at 914; R.C. Olmstead, 606 F.3d at 270. The Sixth Circuit held that the "[m]ost troubling" aspect of the report was the expert's failure to include "a complete statement of all opinions . . . and the basis and reasons for them." 606 F.3d at 270-71 (internal quotation marks omitted). The court reasoned that "[u]nder Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" Id. at 271 (quoting Salgado, 150 F.3d at 741 n.6).

The highlighted copy of Wagner's report, attached as Exhibit 1, shows that her report contains the same deficiencies that were found in R.C. Olmstead. For example, Wagner's report contains only "a summary of some of the particular situations which, based on [her] understanding of the events, contributed to [her] opinion." Wagner Report, p. 13 (emphasis added). Accord: Wagner Depo., p. 54 ("So what you have here in your summary of the facts -- or in the section that talks about application of MWE, is a summary of some of the particular situations but not all of them; is that right? A. That's correct.") (emphasis added). Thus, like the report in R.C. Olmstead, Wagner's report does not contain "'a complete statement of all opinions the witness will express and the basis and reasons for them,'" as required by Rule 26(a)(2)(B)(i). R.C. Olmstead, 657 F. Supp. 2d at 909 (emphasis omitted) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). Wagner cannot "list only some of [her] reasons for a conclusion and then incorporate the remainder through an unrevealing catchall phrase." Id. at 909 (emphasis added).

In addition, Wagner's report fails to cite to any evidence that Wagner considered when forming her opinions in violation of Rule 26(a)(2)(B)(ii). R.C. Olmstead, 657 F. Supp. 2d at 911 ("If conclusions in a report are based all or in part on facts not disclosed in the report, the

report does not comply with Rule 26(a)(2)(B)."). Wagner Report, pp. 1-16. Wagner understood that Rule 26(a)(2)(B) requires an expert report to identity the facts relied upon:

> "Q. Well, you understand that the reason that -- the rule we looked at earlier says that you have to have both a complete statement of all opinions and the basis and reasons for them and the facts or data considered is to avoid saying, well, I'm happy to look through the notebooks while all these lawyers sit here. Do you understand that was the purpose of the rule?
>
> A. That's correct."

Wagner Depo., p. 116.

However, Wagner's report does not contain a single citation to the evidence. Wagner Depo., p. 50 ("Q. Now, your report doesn't footnote the documents that you looked at; is that right? A. That's correct . . . . Q. Well, your report, as we've already established, doesn't contain a list of all of the documents that you relied upon -- A. That's correct.").

Given Wagner's complete disregard for the requirements of Rule 26(a)(2)(B), as well as Rule 37(c)(1)'s demand of "absolute compliance with Rule 26(a)," R.C. Olmstead, 606 F.3d at 271, the Court should strike Wagner's report and exclude her testimony from trial.

For each of these reasons, the Court should strike Wagner's written report and exclude all evidence relating to Wagner's opinions.

Respectfully submitted,


/s/ Charles J. Faruki
Charles J. Faruki (0010417)
   Trial Attorney
Jeffrey S. Sharkey (0067892)
Donald E. Burton (0040553)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3705
Telecopier:  (937) 227-3717
Email:  cfaruki@ficlaw.com

Attorneys for Defendant
McDermott Will & Emery LLP

## CERTIFICATE OF SERVICE

I certify that on the 7th day of May, 2014, I electronically filed the foregoing

Defendant's Motion to Strike the Expert Report of Barbara Wagner and to Exclude Her

Testimony with the Clerk of Courts using the CM/ECF system, which will send notification of

such filing to CM/ECF participants, and I hereby certify that I have mailed by United States

Postal Service the document to the non-CM/ECF participants:

Marcia Voorhis Andrew
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

Attorneys for Plaintiff
Antioch Litigation Trust

Richard A. Chesley
Gregory Otsuka
DLA PIPER LLP
203 N. LaSalle Street
19th Floor
Chicago, IL 60601-1293

Attorneys for Defendants
Houlihan, Lokey, Inc., Houlihan, Lokey Advisors, Inc.,
Houlihan, Lokey Capital, Inc.

Terence L. Fague
Daniel J. Gentry
COOLIDGE WALL
33 West First Street, Suite 600
Dayton, OH 45402

Attorneys for Defendants
Nancy Blair, Wayne Alan Luce, Frederick Walker

Scott A. King
Thomas A. Knoth
Jennifer L. Maffett
THOMPSON HINE LLP
Austin Landing I
10050 Innovation Drive
Suite 400
Dayton, OH  45342-4934

Attorneys for Defendants
Ben Carlson, Denis Sanan, Jeanine McLaughlin,
Malte vonMatthiessen


R. Daniel Prentiss
PRENTISS LAW FIRM
One Turks Head Place, Suite 380
Providence, RI  02903

Attorney for Defendant James Northrop


Robert A. Klingler
LAW OFFICE OF ROBERT A. KLINGLER CO., L.P.A.
525 Vine Street, Suite 2320
Cincinnati, OH  45202-3124

Attorney for Defendant G. Robert Morris


Robert T. Glickman
Robert R. Kracht
Kimberly A. Brennan
MCCARTHY LEBIT CRYSTAL & LIFFMAN CO., L.P.A.
101 West Prospect Avenue, Suite 1800
Cleveland, OH  44115


Michael N. Schaeffer
KEMP, SCHAEFFER & ROWE, CO., L.P.A.
88 West Mound Street
Columbus, OH  43215-5018

Attorneys for Defendant Candlewood Partners, LLC

James F. Wallack
Gregory O. Kaden
Vanessa V. Peck
GOULSTON & STORRS
400 Atlantic Avenue
Boston, MA  02110-3333

Ronald E. Gold
Scott R. Brown
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH  45202

Attorneys for Defendants
Michael Epstein, Paul Ravaris, CRG Partners Group


Michael L. Scheier
Brian P. Muething
Danielle M. D'Addesa
David T. Bules
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH  45202

Attorneys for Lee Morgan, Asha Morgan Moran, Chandra Attiken,
Marty Moran, Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2,
Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1,
Lee Morgan Pourover Trust #2


/s/ Jeffrey S. Sharkey
Jeffrey S. Sharkey


824586.1

24