IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| ANTIOCH LITIGATION TRUST, | : | CASE NO. 09-CV-218 |
| W. TIMOTHY MILLER, TRUSTEE, | | |
| | : | (Judge Timothy S. Black) |
| Plaintiff, | | |
| | : | |
| v. | : | **DEFENDANT'S MOTION FOR** |
| | | **SUMMARY JUDGMENT ON 2007-** |
| MCDERMOTT WILL & EMERY LLP, | : | **2008 CLAIMS SUPPORTED BY** |
| | | **THE OPINION TESTIMONY OF** |
| Defendant. | : | **BARBARA WAGNER** |

Pursuant to Fed. R. Civ. P. 56, Defendant McDermott Will & Emery LLP

("MWE") moves for summary judgment on the legal malpractice claims of Plaintiff Antioch

Litigation Trust, W. Timothy Miller, Trustee ("Plaintiff") insofar as they relate to efforts by The

Antioch Company ("Antioch") to sell, refinance, or recapitalize itself in 2007 and 2008 ("2007-

2008 sales process"), the insolvency of Antioch's surety ("Condor"), and any other matter

addressed in the expert report of Barbara Wagner.  July 12, 2013 Expert Opinions of Barbara

Wagner ("Wagner Report") (attached as Exhibit 1 to the May 7, 2014 Defendant's Motion to

Strike the Expert Report of Barbara Wagner and to Exclude Her Testimony (Doc. 84) ("Motion

to Strike")).  As demonstrated in the Motion to Strike, Wagner's opinions that MWE breached

the applicable standard of care with respect to those events and that this alleged breach caused

injury to Antioch are inadmissible under Fed. R. Evid. 702 and Fed. R. Civ. P. 26(a)(2)(B) and 37(c)(1).

Plaintiff is precluded from proving injury in this case relating to its 2007-2008 claims based upon this Court's recent ruling in the Antioch bankruptcy case. Order Granting the Morgan Defendants' Motion to Exclude Plaintiff's Expert Report Regarding Damages (Doc. 213) ("April 7 Order"), The Antioch Co. Litig. Trust v. Morgan, No. 3:10-cv-156 (S.D. Ohio Apr. 7, 2014) ("Bankruptcy Case") (Doc. 300).

In addition, Plaintiff must present expert testimony on the issues of injury and standard of care under Ohio law, and the time for Plaintiff to disclose its expert witnesses has passed. Thus, MWE is entitled to judgment as a matter of law on those claims that depend on Wagner's opinion testimony. Info-Hold, Inc. v. Muzak LLC, 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *4 (S.D. Ohio Aug. 20, 2013) (Black, J.) (citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2509-10 (1986)).

Pursuant to this Court's Standing Order Governing Civil Motions for Summary Judgment, a Statement of Proposed Undisputed Facts of Defendant McDermott Will & Emery LLP is attached as Exhibit A.

Respectfully submitted,


/s/ Charles J. Faruki
Charles J. Faruki (0010417)
    Trial Attorney
Jeffrey S. Sharkey (0067892)
Donald E. Burton (0040553)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3705
Telecopier:  (937) 227-3717
Email:  cfaruki@ficlaw.com

Attorneys for Defendant
McDermott Will & Emery LLP

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON CLAIMS RELATING TO THE 2007-2008 SALES PROCESS**

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY ................................................................................1

II.     SUMMARY JUDGMENT STANDARD ........................................................................2

III.    BACKGROUND ...............................................................................................................3

IV.    PLAINTIFF CANNOT ESTABLISH DAMAGES WITHOUT EXPERT
TESTIMONY BASED ON THIS COURT'S RULING IN THE ANTIOCH
BANKRUPTCY CASE .....................................................................................................5

V.     PLAINTIFF CANNOT ESTABLISH ITS CLAIMS WITH RESPECT TO THE
2007-2008 SALES PROCESS AND CONDOR BECAUSE PLAINTIFF FAILS
TO PROVIDE ADMISSIBLE EXPERT TESTIMONY ON CAUSATION OF
INJURY ..........................................................................................................................10

VI.    PLAINTIFF CANNOT ESTABLISH ITS CLAIMS AS TO THE 2007-2008
SALES PROCESS AND CONDOR BECAUSE PLAINTIFF FAILS TO
PROVIDE ADMISSIBLE EXPERT TESTIMONY ON THE STANDARD OF
CARE ..............................................................................................................................18

VII.   CONCLUSION ...............................................................................................................20

## I.     **INTRODUCTION AND SUMMARY**

The basis for this motion for summary judgment is straightforward: Plaintiff
Antioch Litigation Trust, W. Timothy Miller, Trustee ("Plaintiff) cannot establish essential
elements of its legal malpractice claims against Defendant McDermott Will & Emery LLP
("MWE") that relate to efforts by The Antioch Company ("Antioch") to sell, refinance, or
recapitalize itself in 2007 and 2008 (the "2007-2008 sales process"), the insolvency of the surety
("Condor") that backed notes issued to Antioch's retirees, and any other matter addressed in the
expert report of attorney Barbara Wagner. July 12, 2013 Expert Opinions of Barbara Wagner
("Wagner Report").

In the Antioch Bankruptcy Case, this Court granted summary judgment as to
Plaintiff's claims relating to the 2007-2008 time period because Plaintiff could not establish
injury. As demonstrated below, the same reasoning applies here.

