IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
WESTERN DIVISION (AT DAYTON)

| | | |
|---|---|---|
| ANTIOCH LITIGATION TRUST, <br> W. TIMOTHY MILLER, TRUSTEE, <br><br> Plaintiff, <br><br> v. <br><br> MCDERMOTT WILL & EMERY LLP, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 09-CV-218 <br><br> (Judge Timothy S. Black) <br><br><br> MOTION OF DEFENDANT <br> MCDERMOTT WILL & <br> EMERY LLP FOR PARTIAL <br> SUMMARY JUDGMENT ON <br> <u>CONDOR GUARANTY ISSUE</u> |

Pursuant to Fed. R. Civ. P. 56(a), Defendant McDermott Will & Emery LLP ("MWE") moves for partial summary judgment on what this Court referred to in its Order of October 28, 2013 [Doc. No. 77] as "Plaintiff's 'seventh claim' for malpractice." The Order said that that claim failed as a matter of law "but for the discrete claim that MWE breached its duty by failing to recommend that the insolvency of [guarantor] Condor be disclosed to ESOP Noteholders or participants in 2008." Id. at 1836.

MWE is entitled to summary judgment as to that remaining "discrete claim" for numerous separate and independent reasons.

<u>First</u>, this Court recently granted summary judgment to Steven Bevelhymer on the ground that he left Antioch in May 2008, and Antioch did not submit a claim to Condor Guaranty until August 2008. Order Granting Defendant Hoskins', Bevelhymer's, Lipson-Wilson's, and Felix's Motions for Summary Judgment on Count Three (Docs. 240, 242, 244, 246), No. 3:10-cv-156, [Doc. No. 301], pp. 29061-63 ("Order on Count Three"). The same reasoning applies to MWE, whose representation of the company was terminated in June 2008.

Second, there is no statute or rule that required Antioch to disclose Condor's status to the ESOP Participants or noteholders, and it is undisputed that Antioch was aware of Condor's status. Since Antioch did not have a legal duty to disclose Condor's status, MWE had no duty to advise Antioch to disclose Condor's status. Third, Plaintiff cannot show that Antioch suffered any injury by failing to disclose Condor's status to the ESOP Participants and noteholders. The ESOP Participants and noteholders never sued Antioch for failing to disclose Condor's status to them. Fourth, it is undisputed that the ESOP Trustee -- who had the duty and ability to act on behalf of the ESOP Participants -- was aware of the issues relating to Condor's status in early 2008. Sixth, even if Plaintiff could assert the claims of the ESOP Participants and noteholders, Plaintiff cannot show that they were injured due to the non-disclosure of Condor's status. Seventh, Plaintiff failed to include a calculation of its damages in its initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii).

Respectfully submitted,

s/ Charles J. Faruki
Charles J. Faruki (0010417)
   Trial Attorney
Jeffrey S. Sharkey (0067892)
Donald E. Burton (0040553)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: (937) 227-3705
Telecopier: (937) 227-3717
Email: cfaruki@ficlaw.com

Attorneys for Defendant
McDermott Will & Emery LLP

# MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT MCDERMOTT WILL & EMERY LLP FOR PARTIAL SUMMARY JUDGMENT ON CONDOR GUARANTY ISSUE

I.     INTRODUCTION AND SUMMARY

Plaintiff's "seventh claim" for malpractice, as identified by this Court's October 28, 2008 Order [Doc. No. 77] ("Order"), is narrow. The claim relates to The Antioch Company's alleged failure to meet the requirement under federal law that it provide "adequate security"[1] for certain promissory notes issued to ESOP participants. Antioch engaged companies named Condor Insurance (for three years) and Condor Guaranty (for one year) (at times collectively referred to here as "Condor") to secure those notes (Order, p. 1831), but, when a demand was made on Condor Guaranty, it refused to pay on the grounds that the notice to it was insufficient.

Plaintiff cannot claim that MWE selected, recommended, or approved Condor. Plaintiff also has not attacked the soundness of the advice MWE actually provided to Antioch regarding Condor: MWE advised Antioch to find a different surety.[2] Further, Plaintiff cannot fault MWE if Antioch did not follow MWE's advice; as this Court stated in its Order, "MWE cannot force its clients to follow its advice. MWE made recommendations. The fact that Antioch elected not to follow that advice cannot result in a claim for malpractice." Order, p. 1835, n.7. This Court therefore recognized a malpractice claim against MWE only to the extent that Plaintiff is arguing that "MWE breached its duty by failing to recommend that the insolvency of Condor be disclosed to ESOP Noteholders or participants in 2008." Id. at 1836.

