UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST,        Plaintiff, vs. MCDERMOTT WILL & EMERY, LLP,        Defendant. | Case No.  3:09-cv-218 Judge Timothy S. Black |

**ORDER DENYING MWE'S MOTION TO STRIKE THE EXPERT REPORT OF BARBARA WAGNER AND TO EXCLUDE HER TESTIMONY (Doc. 84)**

This civil action is before the Court on Defendant McDermott Will & Emery LLP ("MWE")'s motion to strike Barbara Wagner's expert report (Doc. 84), and the parties' responsive memoranda (Docs. 92, 112).

### I.     FACTUAL BACKGROUND

Attorney Barbara Wagner submitted an expert report claiming that "from approximately fall 2006 until its [MWE's] representation was terminated on June 5, 2008," MWE "failed to fulfill the applicable standard of care, [and The Antioch Company ("Antioch")] suffered losses as a result and there is a direct causal connection between the breach of duties and the losses."  (Doc. 84-1 at 1).

MWE moves to strike the report for five separate and independent reasons: (1) Wagner failed to explain "how and why" MWE breached the applicable standard of care; (2) Wagner failed to explain "how and why" MWE's alleged breach of the standard of care caused injury to The Antioch Company; (3) Wagner is not qualified to provide

expert opinion testimony on either the standard of care or causation of injury in this case; (4) Wagner applied an incorrect "higher" standard of care; and (5) Wagner's report fails to comply with Rule 26(a)(2)(B).

## II.     STANDARD OF REVIEW

A party proffering expert opinion evidence bears the burden of proving its admissibility.  *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).  While district courts do act as gatekeepers to keep out unreliable expert opinions, "[r]ejection of expert testimony under *Daubert* is the exception rather than the rule."  *Von Wiegen v. Shelter Mut. Ins. Co.*, No. 5:13-040-DCR, 2014 U.S. Dist. LEXIS 1932, at *4 (E.D. Ky. Jan. 8, 2014).

Rule 702 of the Federal Rules of Evidence permits testimony based on "scientific, technical, or other specialized knowledge" by experts qualified by "knowledge, skill, experience, training, or education" if the testimony is both relevant and reliable.  The trial judge must act as a gatekeeper, admitting only that expert testimony which is relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  *Daubert* attempts to strike a balance between liberal admissibility for relevant evidence and the need to exclude misleading "junk science."  *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009).

The relevancy requirement stems from Rule 702's mandate that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Best*, 563 F.3d at 591.  Relevance means that "there must be a 'fit' between the inquiry in the case and the testimony."  *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).  The

2

reliability requirement is drawn from Rule 702's requirement that the subject of an expert's testimony be "scientific knowledge." *Daubert*, 509 U.S. at 589-90. In this context, reliability means "evidentiary reliability" or "trustworthiness" which in turn connotes "scientific validity." *Bonds*, 12 F.3d at 555. A party proffering expert testimony has the burden of demonstrating by a "preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The trial judge enjoys broad discretion in determining whether the factors listed in *Daubert* reasonably measure reliability in a given case. *Id.* at 153.

With this framework in mind, the Court will now address MWE's motion.

### III. ANALYSIS

#### A. Qualifications

An expert witness's proposed testimony must relate directly to the area in which the witness claims expertise. *Smelser v. Norfolk S. R.R. Co.*, 105 F.3d 299, 305 (6th Cir. 1997). "An expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is

3

prohibited by Rule 702." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007).

Wagner spent twenty-one years as in-house counsel at Chiquita Brands International, Inc., which included advising its board of directors and various committees,[1] as well as 10 years of transactional experience in private practice, and an impressive academic record.[2] (Doc. 84-1, Ex. A). MWE argues that Wagner has not been in private practice for 23 years, and when she was in private practice, she never served as lead outside counsel to a transaction comparable to the 2007-2008 sales process. (Doc. 84-3 at 303). MWE further argues that Wagner only spent four years of her career (between 1987 and 1991) advising Ohio corporations. (Doc. 84-1 at 3). Accordingly, MWE maintains that Wagner's relevant experience is stale. *United States v. Lupton*, 620 F.3d 790, 799 (7th Cir. 2010).

