UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST, W. TIMOTHY MILLER, TRUSTEE, | : : : | Case No. 3:09-cv-218 |
| | : | Judge Timothy S. Black |
| Plaintiff, | : | |
| vs. | : : : | |
| MCDERMOTT WILL & EMERY LLP, | : : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (Doc. 85)**

This civil action is before the Court on Defendant McDermott Will & Emery LLP ("MWE")'s motion for partial summary judgment on the 2007-2008 sales process claims (Doc. 85), and the parties' responsive memoranda (Docs. 99, 113).

Specifically, MWE moves for summary judgment on Plaintiff's legal malpractice claims insofar as they relate to efforts by Antioch to sell, refinance, or recapitalize itself in 2007 and 2008 ("2007-2008 sales process"), the insolvency of Antioch's surety ("Condor"), and any other matter addressed in the expert report of Barbara Wagner. This motion is premised on MWE's separate motion to strike the report of Plaintiff's expert, Barbara Wagner, and to exclude her testimony. (Doc. 84). This Court denied the motion to strike. (*See* Doc. 175).

## I.    BACKGOUND

Wagner's report discusses MWE's representation of Antioch during various events including the 2007-2008 sales process, the Condor matter, and a sale-leaseback transaction between Antioch and Levimo. (Doc. 84-1 at 1-16).

MWE alleges that this Court should grant its motion for summary judgment on Plaintiff's claims related to MWE's advice after the 2003 ESOP Transaction (what this Court previously identified as "Claim 2"), the 2007-2008 sales process ("Claim 6"), and Condor ("Claim 7"), for three separate and independent reasons: (1) Plaintiff needs expert testimony to establish damages in this case, and it has none; (2) the letters of intent and valuation on which Plaintiff attempts to rely to establish damages are inadmissible hearsay, and in any event do not establish damages; and (3) Plaintiff cannot establish that MWE breached the applicable standard of care, since the testimony of Plaintiff's legal expert is inadmissible.

Plaintiff claims that: (1) it can prove damages through factual evidence developed in depositions and voluminous document productions; (2) expert testimony is not required to prove causation; and (3) Wagner's testimony that MWE failed to meet the standard of care of similarly situated attorneys is reliable and admissible.

## II. UNDISPUTED FACTS[1]

1. Dinsmore & Shohl was acting as Antioch's legal counsel in the summer of 2004. (Case No. 3:10cv156, Doc. 82 at 251). Hoskins asked Dinsmore & Shohl to review the financial guaranty agreement and proposed surety bond from Condor Insurance to make sure the surety bond would fit within Antioch's credit agreement with Bank One. (*Id.* at 253-254, Ex. 40).[2]

2. Antioch's corporate counsel, Dinsmore, represented Antioch in the refinancing and Sale-Leaseback process and reviewed the October 2006 National City Bank and LaSalle Bank refinancing proposals. (Case No. 3:10cv156, Doc. 105 at 78-79, 82; Gentry Dec. at ¶ 3; Ex. F at DIN 024760-778).[3]

3. Dinsmore represented Antioch in the Levimo transaction. (Case No. 3:10cv156, Doc. 105 at 96).

4. On June 5, 2008, Evolve terminated Antioch's Board of Directors and STC to prevent a sale to J.H. Whitney and ultimately a 363 sale. (Case No. 3:10cv156, Doc. 110 at 57-59; Doc. 103 at 268-269).[4]

5. At its first meeting the New Board hired Skadden, Arps, Slate, Meagher & Flom, LLP. (*Id.*) Board member Robert Morris, an attorney himself, pointed out during this board meeting that "Skadden was well know [sic] in legal circles for having one of the premiere restructuring practice [sic] in the nation." (*Id.* at TAC-CC-0400313; Dep. Ex. 746 at EVOLVE007921; Doc. 91 at 10-11). The New Board ended the Company's retention of its prior counsel, MWE. (Case No. 3:10cv156, Doc. 219 at 18, 59-60).

