UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTIOCH LITIGATION TRUST, | : | Case No. 3:09-cv-218 |
| W. TIMOTHY MILLER, TRUSTEE, | : | |
| | : | Judge Timothy S. Black |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| MCDERMOTT WILL & EMERY LLP, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (Doc. 137)**

This civil action is before the Court on Defendant McDermott Will & Emery LLP ("MWE")'s motion for summary judgment on the claim for post-transaction advice ("Claim 2") (Doc. 137), and the parties' responsive memoranda (Docs. 148, 161).

### I. BACKGROUND

MWE moves for summary judgment on Plaintiff's claims that MWE committed legal malpractice by not advising: (1) The Antioch Company post-transaction about the consequences of the 2003 ESOP tender offer transaction; and (2) Antioch's board of directors as to conflicts of certain directors and the Board's duties in light of those conflicts.  MWE argues that Antioch has failed to disclose any expert who would testify that MWE breached the applicable standard of care as to those allegations, and that Antioch was damaged as a result.

Plaintiff maintains that the allegations in Claim 2 are included: (1) in the claim that MWE failed to advise the Company about potential solutions to the 2003 ESOP

Transaction ("Claim 5"); and (2) in the claims that MWE violated the standard of care in its representation of the Company during the 2007-2008 Sale Process ("Claims 6 and 7"). Accordingly, Plaintiff argues that it may rely on its already identified experts to opine on the standard of care and damages in Claim 2.

## II.     STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## III.     ANALYSIS

It is unclear whether Plaintiff is arguing that all of the allegations in Claim 2 are included in Claims 5, 6, and 7, or that only some of the allegations in Claim 2 are included in Claims 5, 6, and 7—such that Plaintiff's experts adequately addressed Claim

2

2—but that Claim 2 should still stand alone as a separate claim. If Claim 2 is entirely included in Claims 5, 6, and 7, then it is duplicative and MWE is entitled to summary judgment for the same reasons set forth in this Court's Orders granting summary judgment on the same.

If Claim 2 is an independent claim, the Court addresses whether Plaintiff's experts opine as to the applicable standard of care and damages sufficient to maintain a claim.

### A. Standard of Care

Plaintiff identified two legal experts to opine on the standard of care regarding its claim for malpractice against MWE: Greg Gehlman and Barbara Wagner.

Greg Gehlmann opines that MWE committed malpractice by not advising the Company of potential causes of action against the Board prior to the expiration of the statute of limitations. Ohio Rev. Code § 2305.09(D). Gehlmann claims that MWE had a duty to inform the Company of "potential claims against the Board with respect to the 100% ESOP Transaction prior to the statute of limitations running…MWE had four plus years to do this and it did nothing." (Doc. 130-6 at 54). Gehlmann opines that "similarly situated counsel would in the ordinary course advise its client to evaluate previous actions/transactions to determine if there were potential claims to preserve." (*Id.* at 56).

Gehlmann further concluded that MWE failed to provide the Board with guidance regarding their ability to rescind the Transaction under Ohio law—regardless of whether the advice would be well received or even if it would not, in the end, be feasible. (Doc. 130-6 at 56). Gehlmann claims that counsel's review of the Transaction should have

3

included an analysis of not only potential liability surrounding the transaction, but also all possibilities to remedy the situation and preserve value—*i.e.*, the potential to void the Transaction. (*Id.* at 57).

Barbara Wagner concluded that MWE failed to meet the applicable standard of care

> over a period of time from approximately fall 2006 until its representation was terminated…in connection with…providing (or failing to provide) general corporate advice, advice to the Board of Directors, certain of its committees and others, as well as representing Antioch in certain transactions, and contemplated transactions during that period of time.

(Doc. 84-1 at 1). Specifically, Wagner claims that: (1) MWE failed to clarify the multiple roles that Lee had and did not advise the Board regarding their duties to him in his different roles, nor his rights and conflicts as a subordinated noteholder or landlord; (2) MWE also failed to advise the Company of the consequences of having directors on the Special Transaction Committee who held subordinated notes and warrants from the 2003 ESOP Transaction; and (3) even after the Special Transaction Committee was reconstituted, MWE failed to analyze or advise the Company that since the two new members retained their warrants from the 2003 ESOP Transaction, they were never fully independent. (*Id.*)

Accordingly, Plaintiff's two legal experts have opined on the standard of care regarding Claim 2.

4

### B. Damages

Plaintiff argues that expert Dave Borden will opine on the extent of damages that the Company suffered as a result of the 2003 ESOP Transaction based on his conclusion that the tender price was substantially more than fair market value. (Doc. 91-2). However, this Court granted MWE's motion for summary judgment with respect to the 2003 ESOP Transaction. (Doc. 174). Accordingly, Borden's testimony pertaining to damages from the 2003 Transaction, is irrelevant.

Borden also prepared a rescission damage calculation, which are the damages that could have been recovered from Antioch's directors and independent professional firms if Antioch had been advised to assert its claims in a timely manner. (Doc. 121 at 12-14; Doc. 122 at 270). However, this Court excluded the rescission damage calculation as untimely. (Doc. 172). Moreover, there is no indication that the jury could determine rescission damages independently.[1]

Plaintiff's own expert, Mr. Gehlman, stated that because there were significant tax benefits of the transaction to the corporation, all of those tax benefits would be an offset to the money the company would be getting, having rescinded it, so those benefits would have to be taken out of the calculation. (Doc. 119 at 69-73; Tr. at 109). Gehlman also testified that the corporation would incur significant legal fees if it tried to rescind the

---

[1] Plaintiff provided a rescission figure in its initial disclosures and claims that it would ask the jury for that amount, and it would be MWE's burden to argue on cross-examination that Plaintiff is not entitled to that amount because of taxes, etc. (Tr. at 173). MWE argues that the number given in initial disclosures is inflated and requiring the jury to calculate rescission damages without the benefit of an expert's calculation would be beyond the jury's capabilities. (Tr. at 173). The Court agrees.

Transaction and those costs would also have to be taken out of the calculation. (Doc. 119 at 69-73). Accordingly, rescission damages are not a simple calculation that a jury can perform.

Without evidence of damages, Claim 2 fails as a matter of law.

### IV.  CONCLUSION

Accordingly, for these reasons, Defendant's motion for partial summary judgment (Doc. 137) is **GRANTED**.

Since no other claims of Plaintiff now remain, the Clerk shall enter judgment accordingly (based on Docs. 174, 175, 176, 177 and 178), whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED**.

Date:  8/25/16                                                                      *s/ Timothy S. Black*
                                                                                              Timothy S. Black
                                                                                              United States District Judge