## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

THE ANTIOCH COMPANY        Case No. 09-CV-218
LITIGATION TRUST, W. TIMOTHY
MILLER, TRUSTEE,        (Judge Timothy S. Black)

             **Plaintiff,**        **PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANT
v.**        **MCDERMOTT WILL & EMERY'S
MOTION FOR AWARD OF COSTS**

MCDERMOTT WILL & EMERY LLP,

             **Defendant.**

## I.     INTRODUCTION

Plaintiff The Antioch Company Litigation Trust, W. Timothy Miller, Trustee ("Trust")
asks this Court to exercise its discretion to deny in its entirety Defendant McDermott Will &
Emery LLP's ("MWE") Motion for an Award of Costs [Doc. No. 180] (the "Motion"), because
it would be inequitable under all the circumstances in this close and difficult case to shift the
burden of MWE's costs to the Trust. In the alternative, the Trust requests that the Court reduce
the requested award to reflect only those items necessarily and reasonably incurred.

The Trust was established by the Bankruptcy Court as an authorized representative of the
bankruptcy estate of the debtor The Antioch Company, pursuant to 11 U.S.C. § 1123(b)(3)(B).
Declaration of W. Timothy Miller, Trustee at ¶ 2, attached hereto as Exhibit A. This section of
the Bankruptcy Code authorizes a bankruptcy court to appoint a litigation trustee with the power
and authority to act as a representative of a bankruptcy estate in liquidating a Chapter 11 debtor's
assets and distributing them in accordance with core bankruptcy tenets of priority and equity.
The establishment of a litigation trust and the appointment of a litigation trustee provide a means
to defer the resolution of claims by and against insiders and advisors of the debtor without

delaying implementation of a plan of reorganization, to the benefit of the debtor, its employees, shareholders, and creditors. *In re Regional Diagnostics, LLC,* 372 B.R. 3, 14 (Bankr. N.D. Ohio 2007); *In re Southern Industrial Banking Corp.*, 59 B.R. 638, 642 (E.D. Tenn 1986).

Apart from some initial cash and a loan from the reorganized debtor designed to fund the pursuit of this case against MWE and the related adversary proceeding against the directors and officers of the debtor (collectively, the "Litigation"), the only assets of the Trust are the claims transferred from the debtor. Miller Declaration ¶ 5. As a result of the unsuccessful conclusion of the Litigation, the Trust made no distributions to its beneficiaries, has a cash balance of $2,797.57 and no other remaining assets of value. *Id.* The Trust tendered this amount to MWE in an effort to avoid burdening this Court with consideration of MWE's motion and the many factual findings that are necessary in assessing and calculating an award of costs, but MWE refused to accept less than a judgment for the full amount of costs requested. Declaration of Marcia V. Andrew at ¶ 8, attached hereto as Exhibit B.

The Trust conducted this Litigation in good faith prosecution of the claims of the debtor with which it was entrusted by the Bankruptcy Court. The Litigation was close and difficult, involving multiple parties and claims, unsettled and changing law, voluminous document productions and 46 depositions, and dozens of motions. Andrew Declaration ¶ 2. The Litigation benefitted MWE by vindicating its professional conduct and benefitted the public by permitting the swift reorganization of The Antioch Company. When viewed in their totality, the circumstances of this case merit the equitable exercise of the Court's discretion to deny in full MWE's request for an award of costs.

In the alternative, the Court should reduce MWE's submitted costs for deposition transcripts by $26,429.55 to subtract for investigative depositions of non-key witnesses,

unnecessary videotaping, rough transcripts, and shipping and handling charges, and disallow all of MWE's submitted copying expenses due to MWE's failure to sufficiently itemize what was copied and for what purpose and to explain the necessity or reasonableness of such copying.

## II. ARGUMENT

### A. The Circumstances of this Close and Difficult Case Make it Inequitable to Place the Burden of Costs on the Plaintiff Trust.