In addition, as a matter of Ohio law, Plaintiff must show <u>with expert testimony</u>
that MWE breached the applicable standard of care while representing Antioch and that this
alleged breach caused Antioch loss. <u>Van Sommeren v. Gibson</u>, 991 N.E.2d 1199, 1206 and
1208, (Ohio Ct. App. Lucas Cty. 2013). It is well-settled that a jury cannot determine whether a
lawyer's conduct fell below the applicable standard of care and that a legal malpractice claim,
therefore, requires expert testimony. <u>Montgomery v. Gooding, Huffman, Kelly & Becker</u>, 163 F.
Supp. 2d 831, 835 (N.D. Ohio 2001).

Wagner has opined that MWE breached the standard of care during the 2007-
2008 sales process, the Condor matter, and other contemporaneous matters, and that this alleged
breach caused Antioch losses. Wagner Report, pp. 1-16. However, for the reasons demonstrated

in the May 7, 2014 Defendant's Motion to Strike the Expert Report of Barbara Wagner and to Exclude Her Testimony ("Motion to Strike"), Wagner's opinions are inadmissible under Fed. R. Evid. 702 and Fed. R. Civ. P. 26(a)(2)(B) and 37(c)(1).

Plaintiff's deadline to provide MWE with expert disclosures has passed; thus Plaintiff is unable to establish essential elements of its claims and MWE is entitled to judgment as a matter of law.  Dec. 4, 2013 Amended Calendar Order (Doc. 83), p. 1880 (setting March 14, 2014 as the deadline for Plaintiff's expert reports); Info-Hold, Inc. v. Muzak LLC, 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *4 (S.D. Ohio Aug. 20, 2013) (Black, J.) (citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2509-10 (1986)).

## II.        SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), a motion for summary judgment should be granted when the movant demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Info-Hold, Inc. Muzak LLC, 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *4 (S.D. Ohio Aug. 20, 2003) (Black, J.) (citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10).

"As a basis for summary judgment, a moving party can point to a lack of evidence to support the facts its opponent must prove to carry its burden of proof."  Info-Hold, at *4-5 (citing Celotex, 477 U.S. at 325, 106 S. Ct. at 2554).  "'The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case.'"

Tompkins v. Crown Corr., Inc., 726 F.3d 830, 837 (6th Cir. 2013) (quoting Hartsel v. Keys, 87

F.3d 795, 799 (6th Cir. 1996), cert. denied, 519 U.S. 1055, 117 S. Ct. 683 (1997)).

## III.        **BACKGROUND**

On July 12, 2013, Plaintiff served the expert report of Barbara Wagner on MWE.

A highlighted copy of Wagner's report is attached to the Motion to Strike as Exhibit 1. Wagner's

report discusses MWE's representation of Antioch during various events that occurred between

"approximately fall 2006 . . . [and] June 5, 2008," including but not limited to the 2007-2008

sales process, the Condor matter, and a sale-leaseback transaction between Antioch and Levimo,

LLC ("Levimo"). Wagner Report, pp. 1-16. Based on what she describes (Wagner Report,

pp. 1, 12) as the "sum total of missteps" during that time period, Wagner opines that "MWE

failed to fulfill the applicable standard of care, Antioch suffered losses as a result and there is a

direct causal connection between the breach of duties and the losses." Id.

As this Court has held, Plaintiff's allegation of legal malpractice, as pleaded in the

First Amended Complaint, was "unmanageable as one single claim." Oct. 28, 2013 Order (Doc.

77), p. 1830. Consequently, over the course of this litigation, the Court has identified seven

claims against MWE that are divided into two broad categories: claims relating to the 2003

transaction in which Antioch's Employee Stock Ownership Plan ("ESOP") became the 100%

owner of Antioch (the "2003 ESOP Transaction"), and claims relating to the 2007-2008 time

period.

The Court described the first six claims in its Aug. 27, 2010 Order that

Defendant's Motion to Dismiss (Doc. 16) be Denied ("Order on Motion to Dismiss") (Doc. 22):

"(1) MWE failed to advise Antioch to obtain a fairness opinion for the [2003] Tender Offer and to avoid corporate waste (Doc. 14 at ¶¶ 33-35, 67); (2) MWE failed to advise Antioch about the legality and consequences of the Tender Offer under ERISA, tax laws, and Ohio corporate law (*Id.* at ¶¶ 32-33, 37-38, 71); (3) MWE failed to provide legal advice to Antioch's individual directors (*Id.* at ¶¶ 35, 38, 67); (4) MWE aided the majority shareholders (the Morgans) in breaches of their fiduciary duties (*Id.* at ¶¶ 34-71); (5) MWE failed to advise Antioch about potential causes of action that Antioch had against its Board of Directors and its independent financial advisors (*Id.* at ¶¶ 49-51, 71); and (6) MWE failed to stop one of Antioch's shareholders from attempting to find an entity to buy Antioch (*Id.* at ¶¶ 54, 56, 67-68)."

Order on Motion to Dismiss, pp. 796-97. Later, the Court identified a "seventh claim" that MWE breached the standard of care by allegedly failing "to properly advise the Antioch Board of Directors with respect to the insolvency of Condor . . . ." Oct. 28, 2013 Order, p. 1828.