---

[1] That requirement is in 29 U.S.C. § 1108(b)(1).

[2] Statement of Undisputed Facts In Support of Motion of Defendant McDermott Will & Emery LLP for Partial Summary Judgment on Condor Guaranty Issue (copy attached at Ex. 1) ("Statement of Undisputed Facts"), ¶ 27.

That narrow claim cannot survive, due, first, to lack of supporting expert testimony. It is well-settled that a plaintiff cannot establish that an attorney breached the applicable standard of care without expert testimony.[3] The only expert testimony related to the Condor matter that Plaintiff provided was from Barbara Wagner.[4] As demonstrated in Defendant's Motion to Strike the Expert Report of Barbara Wagner and to Exclude Her Testimony [Doc. No. 84] and Defendant's Motion for Summary Judgment on 2007-2008 Claims Supported By the Opinion Testimony of Barbara Wagner [Doc. No. 85], Wagner's testimony is inadmissible, and MWE is entitled to summary judgment on all claims within the scope of her report.

Even if the Court were to deny those motions, this Court should still grant summary judgment to MWE on Plaintiff's narrow claim related to Condor for the following separate and independent reasons relating to the Condor issue itself:

First, this Court recently granted summary judgment to Steven Bevelhymer in the bankruptcy case on the ground that he left Antioch in May 2008, and Antioch did not submit a claim to Condor Guaranty until August 2008. Order on Count Three, pp. 29061-63. The Court explained that Condor Guaranty was not in bankruptcy; that there is no evidence that any refusal to pay the claim was a result of Condor Guaranty's financial inability to pay; and that the reason

---

[3] "As a general rule . . . expert testimony is required to establish the attorney's standard of care in a particular case." Montgomery v. Gooding, Huffman, Kelly & Becker, 163 F. Supp. 2d 831, 835 (N.D. Ohio 2001). A plaintiff in a legal malpractice action must present expert evidence to establish an attorney's breach of his or her duty of care so long as the breach is not "'so obvious that it may be determined by the court as a matter of law, or is within the ordinary knowledge and experience of laymen.'" Id. (citing Bloom v. Dieckmann, 11 Ohio App. 3d 202, 203, 464 N.E.2d 187, 188 (Hamilton Cty. 1983); Kreuzer v. Merritt, No. 18442, 2000 Ohio App. LEXIS 5070, at *6-7 (Montgomery Cty. Nov. 3, 2000)).

[4] Report, pp. 1917, 1923 (exhibit 1 to Defendant's Motion to Strike the Expert Report of Barbara Wagner and to Exclude Her Testimony [Doc. No. 84]).

cited by Condor Guaranty for failing to pay related to defective notice and other defenses. Id. at 29062.

The same reasoning applies to MWE. MWE was terminated in June 2008, and therefore, like Mr. Bevelhymer, also cannot be held responsible for any defects in the August 2008 notice. Further, in light of the fact that the Plaintiff has provided "no evidence" that Condor Guaranty was financially unable to pay (id.), MWE had no duty to advise Antioch to notify the ESOP Participants and noteholders that Condor would not pay.

Second, it is undisputed that Antioch was aware of Condor's status. There is no statute or rule that required Antioch to disclose Condor's status to the ESOP Participants or noteholders. Since Antioch did not have a legal duty to disclose Condor's status, MWE had no duty to advise Antioch to disclose Condor's status.

Third, Plaintiff cannot show that Antioch suffered any injury by failing to disclose Condor's status to the ESOP Participants and noteholders. The ESOP Participants and noteholders never sued Antioch for failing to disclose Condor's status to them.

Fourth, MWE advised Antioch to engage an independent and well-respected Trustee (Evolve Bank and Trust) to act in the best interest of the ESOP Participants. It is undisputed that the ESOP Trustee -- who had the duty and ability to act on behalf of the ESOP Participants -- was aware of the issues relating to Condor's status in early 2008.

Fifth, the only claims that have been assigned to Plaintiff are those claims belonging to Antioch. Plaintiff cannot assert the claims belonging to the ESOP Participants and

3

noteholders. Plaintiff's malpractice claim related to Condor would belong to the ESOP Participants or noteholders, instead of The Antioch Company itself, and thus fails.