The Court disagrees. Wagner's legal education and her experience as corporate counsel clearly provide the requisite foundation for her opinion in this matter. MWE can certainly cross-examine Wagner about not participating in a transaction similar to the 2007-2008 sales process and the fact that she has not practiced in 23 years, but these facts

---

[1] Like Antioch, Chiquita was a distressed company that engaged in a sale-leaseback. (Doc. 84-3 at 297; Doc. 84-2 at 172, 182). Additionally, Wagner worked on two deals where management was a potential buyer. (Doc. 84-3 at 208). Accordingly, Wagner has direct experience with advising special committees of a board of directors to avoid conflicts of interest and has worked closely with general counsel in analyzing and advising the board and its committees on governance issues. (*Id*. at 290-92).

[2] Wagner received her J.D. from Columbia University School of Law, where she was honored as a Harlan Fiske Stone Scholar, indicating the highest academic standing. (Doc. 84-1, Ex. A). Wagner was trained in broad corporate and transactional practice for ten years at top-tier firms, including Frost & Jacobs, Sherman & Sterling, and Skadden Arps. (*Id*.)

do not disqualify her. *Benton v. Ford Motor Co.*, 492 F. Supp. 2d 874, 876-78 (S.D. Ohio 2007) ("where the opposing side has the opportunity to cross-examine an expert regarding his qualifications and where the jury is properly instructed to determine for itself the weight and credibility to be given to the expert's testimony, an argument opposing admissibility of the testimony on the grounds that it is outside the witness's area of expertise must fail.").

### B. Reliability

Next, MWE argues that Wagner's opinion does not rest upon a reliable foundation, because she failed to explain "how and why" she reached her opinion. Advisory Committee Note to Rule 702 ("[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached…and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's work for it.'").

In her report, Wagner states that "taken individually [MWE's alleged missteps] might not be found to have the requisite basis for a finding of liability[,]…[but there is such a basis when] taken in their entirety." (Doc. 84-1 at 12-13). Wagner's Report outlines particular missteps and omissions and provides concrete examples that she considered in reaching her opinion. (Doc. 84-1 at 12-15; Doc. 84-2 at 55 ("My opinion is that McDermott Will did not meet the standard of care in representing Antioch.")).

The deficiencies MWE highlights go to the weight, not the admissibility, of Wagner's opinion. *See, e.g., Jahn v. Equine Servs.*, 233 F.3d 382, 390-93 (6th Cir. 2000) (although the opinions of the proffered testimony "may very well be 'shaky,'" because

5

the opinions were based upon facts in the record, and were not "assumptions" or "guesses," the challenges merely went to the accuracy of the conclusions, not to the reliability of the testimony."). The Court finds that Wagner's opinion provided reasoned explanations and a reliable foundation for how and why she reached her conclusion. *See, e.g., McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record…[m]ere 'weaknesses in the factual basis of an expert witness's opinion…bear on the weight of the evidence rather than its admissibility.").[3]

### C. Causal Connection

Next, MWE argues that Wagner failed to explain "how and why" she reached her opinion that "there is a direct causal connection" between MWE's alleged breach of the standard of care and injury to Antioch.

In Ohio, expert testimony is not required to establish the issue of causation in a legal malpractice case. *Bloomberg v. Kronenberg*, No. 1:06cv733, 2006 U.S. Dist. LEXIS 83398, at *18 (N.D. Ohio Nov. 16, 2006) ("Indeed, the overwhelming weight of authority indicates that although an expert certainly may testify regarding the issue of proximate cause in a legal malpractice cause of action, such testimony is not required."). Although Ohio legal malpractice decisions require expert testimony to establish a breach of duty, expert testimony is *not* required to establish the issue of proximate cause.