---

[1] *See* Doc. 85-1 and Doc. 101.

[2] Plaintiff admits that Dinsmore represented Antioch in the summer of 2004 with respect to amendments to its credit agreement with Bank One, and that Hoskins asked Dinsmore to look at the proposed guaranty agreement with Condor to see if it would violate the credit agreement. Plaintiff denies that Dinsmore was acting as Antioch's legal counsel in any broader sense or that Hoskins asked Dinsmore to review any other aspect of the Condor guaranty, including whether it constituted adequate security under ERISA. (*Id.* at 254).

[3] Antioch's corporate counsel, Dinsmore, represented Antioch in the refinancing and Sale-Leaseback process and reviewed the October 2006 National City Bank and LaSalle Bank refinancing proposals. (Case No. 3:10cv156, Doc. 105 at 78-79, 82; Gentry Dec. at ¶ 3; Ex. F at DIN 024760-778).

[4] Plaintiff admits this statement, but denies that Evolve acted alone.

6. On June 5, 2008, Antioch's reconstituted Board of Directors engaged Timothy Pohl of the Skadden, Arps, Slate, Meagher & Flom, LLP law firm as Antioch's legal counsel. (Case No. 3:10cv156, Doc. 110 at 175-176, Ex. 746).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

MWE argues that the Court should grant its motion for partial summary judgment related to the 2007-2008 sales process, Condor, and all other matters discussed in Wagner's expert report, for four separate and independent reasons: (a) Plaintiff needs

4

expert testimony to establish damages,[5] and it has no admissible evidence; (b) the letters of intent and the valuation upon which Plaintiff attempts to rely to establish damages are inadmissible hearsay and do not show damages; (c) Plaintiff cannot show that MWE's conduct caused any of the potential deals that Plaintiff identifies not to close; and (d) even assuming that it was MWE's advice that prevented a deal from closing, Plaintiff does not identify any legal advice by MWE that caused the loss.

Since this Court has already determined that Wagner's report and testimony is admissible, it focuses on MWE's argument that there is insufficient evidence to establish damages. In the related bankruptcy matter, this Court previously held that the expert opinions of Mark Greenberg were not sufficient to establish damages relating to the 2007-2008 sales process (Case No. 3:10cv156, Doc. 300 at 6-9), and Barbara Wagner does not offer any opinions on damages (Docs. 84-2 at 174-76). In fact, this Court granted summary judgment to the bankruptcy defendants on Plaintiff's claims relating to the 2007-2008 time period.[6] (Case No. 3:10cv156, Doc. 300). MWE argues that the same reasoning applies here. *Deck v. Miami Jacobs Bus. Coll. Co.*, No. 3:12cv63, 2013

---

[5] In its Amended Complaint, Plaintiff claims that it was damaged as a direct and proximate result of MWE's malpractice and seeks: (1) the difference between the consideration paid to the selling shareholders in 2003 for their shares of Antioch stock and the actual fair market value of those shares; (2) interest, fees, and other charges on debt incurred by Antioch in order to finance the 2003 stock purchases and subsequent repurchase obligations in connection with departing employees; (3) fees and expenses paid to restructuring professionals as a result of the deepening insolvency of Antioch; and (4) damages that could have been recovered from Antioch's directors and independent professional firms if Antioch had been advised to assert its claims in a timely manner. (Doc. 14 at ¶ 72).

[6] Discovery in this case and in the related bankruptcy case was consolidated. (Doc. 39).

U.S. Dist. LEXIS 14845, at *10-11 (S.D. Ohio Jan. 31, 2013 ("Stare decisis is of 'fundamental importance' to the rule of law, and any departure therefrom demands 'special justification.'").