#### 1. Equitable Factors Recognized By the Sixth Circuit

The Sixth Circuit has held that Federal Rule of Civil Procedure 54(d) creates a presumption in favor of awarding costs to the prevailing party, but allows denial of costs at the discretion of the district court, considering the totality of the circumstances on a case by case basis. *Knology v. Insight Commc'ns Co.,* 460 F.3d 722, 728-29 (6th Cir. 2006) (affirming district court's denial of costs to prevailing party); *White & White v. Am. Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir. 1986) (upholding denial of costs to successful party). Rule 54(d) provides the district court with discretion to deny costs in a situation where, "it would be inequitable *under all the circumstances in the case* to put the burden of costs upon the losing party." *White & White,* 786 F.2d at 730. Circumstances in which a denial of costs is a proper exercise of discretion include cases that are "close and difficult" due to complex issues requiring protracted litigation, cases where taxable expenditures by the prevailing party are unnecessarily or unreasonably large, cases where the prevailing party has unnecessarily prolonged the litigation or injected unmeritorious issues, and cases where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant. *Id.*; *Aubin Industries, Inc. v. Smith,* 2009 WL 1674845 (S.D. Ohio June 15, 2009) (Black, J.) (copy attached as Exhibit C).

The Sixth Circuit has recognized a number of additional factors which may justify excusing or reducing an award of costs, including the losing party's good faith, *Singleton v.*

*Smith,* 241 F.3d 534, 539 (6th Cir. 2001); the losing party's inability to pay, *Jones v. Cont'l Corp.,* 789 F.2d 1225, 1233 (6th Cir. 1986); and the benefit to the prevailing party or the public from the case, *White & White,* 786 F.2d at 733. A review of these relevant considerations requires the conclusion that, in the totality of the circumstances of this case, it would be inequitable to require the losing party, the Trust, to bear the burden of MWE's costs.

2.      Losing Party's Good Faith

"The good faith of unsuccessful litigants is a relevant consideration in Rule 54(d) deliberations. Good faith without more, however, is an insufficient basis for denying costs to a prevailing party." *White & White,* 786 F.2d at 731; *Aubin Industries* at *4.

The Trust conducted this litigation in a proper, good faith manner. The Trust was established by the Bankruptcy Court for the very purpose of pursuing the Litigation as an authorized representative of the bankruptcy estate of the debtor The Antioch Company. Miller Declaration ¶ 3. The Trust investigated and prosecuted the claims of the Company against its former directors, officers and professional advisors in order to provide a recovery to the beneficiaries of the Trust, who were primarily former employees of the Company who lost their retirement benefits after the transactions that were the subject of the Litigation, and who did not receive payment of their claims in the bankruptcy proceeding. *Id.* The Trust acted reasonably in carrying out the purpose for which it was created. *Id.*

The Trust participated in three separate mediation processes in an effort to resolve the issues raised in the Litigation (moderated by (1) the Seventh Circuit Court of Appeals with the *Morgan* defendants and the parties in the related case, *Fish v. Greatbanc, et. al.,* (2) the Sixth Circuit Court of Appeals with the *Morgan* defendants, and (3) Magistrate Judge Newman with MWE in this action). MWE was invited to participate in the Seventh Circuit mediation, which

would have brought together all interested parties and thus had a better chance of successfully resolving all claims, but MWE refused to participate.  Miller Declaration ¶ 4.

        3.      Close and Difficult Case

As this Court recognized in *Aubin Industries*, "the Sixth Circuit has upheld the denial of costs in several 'close and difficult' cases involving numerous parties, lengthy trials, and voluminous exhibits and transcripts." 2009 WL at *3 (citing *White & White, supra,* and *United States Plywood Corp. v. Gen. Plywood Corp.,* 370 F.2d 500, 508 (6th Cir. 1966)).  This Court found the *Aubin Industries* case to be both close and difficult, despite the fact that the defendant prevailed on summary judgment. 2009 WL at *3.