During motion practice, the Court entered judgment on the pleadings on Plaintiff's "aiding and abetting claim" and entered summary judgment on the claims relating to the 2003 ESOP Transaction. Jan. 4, 2013 Order Granting Defendant MWE's Motion for Judgment on the Pleadings re Claims for Aiding and Abetting (Doc. 52) (Doc. 58) p. 1324; Apr. 1, 2013 Order Granting Defendant McDermott Will & Emery LLP's Motion for Partial Summary Judgment (Doc. 59) (Doc. 66), p. 1546. However, the Court later reconsidered its summary judgment order with respect to the 2003 ESOP Transaction and allowed Plaintiff to claim that "'MWE failed to advise Antioch [following the 2003 ESOP Transaction] about the consequences'" of that deal. Oct. 28, 2013 Order Granting in Part and Denying in Part Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion for Partial Summary Judgment (Doc. 70) (Doc. 78), p. 1843.

The Court allowed additional expert testimony on the topic of whether "MWE should have advised Antioch to sue its Directors and financial advisors for claims relating to the

2003 Tender Offer transaction within the statute of limitations period." Nov. 18, 2013 Amended Calendar Order (Doc. 81), p. 1871. Thus, with the limited exception of that claim, the remaining claims in this action concern only the 2007-2008 sales process and Condor, which are subjects of Wagner's report. Wagner Report, pp. 3-16. This Motion seeks summary judgment on all remaining claims except for Plaintiff's claim regarding the 2003 ESOP Transaction.

This Motion is filed together with MWE's Motion to Strike, which identifies five separate and independent reasons why the Court should strike Wagner's report and exclude all evidence relating to Wagner's opinions. Without her opinions, Plaintiff has no expert testimony that (1) MWE breached the standard of care with respect to the 2007-2008 sales process, Condor, or any other matter discussed in her report, and (2) the alleged breach caused injury to Antioch.

## IV.    PLAINTIFF CANNOT ESTABLISH DAMAGES WITHOUT EXPERT TESTIMONY BASED ON THIS COURT'S RULING IN THE ANTIOCH BANKRUPTCY CASE

Plaintiff is precluded from proving damages without expert testimony in this case given (1) its failure to provide a calculation of damages in its initial disclosures under Fed. R. Civ. P. 26(a) and (2) its position during fact discovery that expert testimony is needed to calculate damages. Indeed, for the same reasons, this Court recently held in the Antioch Bankruptcy Case that the principles of fundamental fairness and estoppel demand the same result. Order Granting the Morgan Defendants' Motion to Exclude Plaintiff's Expert Report Regarding Damages (Doc. 213) ("April 7 Order"), The Antioch Co. Litig. Trust v. Morgan, No. 3:10-cv-156 (S.D. Ohio Apr. 7, 2014) ("Bankruptcy Case") (Doc. 300).

In this action, Plaintiff has identified five categories of damages. The first four were alleged in the First Amended Complaint:

> "(1) the difference between the consideration paid to the selling shareholders in 2003 for their shares of Antioch stock and the actual fair market value of those shares; (2) interest, fees and other charges on debt incurred by Antioch in order to finance the 2003 stock purchases and subsequent repurchase obligations in connection with departing employees; (3) fees and expenses paid to restructuring professionals as a result of the deepening insolvency of Antioch; and (4) damages that could have been recovered from Antioch's directors and independent professional firms if Antioch had been advised to assert its claims in a timely manner."

First Amended Complaint (Doc. 14), pp. 460-61. The fifth – "the loss in enterprise value that resulted from the ESOP transaction and the sale process" – was alleged in Plaintiff's Rule 26(a)(1) Initial Disclosures, p. 10 (attached as Exhibit B). Only the third and fifth categories arguably relate to Plaintiff's claims at issue in this Motion. Plaintiff did not include a computation of its damages in its initial disclosures and has never provided any calculation of damages as required by Rule 26(a)(1)(A)(iii) (a claiming party must provide, "without awaiting a discovery request . . . a computation of each category of damages claimed").

Timothy Miller was deposed as Plaintiff's Rule 30(b)(6) representative <u>on the last day</u> of fact discovery.[1] However, Miller did not provide any substantive testimony on the issue of damages. For example, with respect to Plaintiff's third category of damages – its claim for "fees and expenses paid to restructuring professionals as a result of the deepening insolvency of Antioch" – Miller testified that Plaintiff had not calculated its alleged damages.

> "Q. Okay. With regard to number three, fees and expenses paid to restructuring professionals as a result of the deepening insolvency

---

[1] As this Court is aware, discovery in this case was consolidated with discovery in the Bankruptcy Case because "the cases involve the same facts and circumstances, share a common plaintiff, the same witnesses will be deposed by the common Plaintiff on common issues and transactions in both cases, and non-deposition discovery is generally overlapping." Aug. 12, 2011 Order Granting Motions to Coordinate Discovery (Doc. 39), p. 1054.

of Antioch. Did the Trust calculate what those fees and expenses are as of today [the last day of fact discovery].

A. Again, that's something I think we'd have an expert do.

Q. Well, is the answer no, Mr. Miller, that the Trust has not done that yet?

A. The answer is no."

Dec. 17, 2012 Deposition of W. Timothy Miller ("Miller Depo.") (filed on Jan. 22, 2013 as Doc.