Sixth, even if Plaintiff could assert the claims of the ESOP Participants and noteholders, Plaintiff cannot show that they were injured due to the non-disclosure of Condor's status. As this Court recently held, Antioch attempted to find a replacement surety in 2008 and could not do so; there is no evidence that a replacement surety was available in 2008. Order on Count Three, p. 29054 n.4.

Seventh, Plaintiff is required to include a calculation of its damages in its initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiff's initial disclosures in this case did not identify, much less include a calculation of, any injury associated with MWE's failure to advise Antioch to notify the ESOP Participants and noteholders of Condor's status. Plaintiff has never identified, much less quantified, such amounts.

For each of those seven separate and independent reasons, the Court should grant summary judgment to MWE. The improvised, slapped-together nature of the "seventh claim" for malpractice against MWE dooms it as a matter of law.

The undisputed facts necessary to explain and determine the Condor Guaranty claim are set forth in the simultaneously filed Statement of Undisputed Facts In Support of Motion of Defendant McDermott Will & Emery LLP for Partial Summary Judgment on Condor Guaranty Issue (attached at Ex. 1) ("Statement of Undisputed Facts").

II.	MWE IS ENTITLED TO SUMMARY JUDGMENT ON THE "DISCRETE CLAIM" THAT IT WAS PROFESSIONAL NEGLIGENCE NOT TO RECOMMEND THAT THE ANTIOCH COMPANY DISCLOSE THE INSOLVENCY OF CONDOR GUARANTY TO THE ESOP NOTEHOLDERS AND PARTICIPANTS

A.	Plaintiff Has Not Substantiated the Claim that Condor Guaranty Was Ever Insolvent

This Court recently granted summary judgment to Steven Bevelhymer on the ground that he left Antioch in May 2008, and Antioch did not submit a claim to Condor Guaranty until August 2008. Order on Count Three, pp. 29061-63. The Court explained that at that time Condor Guaranty was not in bankruptcy; that there is no evidence that any refusal to pay the claim was a result of Condor Guaranty's financial inability to pay; and that the reason cited by Condor Guaranty for failing to pay related to defective notice and other defenses. Id. at 29062.

The same reasoning applies to MWE. MWE was terminated in June 2008, and cannot be held responsible for any defects in the August 2008 notice. Further, in light of the fact that the Plaintiff has provided "no evidence" that Condor Guaranty was financially unable to pay (id.), MWE had no duty to advise Antioch to notify the ESOP Participants and noteholders that Condor would not pay.

B.	The Trust Cannot Show that There Was a Duty to Advise the ESOP Participants of Condor's Alleged Insolvency

Plaintiff has not cited to any duty for Antioch to disclose the financial status of Condor Guaranty to the ESOP noteholders or partners. Without such a duty, there can be no duty on MWE's part to advise Antioch to disclose the financial status of Condor.

The Trust's complaint in the bankruptcy case (¶ 180) states that certain Defendants in that case "made deliberate misrepresentations to the ESOP Noteholder." But no blame can be laid at MWE's feet for such alleged misrepresentation. The only factual support for those accusations appears to be communications made by Asha Moran in late 2008, which was after MWE had ceased representing Antioch. In (successfully) opposing Asha Moran's motion for summary judgment, Plaintiff asserted that "Asha helped author four separate letters, all sent under her personal signature, dated August 6, 2008, September 2, 2008, October 2, 2008, and November 1, 2008 to the holders of the ESOP Notes." Plaintiff's Statement of Disputed Issues of Material Fact and Responses to Defendant Asha Morgan Moran's Statement of Proposed Undisputed Facts in Support of His Motion for Summary Judgment, No. 3:10-cv-156, [Doc. No. 176], p. 17302, ¶ 17 ("Plaintiff's Statement"). Plaintiff asserted that Ms. Moran made misleading statements in those documents. Id. at 17302-04, ¶¶ 17-19.

However, MWE was not counsel to Antioch at the time that these allegedly false disclosures were made. MWE was terminated on June 5, 2008. Order Granting Defendant McDermott Will & Emery LLP's Motion for Partial Summary Judgment (Doc. 59) [Doc. No. 66], p. 1529; Statement of Undisputed Facts, ¶¶ 43-44. (The law firm of Skadden Arps was engaged to represent Antioch after MWE was terminated. Order Granting Defendant Walker's Motion for Summary Judgment (Doc. 151), No. 3:10-cv-156, [Doc. No. 204], p. 19183, ¶ 50.) Thus, even assuming that Antioch was harmed by the fact that Antioch allegedly misled the Noteholders and Participants, MWE cannot be held responsible because it was not counsel to Antioch at the time.