---

[3] *See also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Benton v. Ford Motor Co.*, 492 F. Supp.2d 874, 877 (S.D. Ohio 2004) (arguments that go to the weight of the opinion and can be tested on cross examination).

*Montgomery v. Gooding, Huffman, Kelly & Becker*, 163 F.Supp. 2d 831, 837-38 (N.D. Ohio Aug. 13, 2001) (emphasis added) (citing *Bloom v. Dieckmann*, 464 N.E. 2d 187, 188 (Ohio App. Oct. 26, 1983) ("expert evidence *is* required in a legal malpractice case to establish the attorney's breach of his duty of care") (emphasis added)).[4]

Wagner concludes that MWE's failure to provide proactive, thoughtful advice contributed to the Board's inability to sell the Company or obtain management who could do so, thereby avoiding bankruptcy reorganization without a purchaser. Wagner notes that MWE failed to actively counsel the Board regarding the need to act decisively to avoid corporate waste. (Doc. 84-1 at 15). Specifically, during the 2007-2008 sales process, the Company was facing declining sales and its value was decreasing as the process wore on; however, the Board failed to act to bring a sale to fruition. (*Id.*) Wagner alleges that because MWE failed to advise the Board of their potential corporate waste, the Company did not realize its potential via a sale. (Doc. 84-2 at 155). Wagner maintains that if MWE had not been negligent in failing to advise the Board of the need for decisive action, the Company would have been in a more favorable position than bankruptcy. (*Id.*)

Accordingly, Wagner does not and is not required to establish the issue of proximate cause, but she is required to and does establish how MWE allegedly breached its duty of care.

---

[4] To satisfy the proximate causation requirement in a legal malpractice claim, "the plaintiff must show that, but for the attorney's negligence, the plaintiff would be in a more favorable position." *Capital City Energy Group Inc. v. Kelley Drye & Warren, LLP*, 975 F.Supp.2d 842, 861 (S.D. Ohio Sept. 27, 2013).

7

### D. Standard of Care

"Ohio courts require expert evidence in a legal malpractice case to establish the attorney's breach of the duty of care." *Montgomery v. Gooding, Huffman, Kelly & Becker*, 163 F.Supp.2d 831, 835 (N.D. Ohio 2001).  Attorneys must "exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated." *Capital City Energy Group, Inc. v. Kelley Drye & Warren*, LLP, No. 2:11-cv-207, 2013 U.S. Dist. LEXIS 129341, at *43 (S.D. Ohio Sept. 27, 2013).  To show breach of duty, a malpractice plaintiff "must meet his burden of proof with expert testimony that the defendant attorney fell below the applicable standard of care ordinarily exercised by members of the legal professional under similar circumstances…" *Thompson v. Karr*, 4 F.Supp.2d 731, 734 (N.D. Ohio 1998).  *See also* Section III.C, *supra*.

In her report, Wagner properly states the standard of care: "[a]n attorney is required to exercise the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated."  (Doc. 84-1 at 10).  However, later in the report, she states that the "standard of care is much higher than in the normal representation of a company not facing such dire circumstances…" (*Id.* at 12).  In support of this allegation, Wagner cites the Ohio Rules of Professional Conduct, which state that "[t]he required attention and preparation [for an attorney] are determined in part by what is at stake…complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence."  (*Id.*)

MWE argues that Ohio Rule of Professional Conduct 1.1, cmt 5 does not create a "higher" standard of care. Instead, Comment 5 demands only "more extensive treatment" in complex situations. Accordingly, MWE claims that Wagner applied a "higher" standard of care, which is not the proper standard of care.[5] When an expert opinion is based on an "improper legal standard," it must be excluded. *Info-Hold, Inc. v. Muzak LLC*, No. 1:11cv283, 2013 U.S. Dist. LEXIS 117953, at *8-14 (S.D. Ohio Aug. 20, 2013). Plaintiff argues that Wagner is not creating a different standard of care, she merely observed that complex transactions require detailed and extensive treatment by the attorneys involved.