In the bankruptcy case, this Court found that while "a jury could certainly perform a simple compensatory damages calculation, Plaintiff must proffer two reliable base values from which to perform the calculation."  (Case No. 3:10cv156, Doc. 300 at 7).  For example, the Court found that the J.H Whitney letter of intent, which provides the top-end value of $54 million, is hearsay.  Furthermore, the bottom-end value, the Antioch Disclosure Statement, was not an appropriate indication of the Company's value.  (*Id.* at 8, n. 9).  Specifically, the Disclosure Statement states that the estimate "[d]oes not necessarily reflect, and should not be construed as reflecting, values that will be attained in the public or private markets."  (*Id.*, Doc. 214-20).  Accordingly, this Court held that "even permitting Plaintiff leeway to prove damages by 'simple arithmetic,' rather than through a damage expert, Plaintiff had failed to identify any reliable base values."  (*Id.*, Doc. 300 at 9).  Ultimately, the Court determined that "a reasonable jury cannot find that Plaintiff was damaged by the sale process without Top and Bottom-End values."  (*Id.* at 11).

The facts before this Court are identical to the facts before the Court in the bankruptcy action.  The problem remains that there is not reliable information from which a jury can do simple arithmetic to determine damages.

### A.  Top-End Value—Letters of Intent

Plaintiff argues that the letters of intent are a reliable indication of what the authors of those letters would pay to purchase Antioch. However, the letters of intent were not final and were subject to due diligence. (Doc. 99-19 at 2740). By its very nature, a letter of intent is a non-binding indication of interest. *Rennick v. O.P.T.I.O.N. Care*, 77 F.3d 307, 315 (9th Cir. 1996) (a letter of intent is a "nonbinding expression in contemplation of a future contract."). Plaintiff's own expert conceded: "[there is] only one signal[] that the deal is done, and that is when the money is in the bank…More value is lost between the time there is a signed letter of intent and a closing than anyone ever cares to admit." (Case No. 3:10cv156, Doc. 300 at 11).

Even if the letters of intent were a reliable indication of what a company would pay, they are hearsay. Plaintiff argues that the letters of intent are not hearsay under the business records exception. Fed. R. Evid. 803(6). Under Rule 803(6), business records will not be excluded by the rule against hearsay if they satisfy the following requirements:

> (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the [record]; and (4) the [record] must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009). "The justification for this exception is that business records have a high degree of accuracy because the

7

nation's business demands it, because the records are customarily checked for correctness, and because recordkeepers are trained in habits of precision." *United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982) (citing McCormick, Evidence, § 306, at 720 (2d ed. 1972).

However, Plaintiff offers no foundation to show that the values reflected in the letters of intent are records of regularly conducted activity under Rule 803(6). Plaintiff simply argues that various documents reflecting the values in the letters of intent of Sun Capital, Jostens, Marlin Equity, and J.H. Whitney satisfy the Rule's requirements because they were held by Antioch or Houlihan. However, just because a business holds a document does not mean that the document is a business record, nor that the information in the document becomes admissible. Plaintiff does not provide the requisite "custodian" or other "qualified witness" to show that the requirements of Rule 803(6) have been satisfied. Fed. R. Evid. 803(6)(D).[7]

Plaintiff also argues that letters of intent fall within the exception for then existing state of mind, such as motive, intent, or plan. Fed. R. Evid. 803(3). Plaintiff maintains that the letters of intent from potential purchasers evidence the then-existing intent or plan of the purchasers to purchase the assets of the Company for the stated amount, based on their opinion of the value of the Company based on preliminary due diligence.

---

[7] At oral argument, Plaintiff argues that the Court should hold an evidentiary hearing on the factual evidence that Plaintiff claims supports damages, at which time the Court would be able to assess the witnesses' credibility and the hearsay exceptions in light of those witnesses. (Tr. at 131). If Plaintiff wanted to support its argument with a witness affidavit or declaration, it was obligated to do so at the summary judgment stage.