"The closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case." *White & White,* 786 F.2d at 732-33; *Rosser v. Pipefitters Union Local 392,* 885 F. Supp. 1068, 1070-72 (S.D. Ohio 1995).  In *White & White*, the Sixth Circuit found that the district court acted properly in considering the length and difficulty of the case as a factor in denying costs to the prevailing defendant, even though the appellate court had remarked that the 'essence of the matter is not factually complex." *Id.*  Similarly, in *Rosser,* Judge Weber denied costs after finding that the case was difficult (requiring the meticulous review of voluminous records, 45 depositions, a 5 ½ week trial and a 79-page decision) and close (parties were required to recognize, sift through and organize relevant evidence and discerning the relevant facts and law was difficult).  885 F. Supp at 1072.[1]

---

[1] *Reardon v. Forest Pharmaceuticals, Inc.*, 2013 WL 3322245 (S.D. Ohio July 1, 2013) (Black, J.), relied upon by MWE, follows only precedent from the Third and Seventh Circuits in remarking, in dicta, that the complexity and closeness of the litigation may not be considered by the court in reviewing the clerk's taxation of costs.  The Plaintiff in *Reardon*, however, did not argue the closeness and difficulty of the case as a basis for an equitable denial of costs, so the court's discussion of cases from other circuits on that point – without mentioning or resolving the conflict with Sixth Circuit precedent -- is not determinative.

The present Litigation involved complex issues requiring protracted litigation spanning seven years.  MWE asserts that the Trust needlessly increased the complexity and expense of this case by naming too many defendants in the *Morgan* action.  However, MWE represented to the court many times that the two actions arose out of the same two transactions and involved many of the same facts and witnesses[2]; therefore, those defendants were relevant and most likely would have been deposed by MWE in this action, whether or not they were named as defendants in the *Morgan* action.  Moreover, MWE agreed to coordination of discovery in the two cases.

This Litigation required the careful review of voluminous records produced in discovery. MWE issued subpoenas to 29 people and entities. 39 fact witnesses and 7 expert witnesses were deposed in the coordinated discovery.  The necessary sifting and refinement of facts was made more difficult than usual in a complex case due to the fact that none of the persons with knowledge of the transactions at issue were employed by or affiliated with the Trust.  Andrew Declaration ¶ 3.  The Trust agreed to coordinate discovery in this action and the *Morgan* action, even though it reduced the amount of time the Trust was able to question each witness, in an effort to reduce the cost and inconvenience for all parties and nonparty witnesses.  Andrew Declaration ¶ 4.

This case was coordinated with the *Morgan* action for discovery purposes due to the many common and interrelated factual and legal issues. Doc. 27, Order Granting Motions to Coordinate Discovery.  The question of whether the two cases would be consolidated for trial, or tried separately (and if so, in what order) was revisited, refined and amended multiple times

---

[2] *See, e.g.*, MWE Response to Morgan Defendants' Motion to Coordinate Discovery (Doc. 35); MWE Motion for Stay (Doc. 45 and 53, noting the complexity of both cases); MWE Proposal Regarding Future Proceedings (Doc. 79); MWE Joinder in Motion to Certify State Question (Doc. 143).

throughout the Litigation.[3]

This action was "close and difficult" within the meaning of Sixth Circuit precedent, as a refinement of perception was required to recognize, sift through and organize relevant evidence, and it was difficult to discern the law of the case due to unclear and changing Ohio law.  Often, multiple rounds of motion practice were required before an issue was finally resolved.  Some examples of this difficulty and refinement follow:

• MWE filed a motion dismiss in its entirety the First Amended Complaint (Doc. 16) that was denied on all grounds.

• At the time this case was filed, it was unclear if a cause of action for aiding and abetting breach of fiduciary duty was recognized in Ohio.  This claim survived MWE's motion to dismiss. Subsequently, the Ohio Supreme Court decided *DeVries Dairy LLC v. White Eagle Coop. Ass'n,* 132 Ohio St. 3d 516, 517, 974 N.E.2d 1194 (2012), which triggered MWE to file a motion for judgment on the pleadings as to the portion of the Trust's claim based on aiding and abetting.  Doc. 52.  MWE argued, and this Court held, that the holding in *DeVries Dairy* was not limited to the facts of that case, but stood for a broad proposition that Ohio did not recognize a cause of action for aiding and abetting breach of fiduciary duty under any circumstances.  (Doc. 58, Order Granting MWE's Motion for Judgment on the Pleadings Re Claims for Aiding and Abetting).