88 in The Antioch Litig. Trust v. Morgan, No. 3:10-cv-00156 (S.D. Ohio filed Apr. 14, 2010)),

pp. 84-85. Likewise, with respect to Plaintiff's fifth category of damages – "the loss in enterprise

value that resulted from the ESOP transaction and the sale process" – Miller stated:

"Q. Okay. Category number five of damages is the loss in enterprise value that resulted from the tender offer and the sale process. Do you see that?

A. Yes.

***

Q. To this date has the Trust determined what the loss in enterprise value is from the company allegedly resulting from the tender offer and the sale process?

A. No."

Miller Depo., pp. 85-86.

During the deposition, Miller repeatedly stated that expert testimony was needed

to establish damages for these categories of damages.

"In connection with the damages and the damages calculations, I think the Trust's view is that is something that is properly the province of expert testimony, and that is something that we would – the Trust would anticipate having an expert testify with respect to. So at this juncture, where we are in the case, having not yet engaged or gone forward with expert testimony – or, you know, identifying testifying experts and that sort of stuff, I think our

answer is with respect to the damages very much remain what we've placed in this interrogatory, that these are the various categories of damages and that, you know, <u>through the use of a testifying expert, we would expect to put specific dollar amounts on that.</u>"

Miller Depo., p. 81 (emphasis added). <u>Accord</u>: <u>id</u>. at 84 ("Again, that's something [calculating fees and expenses paid to restructuring professionals claimed as damages] I think we'd have an expert do.") and <u>id</u>. at 85 ("So, again, this is something [calculating lost-enterprise-value damages claimed as damages] – and particularly this would be something that would be the basis, in our view – in the Trust's view of expert testimony.").

In the Antioch Bankruptcy Case, this Court found that "the factual record closed with Plaintiff providing no information about its claimed damages." April 7 Order, p. 29044. Given this finding, the Court decided that "based on the [principles] of estoppel and fundamental fairness, Plaintiff is precluded from proving damages without an expert." <u>Id</u>. at p. 29045. This Court further rejected Plaintiff's attempt to show damages with "simple arithmetic," which relied in part on a May 2008 Letter of Intent from J.H. Whitney. This Court found that if calculating damages was a matter of simple arithmetic and based on facts in the record, then Miller should have provided a calculation of damages at the Rule 30(b)(6) deposition. <u>Id</u>. at pp. 29044-29045. <u>Accord</u>: Rule 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); <u>Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.</u>, 596 F.3d 357, 366-70 (6th Cir. 2010) (affirming district court's exclusion of evidence concerning damages based on plaintiff's failure to provide sufficient information in initial disclosures and during discovery).

Moreover, the Court found that the data points Plaintiff relied upon in its "simple arithmetic" were inadmissible hearsay. April 7 Order, p. 29045. Accord: Hoover v. Walsh, 682 F.3d 481, 491 n.34 (6th Cir. 2012) ("A court cannot rely on unsworn inadmissible hearsay when ruling on a summary judgment motion.") (internal quotation marks and citation omitted). Without expert testimony establishing these damages, the Court granted summary judgment to the Defendants on Plaintiff's claims regarding the 2007-2008 sales process and the Levimo transaction. April 7 Order, pp. 29045-29047.

The same principles apply here. Wagner's injury opinion (even if admissible) was limited to a claim that MWE's alleged negligence caused an unidentified injury. Wagner Report, p. 1. She admitted in her deposition that she did not provide a computation of damages. Sept. 13, 2013 Deposition of Barbara J. Wagner ("Wagner Depo.") (attached to Motion to Strike as Exhibit 2), p. 174 ("I am not providing an opinion on the damages."). This Court has already held that Mark Greenberg's opinions are insufficient. Apr. 7, 2014 Order, p. 29045.

Based on principles of fundamental fairness and equitable estoppel, Plaintiff's failure to provide a calculation of damages and Plaintiff's position during fact discovery that expert testimony is needed to calculate damages preclude Plaintiff from establishing damages at trial without expert testimony. Id. As demonstrated above, Plaintiff has no expert testimony to prove its alleged damages as to the claims at issue in this Motion. Further, Plaintiff cannot show damages without expert testimony because the letters of intent that the Plaintiff would use to do so are inadmissible hearsay. Thus, MWE is entitled to judgment as a matter of law on those claims. Id., p. 29045-46; Info-Hold, Inc. v. Muzak LLC, 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *16-17 (S.D. Ohio Aug. 20, 2013) (Black, J.).

9

**V.**  **PLAINTIFF CANNOT ESTABLISH ITS CLAIMS WITH RESPECT TO THE 2007-2008 SALES PROCESS AND CONDOR BECAUSE PLAINTIFF FAILS TO PROVIDE ADMISSIBLE EXPERT TESTIMONY ON CAUSATION OF INJURY**

Plaintiff is required to show injury through expert testimony in this case for an additional reason – as a matter of Ohio law, expert testimony is required to show causation of injury in this case given its complexity.