Moreover, even if there were an obligation on Antioch's part to advise the ESOP participants of Condor's financial condition, the Trust fails to connect the dots between Antioch's

6

failure to advise the ESOP participants and proximately-caused injury to <u>the company</u>. The Trust has no standing to bring claims directly on behalf of the ESOP noteholders or participants. Rather, the only basis of a claim by the Litigation Trust against MWE is that MWE negligently advised <u>The Antioch Company</u> and that the advice proximately caused injury to <u>The Antioch Company</u>. (Statement of Undisputed Facts, ¶¶ 45-48). As discussed in the reminder of this memorandum, there was no proximately-caused damage to the company itself.

       C.       Plaintiff Cannot Show Proximately-Caused Damage to the Company from the Claimed Failure to Advise

Proximate cause is an element of proof of legal malpractice. <u>Shoemaker v. Gindlesberger</u>, 118 Ohio St. 3d 226, 228, 887 N.E.d 1167, 1169-70 (2008). "If a plaintiff fails to establish a genuine issue of material fact as to any of the elements, the defendant is entitled to summary judgment on a legal-malpractice claim." <u>Id</u>. at 228, 887 N.E.2d at 1170. When a defendant can show that there is no causal connection between defendant's alleged breach and any injury suffered by plaintiff, summary judgment is appropriate. <u>DeMeo v. Provident Bank</u>, No. 89442, 2008 Ohio App. LEXIS 2475, at *27 (Cuyahoga Cty. June 5, 2008). ("[P]roximate cause may be a legal question and subject to summary judgment.") Once the defendant has put forth evidence of an independent cause of the plaintiff's loss, the plaintiff must produce evidence creating at least a genuine issue of fact that defendant's alleged negligence actually caused the plaintiff's harm to avoid summary judgment. <u>Id</u>. at *30-31.

Here, there are numerous bases for concluding that Plaintiff cannot, as a matter of law, show proximately caused damages.

1. **The Antioch Company, Was Not Injured By Failing to Disclose Condor's Status to ESOP Participants and Noteholders**

Plaintiff cannot show that Antioch suffered any injury by failing to disclose Condor's status to the ESOP Participants and noteholders. The ESOP Participants and noteholders never sued Antioch for failing to disclose Condor's status to them.

2. **The ESOP Trustee was Fully Informed as to the Condor Situation**

In throwing together the Condor Guaranty "seventh malpractice" claim, Plaintiff overlooked the fact that the ESOP trustee, the only entity relating to the ESOP with power to rebuke or replace the Board for its failure to provide adequate security for the ESOP notes, was fully aware of the insolvency of Condor at the time Plaintiff now asserts the Company should have been informing the ESOP participants of the insolvency. Even if it was negligent of MWE not to have advised the Company to update the ESOP participants on Condor, there was no proximately-caused damage, since MWE would have been advising the Company to "inform" the ESOP participants of information that their sole representative with authority to do anything about Condor already knew.

The ESOP, as the majority shareholder of Antioch in 2007-08, of course had a shareholder's power over the Company's Board of Directors. While a board has certain powers to act on behalf of a company, the shareholders' powers consist primarily of the ability to elect the board and to approve certain large transactions. Ohio Rev. Code §§ 1701.39; 1701.76.

In contrast to the ESOP itself, the ESOP participants, even in their capacity as members of the ESOP, did not have the ability to elect the Board. Specifically, the Antioch ESOP Plan stated:

> "Shares of Company Stock in the Trust shall be voted by the Trustee only in such manner as directed by the Committee. With respect to any corporate matter which involves the voting of such shares at a shareholder meeting and which constitutes a merger, consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business or a similar transaction specified in regulations under Section 409(e)(3) of the Code, however, each Participant (or Beneficiary) shall be entitled to give confidential instructions as to the voting of shares of Company Stock then allocated to his ESOP Account."

Jan. 1, 2007 Employee Stock Ownership Plan, p. 24 (emphasis added) (Statement of Undisputed Facts, ¶ 35). A participant thus did not have the ability to vote shares to elect the Board; the Trustee had that power.