The Court declines to exclude Wagner's testimony regarding the standard of care. Instead, counsel should address the issue on cross examination. If, when testifying, Wagner alleges an improper legal standard, the Court will address the issue at that time.

### E. Rule 26(a)(2)(B)

Finally, MWE argues that Wagner failed to comply with the requirements of Rule 26(a), by submitting an incomplete written report.

Rule 26(a)(2)(B) states:

> Unless otherwise stipulated or ordered by the court, [an expert] disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

---

[5] Furthermore, MWE argues that the Rules of Professional Conduct do not and cannot alter the standard of care in legal malpractice actions. *Brown v. Morganstern*, No. 2002-T-0164, 2004 Ohio App. LEXIS 2571, at *21 (Ohio App. June 4, 2002) (recognizing that "any breach of the Code of Professional Responsibility or an Ethical Consideration does not itself give rise to a claim in legal malpractice").

9

    (i)  A complete statement of all opinions the witness will express and the basis and reasons for them;
    (ii)  The facts or data considered by the witness in forming them.

"Failure to comply with Rule 26(a)'s disclosure requirements precludes a party from using such evidence at a trial or hearing, or on a motion, unless such failure was substantially justified or harmless." *Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 877 (S.D. Ohio Jan. 6, 2010) (citing Federal Rule 37(c)(1)).

  MWE argues that Wagner's report contains only "a summary of some of the particular situations which, based on [her] understanding of the events, contributed to [her] opinion." (Doc. 84-1 at 13). MWE maintains that Wagner cannot "list only some of [her] reasons for a conclusion and then incorporate the remainder through an unrevealing catchall phrase." *R.C. Olmstead, Inc. v. CU Interface*, LLC, 657 F. Supp. 2d 905, 909 (N.D. Ohio 2008), *aff'd* 606. F.3d 262 (6th Cir. 2010). Specifically, MWE argues that Wagner's report contains the same deficiencies as in *Olmstead*, where the court considered a motion to exclude an expert report that was one and one-half pages long, with no reference to documents or exhibits. The court found that the report failed to comply with Fed. R. Civ. P. 26(a)(2) in multiple ways and granted the motion. The Sixth Circuit affirmed the district court, and held that "an expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Id*. at 271 (quoting *Brainard v. Am. Skandia Life Assur. Corp*., 432 F.3d 655, 657 (6th Cir. 2005)).

  Unlike the report in *Olmstead*, Wagner's report "sets forth the facts" and then "outlines a line of reasoning arising from a logical foundation." Wagner identifies the

10

categories of materials that she reviewed in rendering her opinion and provides a summary of the facts she deemed most relevant, all of which were derived from the record. Accordingly, Wagner properly identified the information and the data that she reviewed in forming her opinion. (Doc. 84-1 at 3-9).

Next, MWE argues that Wagner's report fails to cite any evidence that Wagner considered when forming her opinions in violation of Rule 26(a)(2)(B)(ii). Specifically, MWE maintains that Wagner's report does not contain a single citation to the evidence. (Doc. 84-2 at 50) ("Q. Now, your report doesn't footnote the documents that you looked at; is that right? A. That's correct…Q. Well, your report, as we've already established, doesn't contain a list of all of the documents that you relied upon – A. That's correct.").

The Court finds that there is no basis to exclude Wagner's report or testimony for failing to cite each and every fact upon which she relied. Wagner provided the documents that she relied on to MWE in response to a subpoena.[6] "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Wash Solutions, Inc. v. PDQ Mfg.*, 395 F.3d 888, 895 (8th Cir. 2005). Wagner's report is supported by facts in the record and reasonable inferences from those facts. Therefore, Wagner's report complies with Rule 26(a).

## IV. CONCLUSION

Accordingly, for these reasons, MWE's motion to strike (Doc. 84) is **DENIED**.

---

[6] The fact that Wagner identified 19 deposition transcripts along with exhibits, comprising thousands of pages of documents, does not change the analysis.

**IT IS SO ORDERED**.

Date:  8/25/16 *s/ Timothy S. Black*
Timothy S. Black
United States District Judge