However, the letters of intent do not state an intent to purchase Antioch at the price identified in the letters. Rather, the price set forth in the letters was subject to additional due diligence.[8]

Therefore, the letters of intent are not a reliable indicator of value.

### B. Bottom-End Value—The CRG Proposal

With respect to the Bottom-End Value, the Antioch Disclosure Statement, and the CRG value range contained in it, are not part of any Bankruptcy Court entry, were never "adopted by the Bankruptcy Court in any finding of fact, and were not incorporated into the Bankruptcy Court's Confirmation Order." (Case No. 3:10cv156, Doc. 259 at 9).[9] The issue of the Company's value was never litigated in the Bankruptcy Court and there was never a finding of fact or other factual determination made by the Court other than the fact that the Disclosure Statement complied with Bankruptcy Code Section 1125(a).

---

[8] Plaintiff also argues that "Antioch's investment banker, Stephen Spencer, has testified in deposition that, based upon his experience and the exhaustive marketing processes conducted by Houlihan, these letters of intent accurately reflect the value the market placed on Antioch. Spencer Dep. 99-101." However, on the pages Plaintiff cites, Mr. Spencer testified that J.H. Whitney was "very close" to closing on a deal with Antioch in late May or early June. He said nothing about the letters of intent being a reliable indicator of value. (Case No. 3:10cv156, Doc. 138 at 99-101).

[9] The sole purpose of a disclosure statement in a bankruptcy case is to provide "adequate information" sufficient to allow a "hypothetical investor…to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). It is a document prepared, sponsored, and filed by a party soliciting votes to accept or reject a reorganization plan. *Id.* This is one reason why courts do not look to values set forth by a plan proponent in a disclosure statement as admissible evidence. *See W.P. Hickman Sys. v. V & R Sheet Metal*, No. 10-2289JAD, 2012 Bankr. LEXIS 2201, at *15-18 (W.D. Pa. July 13, 2012) (rejecting use of liquidation analysis included in disclosure statement as an established fact and entering judgment, because debtors could not carry the burden they sought to establish through the disclosure statement).

(*Id.*)  Furthermore, the Disclosure Statement clearly warns in all capital letters:

> The Disclosure Statement may not be relied upon for any purpose other than to determine whether to vote to accept or to reject the Plan, and nothing stated herein will constitute an admission of any fact or liability of any party, or be admissible in any proceeding involving the Debtors or any other party, or be deemed a representation of the tax or other legal effects of the Plan on the Debtors or holders of claims of interests.

(Case No. 3:10cv156, Doc. 214-17 at 8).  The Disclosure Statement also states that the CRG estimate "does not necessarily reflect, and should not be construed as reflecting values that will be attained in the public or private markets." (*Id.*, Doc. 214-20).

Accordingly, the Bottom-End Value is hearsay and its source document, the Disclosure Statement, is also inadmissible hearsay.  Hearsay cannot be used to create a genuine dispute of material fact because "hearsay evidence cannot be considered on summary judgment." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 580 (6th Cir. 2012).

Therefore, as this Court held in the related bankruptcy matter, "even permitting Plaintiff leeway to prove damages by 'simple arithmetic,' rather than through a damage expert, Plaintiff has failed to identify any reliable base values." (Case No. 3:10cv156, Doc. 300 at 9).  Accordingly, with or without Wagner's testimony, a reasonably jury cannot find that Plaintiff was damaged by MWE without Top and Bottom-End values (the Whitney LOI and bankruptcy documents).

Plaintiff's failure to establish that MWE caused any damages as a result of the 2007-2008 Sale Process entitles MWE to summary judgment on these claims.

10

## IV. CONCLUSION

Accordingly, for these reasons, Defendant's motion for partial summary judgment on the 2007-2008 sales process claims (Doc. 85) is **GRANTED**.

**IT IS SO ORDERED**.

Date:  8/25/16               *s/ Timothy S. Black*
                             Timothy S. Black
                             United States District Judge