• MWE filed a motion for partial summary judgment arguing that all claims against MWE relating to the 2003 ESOP transaction were barred by the statute of limitations (Doc. 59).  This Court initially granted MWE's motion (Doc. 66), but on the Trust's motion for partial reconsideration (Doc. 70) explaining that MWE caused the Court to misinterpret the tolling provision in Section 108 of the Bankruptcy Code, the Court reversed in part and found that the statute of limitations had not run as to the Trust's claim that MWE failed to advise the Company to   take action against its directors and officers before claims for breach of fiduciary duty   against those fiduciaries became untimely.  Doc. 78, Order Granting in Part Motion for Partial Reconsideration.

• Similarly, it was difficult to discern the state of the law as to the doctrine of adverse domination.  The Trust argued that the statute of limitations against the directors and officers was tolled during the period of time that the directors and officers continued to control the corporation.  The defendants in the *Morgan* action disagreed, taking the

---

[3] *See, e.g.,* Doc. 39, Order Granting Motions to Coordinate Discovery; 4/16/12 Minute Entry (indicating Court will need to decide which of the two actions will be tried first); Doc. 55, Order Granting in Part MWE Motion to Stay (finding it premature to determine which case should be tried first or if the cases should be tried together); 5/7/13 Notation Order (amending calendar and setting both cases for trial on 6/2/14); 11/18/13 Notation Order (extending calendar and deferring determination of whether the two cases will be tried together).

position that Ohio did not recognize the doctrine of adverse domination. This court found in favor of the *Morgan* defendants and granted summary judgment to them as to the 2003 ESOP transaction on the ground that the claims were barred by the statute of limitations, which ran before the Trust even existed. Doc. 129, Case No. 10-cv-00156. MWE, however, agreed with the Trust that the issue was undecided in Ohio and joined in the Trust's motion to certify the question of state law to the Ohio Supreme Court. Doc. 140, Unopposed Motion to Certify Question of State Law and Doc. 143, MWE Joinder in Motion to Certify. The Trust appealed the *Morgan* action, raising the grant of summary judgment on the issue of the statute of limitations as one of the issues presented for review, and this action was stayed pending the outcome on appeal of the related action. The Sixth Circuit agreed that the law in Ohio was undecided, and certified the question to the Ohio Supreme Court (633 Fed. App'x 296, 6th Cir. Dec. 2, 2015), which declined to answer the question certified (144 Ohio St.3d 1474, Ohio, Feb. 10, 2016). Ultimately, the Sixth Circuit decided, in a 2-1 decision, that there was insufficient basis to find that Ohio law recognizes adverse domination as a basis to toll the statute of limitations (644 Fed. App'x 579, 6th Cir. Mar. 24, 2016).

• Just five months after the Sixth Circuit decision in *Morgan* concluding that Ohio does not recognize adverse domination to toll the statute of limitations on the Company's claims against its directors and officers, a different panel of the Sixth Circuit reached a different conclusion, finding that, "the Ohio Supreme Court, if presented with the issue, would apply the doctrine of adverse domination to toll the statute of limitations provided by Ohio Rev. Code § 2305.09 for a claim of fraud." *In re Fair Finance Co.*, 834 F.3d 651 (6th Cir. Aug. 23, 2016). This development underscores the complexity of the legal issues presented by this case and the difficulty of discerning the controlling law.

The Court may also consider, in determining whether to award costs, that MWE prolonged the Litigation by requesting multiple stays, including a Motion to Stay Discovery Pending Ruling on Motion to Dismiss (Doc. 11) which resulted in a 13 month delay in the Litigation, a Motion for an Order Staying the MWE Case After Fact Discovery Ends (Doc. 45), and a Motion for Continuance of Trial Date and to Reschedule Remaining Dates (Doc. 142).

MWE needlessly increased the cost of the Litigation and the burden on this Court by filing a total of 9 separate motions for summary judgment[4] (in addition to its motion to dismiss[5], motion for judgment on the pleadings[6], and motion to clarify scope of plaintiff's claims[7]) all

---

[4] Doc. 59, Doc. 85, Doc. 87, Doc. 117, Doc. 127, Doc. 129, Doc. 133, Doc. 137, Doc. 138.
[5] Doc. 16
[6] Doc. 52
[7] Doc. 68

addressed to Plaintiff's single cause of action.  In addition, MWE filed a motion to strike every single expert witness identified by the Trust.[8]

The foregoing summary only begins to touch on the many ways in which this complex and lengthy Litigation was "close and difficult," warranting the equitable result that each party bear its own costs.