Although expert testimony is ordinarily not required to show injury in a legal malpractice action, Ohio courts have recognized an exception to that rule in complex cases. Van Sommeren v. Gibson, 991 N.E.2d 1199 (Ohio Ct. App. Lucas Cty. 2013). In Van Sommeren, the plaintiff retained the defendant attorney to assist him with the purchase of a dairy farm. Id. at 1202. The plaintiff also worked with a developer, who had a long-standing relationship with the same attorney. Id. As the plaintiff encountered problems operating the farm, the plaintiff sought financing from various sources. Id. at 1203. During this process, the developer refused to sign commitment letters for the plaintiff's loans. Id. The plaintiff later filed a malpractice suit against the attorney, alleging that the attorney had represented conflicting interests in the farm transaction by representing both the plaintiff and the developer. Id. at 1205. After the plaintiff failed to provide expert testimony that the attorney's alleged breach had caused him injury, the trial court granted summary judgment to the attorney, finding that causation was "not so 'obviously' apparent from the facts that expert testimony was unnecessary." Id.

The appellate court affirmed, explaining that the Supreme Court of Ohio has recently required a more "exacting" standard when deciding whether expert testimony is needed to show causation in a legal malpractice action. Id. at 1207-08 (citing Envtl. Network Corp. v. Goodman Weiss Miller, L.L.P., 119 Ohio St. 3d 209, 212-13, 893 N.E.2d 173, 177-178 (2008)

(concerning whether an attorney should have settled rather than tried a case)).  The court

explained that "while there is no *general* requirement for expert testimony on [the causation]

element, certain factual circumstances, accruing from the complexity of the relationships or

involving several transactions with multiple clients or attorneys, may make such testimony

unnecessary."  Van Sommeren, 991 N.E.2d at 1208 (first emphasis in original, subsequent

emphasis added).

        Applying that rule, the court found that expert testimony was needed to avoid

"inviting rampant jury speculation."  Id. at 1209.  The court stated that whether any losses were

caused by the attorney's alleged divided loyalties was not a question that could be answered

"'within the ordinary knowledge and experience of laymen,'" due to the complexity of the

transaction, the various financing agreements involved, and the complicated timing of the

defendant attorney's relationships with the plaintiff and the developer.  Id.  Accord:  Wayside

Body Shop, Inc. v. Slaton, No. 25219, 2013 Ohio App. LEXIS 447, at *29-30 (Montgomery Cty.

Feb. 15, 2013) (affirming summary judgment for defendant attorney, finding that whether a

federal lawsuit "would have been initiated, resulting in damages" was "a matter not within

common knowledge which . . . requires expertise to establish that any resulting damage was

proximately caused by the actions" of an attorney); Yates v. Brown, 185 Ohio App. 3d 742, 750,

925 N.E.2d 669, 675 (Lorain Cty. 2010) (affirming summary judgment for defendant attorney,

holding that "[w]here multiple attorneys were involved in the underlying representation, and

where the plaintiffs have alleged negligent representation by more than one attorney, the trial

court did not err by concluding that expert testimony was necessary to establish a prima facie

case of legal malpractice in regard to an individual attorney.  In fact, expert testimony would be

critical . . . to determining causation and either parsing or eliminating liability.") (emphasis

added); <u>Nu-Trend Homes, Inc. v. Law Offices of DeLibera, Lyons & Bibbo</u>, No. 01AP-1137, 2003 Ohio App. LEXIS 1543, at *19 (Franklin Cty. Mar. 31, 2003) ("Expert testimony is normally necessary to establish both that the attorney accused of malpractice has failed to conform with the standard required by law <u>and</u> that the attorney's conduct was the proximate cause of the damage or loss claimed as the basis for redress by the complaining party.") (emphasis added).

As demonstrated below, this case involves all three elements that Ohio courts have held demonstrate the complexity that requires expert testimony to prove causation of injury: (1) several complex transactions, (2) alleged multiple clients, and (3) multiple attorneys. <u>Van Sommeren</u>, 991 N.E.2d at 1208. Here, the average juror cannot be expected to be familiar with the subjects of the sale of a distressed company, surety bonds, a sale/leaseback transaction, or a lawyer's role in such matters.

1. <u>Several Transactions</u>: Wagner's report identifies multiple transactions, both proposed and completed, that potentially contributed to Anitoch's losses: (a) the 2007-2008 sales process, (b) the Condor matter, and (c) the sale-leaseback transaction with Levimo.

a. <u>2007-2008 Sales Process</u>: With respect to the 2007-2008 Sales Transaction, Wagner states in her report that Antioch retained the investment-banking firm Houlihan Lokey Howard & Zukin Capital ("Houlihan") in 2007 to seek a buyer for the company. Wagner Report, at 6. Houlihan reached out to over 100 potential buyers during the summer and fall of 2007. <u>Id</u>. At the same time, Lee Morgan engaged Candlewood Partners to investigate alternative transactions in which he and his family could maintain some equity in Antioch and avoid bankruptcy. <u>Id</u>. at 6 and 9. During this process, in May 2008, J.H. Whitney & Company ("J.H. Whitney") indicated an interest in purchasing Antioch for $54 million through a

bankruptcy proceeding in a process known as a Section 363 sale. Id. at 9. At her deposition, Wagner conceded that the J.H. Whitney deal was on track when Antioch's majority shareholder – the ESOP trustee – replaced the board of directors, which promptly terminated MWE and hired Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"). Wagner Depo., p. 210 ("Q. You do recognize that in the period of time before MWE's engagement was terminated that the special transaction committee did get to the point where it had a deal with J.H. Whitney that was on the table; is that right? A. That's correct. I know that. Q. That deal stayed on the table at least up until the time where MWE's engagement was terminated; is that right? A. That's my recollection."); Statement of Proposed Undisputed Facts, ¶¶ 4-6. Consequently, the 2007-2008 sales process – standing alone – was a complex process that requires expert testimony as to causation of injury.