Evolve Bank and Trust ("Evolve") was the trustee in early 2008. On January 16, 2008, Evolve was engaged to be a "discretionary Trustee." Depo. Ex. 738, p. HL094200 (Statement of Undisputed Facts, ¶ 36). Kenneth Lenoir, the person in the lead for Evolve, explained that it was Evolve's responsibility to act "for the exclusive benefit of the participant." November 14, 2012 Deposition of Kenneth Lenoir, pp. 14-15 ("Lenoir Depo.") (excerpts attached at Ex. 2). Mr. Lenoir further explained that as a discretionary Trustee, Evolve would make decisions on an "independent basis." Id. at 16-17. (Statement of Undisputed Facts, ¶ 40).

Accordingly, it was Evolve -- not the Participants -- that had the ability to remove the Board, and Evolve had the duty to do so if it was in the best interest of the Participants. (In fact, Evolve eventually used that power to terminate the Board, in June 2008, as this Court discussed in its Order Denying Defendant Marty Moran's Motion for Summary Judgment (Doc. 143), [Doc. No. 202], p. 19145.) (Statement of Undisputed Facts, ¶ 42).

Plaintiff concedes (Plaintiff's Memorandum in Opposition to Defendant Asha Morgan Moran's Motion for Summary Judgment, No.3:10-cv-156, [Doc. No. 175], p. 17278)

that Evolve was well aware of the issues related to Condor, as is shown in his deposition: "But this is not the first bond surety that I have seen that has been offshore and has been a farce. So, we Googled Condor Guaranty and we found out that Condor Guaranty was basically a sham." Lenoir Depo., p. 98. Mr. Lenoir agreed that Evolve was aware of the issues related to Condor "fairly early on in [its] engagement." Id. at 100-01. (Statement of Undisputed Facts, ¶ 41).

Thus, Plaintiff cannot argue that Antioch was harmed under a theory that the Participants were misled as to Condor, and that, had they known the truth, they would have elected a new Board. Assuming that is the argument, it fails, because the Participants did not have the ability to remove the Board. Evolve had the ability to remove the Board and the duty to act in the best interest of the Participants. Plaintiff cannot dispute that Evolve was aware of the Condor issues, so Antioch was not injured under this theory.

3. The Trust Cannot Assert Claims Belonging to the ESOP Participants and Noteholders

The only claims that have been assigned to Plaintiff are those claims belonging to Antioch. Plaintiff cannot assert the claims belonging to the ESOP Participants and noteholders. (Statement of Undisputed Facts, ¶¶ 45-48). Plaintiff's malpractice arguments relating to Condor, to the extent they seek to recover for damages incurred by the ESOP participants and noteholders rather than damages sustained by the company, are based on claims that would belong to the ESOP Participants or noteholders, instead of The Antioch Company itself. Any arguments for proximately-caused damage based on losses of the ESOP participants or noteholders therefore fail.

4. The Trust Cannot Show Injury Resulting From the
Non-Disclosure of Condor's Status

Even if Plaintiff could assert the claims of the ESOP Participants and noteholders, Plaintiff cannot show that those persons were injured due to the non-disclosure of Condor's status. As this Court recently stated, Antioch attempted to find a replacement surety in 2008 and could not do so; there is no evidence that a replacement surety was available in 2008. Order on Count Three, p. 29054 n.4. Since there was no alternative guarantor available in 2008, the noteholders and partners were not harmed by the lack of notice to them.

D. At This Point Plaintiff is Barred from Presenting a Calculation of Damages

Plaintiff was required to include a calculation of its damages in its initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiff's initial disclosures in this case did not identify, much less include a calculation of, any injury associated with MWE's failure to advise Antioch to notify the ESOP Participants and noteholders of Condor's status. Further, Plaintiff has never identified, much less quantified, such amounts. Pursuant to Fed. R. Civ. P. 37(c)(1)[5] any belated calculation of damages that Plaintiff offers should be excluded. Order Granting the Morgan Defendants' Motion to Exclude Plaintiff's Expert Report Regarding Damages (Doc. 213), No. 3:10-cv-156, [Doc. No. 300], p. 29045 n. 21 ("Plaintiff's failure in its initial disclosures to disclose any damages resulting from the Levimo transaction prevents Plaintiff from presenting evidence of such damages at trial pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii) and 37(c)(1). *See Bessemer & Lake Erie R.R. v. Seaway Marine Transp.*, 596 F.3d 357, 366-70 (6th Cir. 2010) (affirming district court's exclusion of damages evidence because plaintiff failed to

---

[5] "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

provide sufficient information in initial disclosures or during discovery)"). Accord: Alloys Int'l, Inc. v. Aeronca, Inc., No. 1:10-cv-293, 2011 U.S. Dist. LEXIS 119687, at *19 (S.D. Ohio Oct. 17, 2011) (Black, J.) ("Here, as in *Bessemer*, Plaintiff has failed to comply with the requirements of Rule 26. Plaintiff has offered no evidence that its failure was substantially justified or harmless. Accordingly, any evidence of the calculation of the storage damages is excluded under Rule 37.")