4.     Losing Party's Inability to Pay

It is within the court's discretion to deny costs if the losing party is indigent or unable to pay an award of costs.  *See, e.g., Singleton v. Smith,* 241 F.3d 534, 539 (6th Cir. 2001); *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1233 (6th Cir. 1986); *Thompson v. Ohio State University,* 2016 WL 1625828 at *2 (S. D. Ohio April 25, 2016) (copy attached as Exhibit D).  The losing party bears the burden of showing that it is financially unable to satisfy a cost award.  *Id.; See also Aubin Industries at *4.  In Thompson,* the court exercised its discretion to decline to tax costs against the losing plaintiff based on its determination that plaintiff was financially unable to pay the $5,560.15 in costs then or in the near future, as she was unemployed, in debt and owned no properties or investments.  *Id.*

The Trust is financially unable to pay the costs sought by MWE.  The Trust has a balance of just $2,797.57, and owns no properties or investments.  Its only other assets are the debtors' claims, which the Litigation has determined have no further value.  The Trust has no source of future income.  Miller Declaration ¶¶ 5 - 6.

5.     Public and Private Benefits of the Litigation

The extent to which public and private interests benefitted from the Litigation is relevant in determining the equity of awarding costs under all the circumstances of the case.  *White &*

---

[8] Doc. 84, Doc. 91, Doc. 125, Doc. 128.

*White*, 786 F.2d at 733.  This includes consideration of whether a prevailing defendant received any benefit and whether the action, although unsuccessful, benefitted the public.  *Id.*

In *White & White*, the Sixth Circuit did not disturb the district court's findings that the defendant in an antitrust action had benefitted from the action by gaining judicial approval of its marketing practices, and the action benefitted the public by assuring the competitiveness of the hospital supply business.  *Id.* at 730.  In *Rosser,* an action by union members alleging racial discrimination in their union's job referral system, Judge Weber found that the defendants received a great benefit from the litigation in vindication of practices and procedures that were questioned by the EEOC, and that this factor weighed with the difficulty of the case and the good faith of the plaintiffs made it equitable for each party to bear its own costs.  885 F. Supp. At 1072.

Here, MWE benefitted from vindication of the allegations against it of professional malpractice, and validation of the 2003 ESOP transaction that it designed and implemented for the Company.  The Litigation also benefitted the public in that it permitted The Antioch Company's Chapter 11 proceeding to be resolved on an expedited basis, with a reorganized company emerging from bankruptcy less than three months after filing of the Chapter 11 proceeding, to the benefit of the debtor and its employees, trade creditors and shareholders.  Such a swift reorganization was only possible by deferring the investigation and resolution of the Company's claims against insiders and professional advisors to this Litigation, through the means of a litigation trust established pursuant to 11 U.S.C. § 1123(b)(3)(B).  Miller Declaration ¶ 7.

These benefits to MWE and the public, together with the close and difficult nature of the Litigation, the good faith of the Trust, and the Trust's inability to pay an award of costs, result in a totality of circumstances in which the equitable denial of costs is appropriate.

**B.     In the Alternative, the Court Should Reduce the Requested Award to Include Only Necessary and Reasonable Expenses.**

1.     Printing and Copying Charges

In the alternative, if the Court does not find that the totality of the circumstances warrants a denial of all costs, it should reduce the requested award to include only those expenses demonstrated to be reasonable and necessary. MWE has provided only conclusory assertions that its expenses were reasonable and necessary. The Court should look "first to whether the expenses are allowable cost items and then to whether the amounts are reasonable and necessary." *Aubin Industries* at *2, quoting *Jefferson v. Jefferson County Public School Sys.*, 360 F.3d 583, 591 (6th Cir. 2004). "Even with the presumption to award fees, Rule 54(d) does not give district courts 'unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur' and so should always subject submitted costs to 'careful scrutiny.'" *Aubin Industries* at *2, quoting *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 235, 85 S. Ct. 411, 13 L. Ed.2d 248 (1964).