        b.    <u>Condor</u>: With respect to the Condor matter, Wagner states in her report that in "late October 2007, Antioch's Treasurer became aware that Condor, the entity that had provided the surety bonds supporting the ESOP notes in 2004, 2005 and 2006, was involved in bankruptcy or insolvency proceedings." Wagner Report, p. 8. Additional Antioch personnel and MWE became aware of the issue by late November to mid-December of the same year. Id. Wagner faults MWE for waiting until February 2008 to recommend that Antioch seek a replacement surety, "which was apparently [not] done." Id. Although Wagner could not say that MWE's advice regarding Condor caused injury to Antioch, she speculated that there was some injury as a result. Wagner Depo., p. 249 ("Miss Wagner, with regard to the Condor matter that you've testified to, do you agree with me that MWE's advice with regard to Condor, or lack of advice with regard to Condor, did not cause injury to Antioch? A. <u>I frankly don't know</u>. I think it certainly complicated the ability to get a transaction done, so I would imagine that there was

13

some injury as a result.") (emphasis added). Thus, as asserted by Plaintiff, the Condor matter injects another set of complex facts to for the jury to sort through.

        c.     Levimo: Finally, the Levimo sale-leaseback transaction adds yet another transaction to the case.[2] Wagner states that the deal with Levimo, which involved an Antioch facility in St. Cloud, Minnesota, "was initially intended to be between Antioch and a third party." Wagner Report, p. 5. Antioch identified the New York-based W.P. Carey as a potential buyer, but after W.P. Carey declined to accept the full risk of owning the facility, Lee Morgan agreed to become a minority partner. Id. W.P. Carey and Morgan formed ANT LP for this purpose. Id. After W.P. Carey was unable to secure the necessary funding for the transaction, Morgan agreed to finance the sale-leaseback and formed Levimo to complete the transaction, which closed "on substantially the same terms that had been negotiated with Carey, or with Carey and Lee Morgan." Id.

      The various moving parts in these multiple transactions are significantly more complex than the financing transactions at issue in Van Sommeren. Indeed, as this Court knows, the complexity of these transactions was recently illustrated in The Antioch Co. Litig. Trust v. Morgan, No. 3:10-cv-00156 (S.D. Ohio filed Apr. 14, 2010), where Plaintiff recently submitted over 2000 pages of evidentiary documents detailing the 2007-2008 claims in response to motions for summary judgment that were filed by the defendants. Mar. 10, 2014 Notice of Plaintiff Antioch Company Litigation Trust Consolidated Appendix to Plaintiff's Memoranda in Opposition to Defendants' Motions for Summary Judgment Part 1 (Doc. 278), Part 2 (Doc. 279),

---

[2] For the reasons more fully demonstrated in the Motion to Strike, pp. 7-9, the Levimo matter is not a basis for finding liability in this case because it was not alleged in Plaintiff's First Amended Complaint or in subsequent attempts to clarify the malpractice claim in the First Amended Complaint.

Part 3 (Doc. 280), Part 4 (Doc. 281) and Part 5 (Doc. 282).[3] Wading through these proposed and completed deals to attribute fault to MWE is too complicated a task for a jury to perform without the assistance of expert testimony.

        2.     <u>Multiple Clients</u>:  Although the evidence shows that MWE was retained by – and represented only – Antioch, Wagner has claimed various conflicting loyalties with respected to alleged advice given to Lee Morgan.  For instance, Wagner states that MWE offered advice as to the terms of the agreement between Morgan and Candlewood Partners, who together proposed various restructuring options in 2007 and 2008.  Wagner Report, pp. 8 and 13.  In addition, with respect to the Levimo transaction, Wagner makes the false claim that "MWE represented Lee Morgan in the preparation of the ANT LP documents and [provided] some level of review of the sale leaseback documents."  <u>Id</u>. at 13.  At her deposition, Wagner also suggested that MWE was loyal to Antioch board of directors, not the company.  Wagner Depo., p. 187 ("Q. Okay.  Now, I think you told us that you thought McDermott's loyalty was to the board, not the company.  Is that what you said?  A. There were certainly cases where I thought they were trying to help the board avoid claims of malpractice . . . .  Their focus was keeping – making sure the board wasn't going to get sued, and that's certainly one role that they can have, but ultimately their goal – their obligation is to the company.").  The jury should not be allowed to speculate as to whether those alleged conflicts of interests contributed to loss to Antioch.  Instead, following <u>Van Sommeren</u>, where the plaintiff also alleged that the defendant attorney had represented conflicting interests, expert testimony is required to explain whether such conflicts resulted in any injury to Antioch.  <u>Van Sommeren</u>, 991 N.E.2d at 1209.

---

[3] MWE incorporates these documents by reference to demonstrate the complexity of Plaintiff's claims.