       The undisputed facts also show that the one item of asserted damage -- corporate waste due to paying Condor for what are allegedly worthless guaranties[6] -- cannot be pinned on the law firm. The main undisputed fact standing in Plaintiff's way is the calendar. Plaintiff stated only that MWE learned of issues related to Condor "no later than November 8, 2007," Plaintiff's Memorandum in Opposition to Motion of MWE for an Order to Clarify the Scope of Plaintiff's Legal Malpractice Claim Against MWE and to Limit Plaintiff's Claims to Those Pled [Doc. No. 71], p. 1630. ("Plaintiff's Opposition"), which is the date of an email from Marsha Matthews of MWE referring to Condor's possible bankruptcy. Id. (Ex. A to Plaintiff's Opposition). There is no evidence that MWE learned of the Condor situation substantially earlier than that date. The premium payments were made in October 2007. Lipson-Wilson Depo., p. 1638 (attached to Plaintiff's Opposition as Ex. B). Accord: Plaintiff's Statement (Doc. No. 176), p. 17299, ¶ 8 ("[Antioch] contracted with Condor Guaranty to provide adequate security for the fourth round of ESOP Notes in October 2007").

---

[6] Plaintiff has argued (Order, p. 1832 n.4) that the premiums paid to the Condor entities were a waste of corporate assets.

12

It is thus undisputed that Plaintiff cannot show that alleged negligence by MWE caused "corporate waste" in the form of premium payments to Condor. MWE learned of the Condor problems in November 2007, <u>after</u> the October 2007 premium payments to Condor were made. MWE thus did not have an opportunity to advise Antioch regarding whether to make the premium payments. There was another payment made in August 2008 to Condor Guaranty, (Order on Count Three, p. 29051), but that was after June 2008, when MWE had ceased to represent Antioch (Statement of Undisputed Facts, ¶¶ 43-44).

Thus, MWE is in the same position as Defendant Karen Felix, to whom this Court granted summary judgment on the Condor claim, because "Felix was first alerted that the Condor entities were experiencing financial difficulty in November 2007" (Order on Count Three, p. 29064), and she "never approved or paid a renewal premium to Condor" after that date, she "was no longer at Antioch when the company paid Condor Guaranty's annual surety bond premium to renew the surety bonds for the ESOP notes in August 2008." <u>Id</u>.

In sum, even if evidence of damages were not barred by Plaintiff's failure to comply with Rule 26(a), Plaintiff cannot create a dispute of fact as to damages relating to Condor from MWE's conduct.

III.  <u>CONCLUSION</u>

MWE is entitled to partial summary judgment as to Plaintiff's "seventh claim" for malpractice for numerous reasons: among which are that the undisputed facts demonstrate that Plaintiff cannot show that MWE breached its duty of care by failing to recommend that Antioch share with the ESOP noteholders and ESOP participants the company's knowledge of financial

13

status of the Condor entities, and because, even if there were a breach, Plaintiff cannot show proximately-caused damages.

Respectfully submitted,

s/ Charles J. Faruki
Charles J. Faruki (0010417)
   Trial Attorney
Jeffrey S. Sharkey (0067892)
Donald E. Burton (0040553)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: (937) 227-3705
Telecopier: (937) 227-3717
Email: cfaruki@ficlaw.com

Attorneys for Defendant
McDermott Will & Emery LLP

# CERTIFICATE OF SERVICE

I certify that on the 16th day of May, 2014, I electronically filed the foregoing Motion of Defendant McDermott Will & Emery LLP for Partial Summary Judgment on Condor Guaranty Issue with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants, and I hereby certify that I have mailed by United States Postal Service the document to the non-CM/ECF participants:

Marcia Voorhis Andrew
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street
Suite 1800
Cincinnati, OH 45202-3957

Attorneys for Plaintiff
Antioch Litigation Trust

                                        s/ Donald E. Burton
                                        Donald E. Burton

827480.1