MWE seeks reimbursement for $76,210.87 in printing and copying costs. This Court should deny the requested award for printing and copying costs because MWE has failed to produce sufficient documentation for this Court to carefully scrutinize whether the copying and printing was necessary or merely for the convenience of counsel.

MWE provides only a blanket assertion that all of the requested charges were reasonable and necessary, and fails to identify what was copied or printed, how many copies were made, or for what purpose. Instead, MWE submits the copying and printing costs from virtually every

invoice from its counsel for the duration of this case, and blandly suggests that it is reasonable to request reimbursement for 80% of this line item, implicitly acknowledging that some of this printing and copying was for "attorney convenience." MWE cites only one case from the Northern District of Indiana for its erroneous assertion that it has no duty to track and submit the identity and nature of specific copying and printing. As it did in *Aubin Industries*, this Court should reject the "generic declaration" of counsel declaring that the costs submitted were correct and necessary without specifically addressing the individual copying costs. 2009 WL 1674845 at *7, n. 4.

As this Court has recognized, "[p]hotocopying and printing costs are subject to greater scrutiny than other costs. *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) ('On remand, the District Court should cast a strict eye toward counsel's [photocopying] expense submissions'). **'The burden is on the party seeking reimbursement for photocopying costs to show that the copies were necessary for use in the case.'** *Hartford*, 2007 U.S. Dist. LEXIS 22528 at 21-22, 2007 WL 963320 (citing *Charboneau v. Severn Trent Labs.*, No. 5:04cv116, 2006 U.S. Dist. LEXIS 16877, at *4, 2006 WL 897131 (W.D. Mich. 2006))" *Aubin Industries, 2009 WL at *6 (emphasis added).*

"The Sixth Circuit has warned that a court should not simply 'rubber stamp' a party's photocopying expenses without examining the costs for reasonableness." *Aubin Industries, at *6* (denying award of reproduction costs where movant failed to itemize these costs sufficiently for the court to determine what charges were associated with necessary and reasonable copying and what charges were associated with inappropriate costs, such as bates labelling or copies for the convenience of counsel). Copies produced solely for the internal use or the convenience of counsel in conducting discovery are not recoverable; only those copies necessarily produced to

meet discovery obligations are recoverable. *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 298 (6th Cir. 2015); *Radol v. Thomas*, 113 F.R.D. 172, 175 (S.D. Ohio 1986) (allowing only 30% of requested copying costs where defendants submitted virtually all of the copying and printing work done for any purpose in the case).

MWE has not met its burden of proof. MWE has not given the Court any basis to analyze the reasonableness of its request or the necessity of the costs for taxation other than conclusory declarations that assert that the list of costs for which taxation is sought is accurate, reasonable and necessarily incurred. This type of generic affidavit was found insufficient in *Aubin, supra,* and in *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1146 (S.D. Ohio 1997) (Kinneary, J.). Defendants provide "no information about what was copied or how the copies were used" and give no information from which the Court can determine the necessity of the photocopies. *Id.*

*In re: Whirlpool Corp.*, 2015 WL 11995255 (N.D. Ohio February 18, 2015) (copy attached as Exhibit E) is instructive. Whirlpool submitted voluminous documentation of copying costs over a six year period, but the general descriptions (in the copy records and in counsel's declaration) did not explain the specific purpose for any of the copies, leaving the court with no way to determine whether all of the copies were necessary for discovery (*i.e.*, for production to plaintiffs), were exhibits to motions or at trial, or were merely extra copies for the convenience of Whirlpool's own counsel. *Id.* at *5. Judge Boyko, noting that Whirlpool's claimed copy costs of $133,843.66 also appeared unreasonably high in relation to those awarded in comparably complex cases, reduced the claimed copy costs by 50%. *Id. See also Hartford Fin. Services Group, Inc. v. Cleveland Public Library*, 2007 WL 963320, at *6-8 (N.D. Ohio March 28, 2007) (copy attached as Exhibit F) (court reduced submitted copying costs by 30% where moving party

provided insufficient information for court to delineate necessary copies from those made for convenience of counsel).