3.    Multiple Attorneys: Finally, as in Yates, several attorneys were involved in the events that allegedly caused Antioch injury in this case. Indeed, there are law firms other than MWE who were involved in each transaction that Wagner addresses.

a.    2007-2008 Sales Process: Wagner claims that MWE's alleged breach of the standard of care contributed to the loss of the J.H. Whitney deal. Wagner Report, p. 14 (arguing that MWE "should have identified" the possibility that Antioch's ESOP Trustee would terminate Antioch's board of directors when advising the board's Special Transaction Committee as it pursued the J.H. Whitney deal). However, when Antioch's board of directors – as replaced by the ESOP trustee – terminated MWE and engaged Skadden to represent the company, the J.H. Whitney deal was still on track. Statement of Proposed Undisputed Facts, ¶¶ 4-6; Wagner Depo., p. 210 ("Q. That deal stayed on the table at least up until the time where MWE's engagement was terminated; is that right? A. That's my recollection."). In fact, Wagner was unable to say whether MWE or Skadden, if either, caused the loss of the J.H. Whitney deal. Id. at 43 ("Q. So you don't know whether or not any advice that Skadden gave led to the loss of the [J.H.] Whitney deal, do you? A. No."). Since Plaintiff has alleged that the loss of the J.H. Whitney deal caused Antioch injury, and the loss of that deal occurred under Skadden's watch, not MWE's, expert testimony is needed to explain how MWE caused injury.

b.    Condor: Wagner also claims that MWE should have advised Antioch's board of directors about the insolvency of Condor sooner than February 2008. Wagner Report, p. 14. However, Wagner ignores the undisputed fact that Dinsmore & Shohl ("Dinsmore") advised Antioch with respect to the financial guaranty agreement and proposed surety bond from Condor to ensure that the surety bond would be compliant with Antioch's credit agreement with Bank One. Statement of Proposed Undisputed Facts, ¶ 1. Expert testimony is

needed to determine whether there was any injury, and if so, whether it was MWE's advice or Dinsmore's advice that caused it.

        c.     <u>Levimo</u>:  Finally, Wagner concedes that Dinsmore represented Antioch during the Levimo transaction.  Wagner Depo., pp. 198-99 ("Q. Okay.  On a different question earlier this morning you had mentioned Dinsmore and I didn't ask you, do you have an understanding of what Dinsmore's role was?  A. I know Dinsmore represented the company for the LEVIMO transaction.  They were actually – before it became Lee, they were representing the company on the – when it was going to be with W. P. Carey.  They continued to represent the company with – when Lee took it over.  And I believe they did do other miscellaneous legal work for the company.  I'm not sure – I'm not sure I'm familiar with the specific things they may have done."); Statement of Proposed Undisputed Facts, ¶¶ 2-3.  Again, expert testimony will be needed to determine whether MWE or Dinsmore caused the alleged injury.

        Without the assistance of expert testimony, a jury will not be able to determine whether MWE or Skadden, <u>if either</u>, caused the alleged injury to Antioch during the 2007-2008 sales process, or whether MWE or Dinsmore, <u>if either</u>, caused Antioch's alleged loss with respect to the Condor matter and the Levimo transaction.  When multiple attorneys potentially contribute to a plaintiff's loss, expert testimony as to causation of injury is necessary.  <u>Van Sommeren</u>, 991 N.E.2d at 1208; <u>Yates</u>, 185 Ohio App. 3d at 750, 925 N.E.2d at 675 (finding expert testimony "critical . . . to determining causation and either parsing or eliminating liability" when multiple attorneys were involved in the underlying representation).

        In short, this case involves multiple complex transactions, alleges that MWE represented multiple clients, and implicates multiple lawyers with respect to each transaction.

Any one of these factors is sufficient to require Plaintiff to show causation of injury with expert testimony. Wagner's opinion as to causation of injury is inadmissible (as demonstrated in the Motion to Strike, pp. 9-12), and she is not qualified to opine on injury in any event (Motion to Strike, pp. 11-14)'; therefore, Plaintiff cannot establish an essential element of its claims and MWE is entitled to judgment as a matter of law. Info-Hold, Inc. v. Muzak LLC, 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *16-17 (S.D. Ohio Aug. 20, 2013) (Black, J.).

**VI.      PLAINTIFF CANNOT ESTABLISH ITS CLAIMS AS TO THE 2007-2008 SALES PROCESS AND CONDOR BECAUSE PLAINTIFF FAILS TO PROVIDE ADMISSIBLE EXPERT TESTIMONY ON THE STANDARD OF CARE**

"As a general rule . . . expert testimony is required to establish the attorney's standard of care in a particular case." Montgomery v. Gooding, Huffman, Kelly & Becker, 163 F. Supp. 2d 831, 835 (N.D. Ohio 2001). A plaintiff in a legal malpractice action must present expert evidence to establish an attorney's breach of his or her duty of care so long as the breach is not "'so obvious that it may be determined by the court as a matter of law, or is within the ordinary knowledge and experience of laymen.'" Id. (citing Bloom v. Dieckmann, 11 Ohio App. 3d 202, 203, 464 N.E.2d 187, 188 (Hamilton Cty. 1983); Kreuzer v. Merritt, No. 18442, 2000 Ohio App. LEXIS 5070, *6-7 (Montgomery Cty. Nov. 3, 2000)).