Furthermore, 55 separate entries in MWE's summary of its copying expenses, totaling $9,319.28, are for "color photocopies."  Exhibit H to MWE's Motion (PAGEID ##7169-7173). MWE provides no explanation at all for its need for *any* color copies, let alone this extensive and repeated use of color copies.  The vast majority of documents produced in this case were emails, presentations, disclosures and other business documents.  The significance of these documents rested on the typed words, not any colors in the document (if any other than black and white). There was no need for color copies.  Andrew Declaration ¶ 5. If the Court allows an award for any copying costs, it should reduce any such award by $9,319.28, in addition to the reduction for copies made for convenience of counsel.

2.      Deposition Transcripts

Deposition expenses may be taxed as costs if they were reasonably necessary at the time the depositions were taken.  However, "[d]epositions that are merely investigative, preparatory, or useful for discovery are not taxable as costs." *Baker v. First Tennessee Bank Nat. Ass'n*, 142 F.3d 431, at *5 (6th Cir. 1998) (copy attached as Exhibit G) (reversing award of costs and remanding for explicit factual findings as to whether depositions were necessary for the litigation); *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1146 (S.D. Ohio 1997) (Kinneary, J.) (disallowing costs of deposition where defendant failed to provide any evidence as to the necessity of a deposition that appears to have been used for discovery purposes only); *Kaiser Indus. Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5, 12 (E.D. Mich. 1970) (distinguishing between depositions which are reasonably necessary to properly present a party's case and those used primarily for the purpose of investigation or thorough preparation by counsel).

Normally, the party that notices a deposition bears the cost of the appearance of the court reporter and, if applicable, the videographer, with each party paying for their own transcript copy. In this Litigation, the Trust agreed to share the fees of the court reporters and videographers with MWE and Defendants in the *Morgan* action for all of the depositions conducted as part of the consolidated discovery in both cases. Andrew Declaration ¶ 6. This resulted in a reduced cost for all involved, including MWE, and renders their request to shift their portion of these costs to the Trust inappropriate.

MWE seeks an award of $65,530.12 for deposition transcripts, which represents every single deposition taken in this case. MWE asserts generally that the depositions of all of these witnesses were necessary and reasonable, but does not explain why.

MWE admits that not all of the depositions were cited in summary judgment briefing. In fact, MWE did not cite to 14 of these depositions in any of its 9 motions for summary judgment[9], which, given the number of issues briefed in those motions, is a very strong indication that these depositions were not reasonably necessary for MWE's defense of the case, even when considered at the time the deposition was taken. The fact that the Trust did not object to the taking of the depositions does not mean that the Trust agrees they were reasonably necessary; rather, the Trust recognizes that the scope of permissible discovery is broad.

The standard for what is reasonably necessary and can be taxed as costs is narrower than what is permissible as investigatory discovery. *Baker v. First Tennessee Nat. Ass'n,* 142 F.3d 431, at *5 (6th Cir. 1998) (depositions not cited in summary judgment motion and that are merely

---

[9] *See* Exhibit G to MWE's Motion, at PAGEID ##7165-7168. MWE in this exhibit does not distinguish between depositions cited by itself or by the Trust. However, where MWE did not cite to the deposition, even in its reply memo responding to the Trust's memorandum in opposition, then the witness could not have been very important to MWE's presentation defense of the claims against it. There are 14 depositions that MWE did not cite at all in any of its numerous summary judgment papers: Rhonda Anderson, Chandra Attiken, Sandra Borstad, Uri Doron, Michael Epstein, Stephen Martin, Martin Moran, James Northrop, Hunter Parker, Glenn Pollack, Michael Powe, Frederick Walker, Richard Wiser and Joseph Zehenny.

investigative, preparatory, or useful for discovery are not taxable as costs); *Kaiser Indus. Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5, 12 (E.D. Mich. 1970) (depositions used for investigation or to thoroughly prepare a case, but not for trial or summary judgment, are not chargeable as costs). The cost of transcripts and court reporter fees for these 14 deponents, which totals $9,493.87, who were not relevant enough to be cited by MWE in the voluminous summary judgment record, should be disallowed as not reasonably necessary.