In Montgomery, the plaintiff filed a legal malpractice action alleging that the defendant had negligently prepared a property purchase agreement and mishandled litigation involving that agreement. 163 F. Supp. 2d at 834. Although the plaintiff's expert witness said that the defendant had negligently drafted the purchase agreement, the expert did not provide any opinion as to whether the defendant had mishandled the related litigation. Id. at 836. As the plaintiff failed to provide the required expert testimony within the expert disclosure period of

Fed. R. Civ. P. 26(a), the court granted summary judgment for the defendant concerning the alleged mishandling of the litigation concerning the purchase agreement. Id. Accord: Werts v. Penn, 164 Ohio App. 3d 505, 517, 842 N.E.2d 1102, 1112 (Montgomery Cty. 2005) (error in finding that an attorney breached the standard of care absent expert testimony as to the applicable standard of care); Brown v. Morganstern, No. 2002-T-0164, 2004 Ohio App. LEXIS 2571, at *22 (Trumbull Cty. June 4, 2004) (affirming grant of summary judgment on a legal malpractice claim after the plaintiff failed to present expert testimony as to the applicable standard of care).

Similarly, this Court recently granted summary judgment in a patent infringement suit on the issue of a reasonable royalty after finding that the plaintiff's expert report on that issue failed to comply with Fed. R. Civ. P. 26(a)(2)(B), and that the expert's opinion did not satisfy Fed. R. Evid. 702 and 703. Info-Hold, Inc. v. Muzak LLC, 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *12-14 (S.D. Ohio Aug. 20, 2013) (Black, J.). This Court found that none of the remaining witnesses were qualified to testify as to a reasonably royalty, and that the plaintiff had failed to identify any evidence that would allow a jury to award such damages. Id. at *16-17.

The Court should follow Info-Hold in this case. The time for Plaintiff's disclosure of expert witnesses has passed, and Plaintiff has not identified any expert witness, other than Wagner, who might opine as to MWE's standard of care with respect to the 2007-2007 sales process, the insolvency of Condor, and any other matter discussed in Wagner's report. Because Wagner's opinions are inadmissible, and because a plaintiff must establish the standard of care in a legal malpractice case with expert testimony, Plaintiff's claims that rely on Wagner's opinion testimony cannot survive summary judgment.

VII.     **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's Motion for

Summary Judgment on 2007-2008 Claims Supported by the Opinion Testimony of

Barbara Wagner.

Respectfully submitted,

/s/ Charles J. Faruki
Charles J. Faruki (0010417)
    Trial Attorney
Jeffrey S. Sharkey (0067892)
Donald E. Burton (0040553)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3705
Telecopier:  (937) 227-3717
Email:  cfaruki@ficlaw.com

Attorneys for Defendant
McDermott Will & Emery LLP

# CERTIFICATE OF SERVICE

I certify that on the 7th day of May, 2014, I electronically filed the foregoing Defendant's Motion for Summary Judgment on 2007-2008 Claims Supported by the Opinion Testimony of Barbara Wagner with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants, and I hereby certify that I have mailed by United States Postal Service the document to the non-CM/ECF participants:

Marcia Voorhis Andrew
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

Attorneys for Plaintiff
Antioch Litigation Trust

Richard A. Chesley
Gregory Otsuka
DLA PIPER LLP
203 N. LaSalle Street
19th Floor
Chicago, IL 60601-1293

Attorneys for Defendants
Houlihan, Lokey, Inc., Houlihan, Lokey Advisors, Inc.,
Houlihan, Lokey Capital, Inc.


Terence L. Fague
Daniel J. Gentry
COOLIDGE WALL
33 West First Street, Suite 600
Dayton, OH 45402

Attorneys for Defendants
Nancy Blair, Wayne Alan Luce, Frederick Walker

Scott A. King
Thomas A. Knoth
Jennifer L. Maffett
THOMPSON HINE LLP
Austin Landing I
10050 Innovation Drive, Suite 400
Dayton, OH  45342-4934

Attorneys for Defendants
Ben Carlson, Denis Sanan, Jeanine McLaughlin,
Malte vonMatthiessen


R. Daniel Prentiss
PRENTISS LAW FIRM
One Turks Head Place, Suite 380
Providence, RI  02903

Attorney for Defendant James Northrop


Robert A. Klingler
LAW OFFICE OF ROBERT A. KLINGLER CO., L.P.A.
525 Vine Street, Suite 2320
Cincinnati, OH  45202-3124

Attorney for Defendant G. Robert Morris


Robert T. Glickman
Robert R. Kracht
Kimberly A. Brennan
MCCARTHY LEBIT CRYSTAL & LIFFMAN CO., L.P.A.
101 West Prospect Avenue, Suite 1800
Cleveland, OH  44115


Michael N. Schaeffer
KEMP, SCHAEFFER & ROWE, CO., L.P.A.
88 West Mound Street
Columbus, OH  43215-5018

Attorneys for Defendant Candlewood Partners, LLC

James F. Wallack
Gregory O. Kaden
Vanessa V. Peck
GOULSTON & STORRS
400 Atlantic Avenue
Boston, MA  02110-3333

Ronald E. Gold
Scott R. Brown
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH  45202

Attorneys for Defendants
Michael Epstein, Paul Ravaris, CRG Partners Group


Michael L. Scheier
Brian P. Muething
Danielle M. D'Addesa
David T. Bules
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH  45202

Attorneys for Lee Morgan, Asha Morgan Moran, Chandra Attiken,
Marty Moran, Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2,
Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1,
Lee Morgan Pourover Trust #2

/s/ Jeffrey S. Sharkey
Jeffrey S. Sharkey

811479.3