In addition, the entire cost of the deposition of Jared Kaplan ($6,318.65) should be disallowed. Jared Kaplan is a partner in MWE. MWE named him as an expert witness, and the parties had agreed to defer depositions of MWE's final round of experts until after mediation and after the Court ruled on MWE's nine pending motions for summary judgment, given the possibility that the need for those depositions might be ameliorated by the results of mediation and/or summary judgment decisions. Andrew Declaration ¶ 7. MWE, however, insisted that it needed to take the deposition of Mr. Kaplan to preserve his testimony for trial, citing his age. *Id.* At his deposition, Mr. Kaplan showed no lack of mental agility and admitted to no issues of poor health. *Id.* The deposition of Mr. Kaplan was not necessary or reasonable, given that MWE had access to him as he was a partner of the Defendant so counsel for MWE did not need to depose him to question him and discover his relevant knowledge. This Court should deduct the entire expense of Mr. Kaplan's deposition ($6,318.65) from any award of costs.

MWE videotaped virtually every deposition, regardless of its relationship with the witness or whether the witness was within the subpoena power of the Court. A written transcript of a deposition is sufficient for cross-examining a witness at trial and for presenting testimony of a witness who is beyond the subpoena power of the Court. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 2013 WL 5934141, at *2-3 (W.D. Ky. November 5, 2013)

(copy attached as Exhibit H) (excluding videotaping costs where defendant did not explain why video in addition to written transcript was necessary). At a minimum, this Court should exclude MWE's cost for videotaping all of the witnesses who were most likely to be present at trial: (1) its own witnesses (Doron, Matthews, Shein – for a total of $1,286.78 – and, to the extent not already excluded above, Kaplan – for an additional $3,100); (2) the named director and officer defendants in the *Morgan* action, who were unlikely to allow themselves to be tried *in abstentia* – for an additional $6,558.99 and (3) the Trustee, who was certain to be present for trial -- $1,958.38.

MWE's deposition invoices include charges for shipping and handling, postage, and delivery/courier charges that total $225.38.[10] These charges are not taxable costs and should therefore be disallowed as administrative overhead. *Aubin Industries*, at *5-6.

MWE's deposition invoices include $587.50 in charges for rough drafts of deposition transcripts (in addition to the normal transcript charge) and $1,000.00 for "synchronized transcript and video" (in addition to the video deposition).[11] MWE provides no explanation as to why it was necessary to receive rough drafts of the transcripts or to incur an additional charge for synchronized transcript and video. These charges appear to have been incurred solely for the convenience of counsel for MWE, and are therefore not properly taxable as costs. *See, White & White*, 786 F.2d at 731-32 (daily transcripts of trial proceedings not necessary); *Hartford Fin. Services Group, Inc. v. Cleveland Public Library*, 2007 WL 963320, at *6 (N.D. Ohio March 28, 2007) (daily transcripts of trial proceedings not necessary).

---

[10] These charges appear on the invoices in MWE's Exhibit C, Tab 2-a, Doc. # 180-4, at PAGEID ## 6837, 6843, 6844, 6852, 6854, 6864, 6865, 6878, 6880, 6882, 6884, 6886, 6888, 6890, 6891, 6897, 6900, 6902, 6904, 6908, 6909, 6912, 6913, 6914, 6916, 6917, 6918, and 6919.
[11] These charges appear on the invoices in MWE's Exhibit C, Tab 2-1, Doc. # 190-4, at PAGEID ## 6818, 6930, 6931, 6932, and 6933.

### III.   CONCLUSION

For the foregoing reasons, this Court should deny MWE's Motion for an Award of Costs, or in the alternative, reduce the amounts submitted to include only those charges reasonably and necessarily incurred in the defense of the action.


December 12, 2016                    Respectfully submitted,

                                     /s/ Marcia Voorhis Andrew
                                     Marcia Voorhis Andrew (0040289)
                                     Thomas R. Schuck (0005336)
                                     Casey Cantrell Swartz (0079563)
                                     Taft Stettinius & Hollister LLP
                                     425 Walnut Street, Suite 1800
                                     Cincinnati, OH 45202-3957
                                     Ph: (513) 381-2838
                                     Fx: (513) 381-0205
                                     andrew@taftlaw.com


                                     *Counsel for W. Timothy Miller, Trustee of
                                     The Antioch Company Litigation Trust*


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all registered ECF participants on December 12, 2016, through the Court's ECF system at the email addresses registered with the Court.

                                     /s/ Marcia Voorhis Andrew